IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARLES JOHNSON,<br><br>                 Plaintiff,<br><br>vs.<br><br>CLEARVIEW AI, INC., HOAN TON-THAT and RICHARD SCHWARTZ,<br><br>                 Defendants. | Case No. |

**COMPLAINT**

Plaintiff Charles Johnson ("Johnson"), by its undersigned counsel, hereby alleges the following for its complaint against Defendants Clearview AI, Inc. ("Clearview AI"), Hoan Ton-That ("Ton-That") and Richard Schwartz ("Schwartz") (the "Individual Defendants") (collectively the "Defendants"):

**NATURE OF THE ACTION**

1. This case arises out of Defendants' misconduct in materially breaching a contract with Johnson (the "Wind-Down Agreement, attached as Exhibit A) under which the parties agreed to transfer the assets and shares of a facial recognition technology company that was co-founded by Johnson and the Individual Defendants into a new company called Clearview AI.

1

2. Under the Wind-Down Agreement, Johnson's ownership would be drastically diminished from roughly thirty-three percent to ten percent. In return, the parties agreed that Johnson would receive lucrative sales commissions of ten percent (10%) of the gross revenue received by Clearview AI (the "Sales Commission") when Johnson introduced potential new customers to Clearview AI resulting in consummated sales of the company's software or services. Exhibit A ¶ 5.

3. Unbeknownst to Johnson, however, the Defendants negotiated the Wind-Down Agreement in bad faith and had no intention of paying Johnson the Sales Commission for any introductions that led to a sale. In fact, the Defendants purposefully insured that no Sales Commissions could be obtained as they wholly ignored and failed to follow up with many of Johnson's introductions.

4. In addition to Johnson's ability to receive Sales Commissions, the Wind-Down Agreement also included a restrictive covenant in which Johnson, Ton-That, and Schwartz agreed that they would not make any statement that was critical of the reputation or character of one another as officers of Clearview AI.  Exhibit A ¶ 4(e).

5. This too, was breached by the Individual Defendants. Indeed, after the Wind-Down Agreement was executed, the Individual Defendants often publicly criticized Johnson and denied his involvement in founding and developing Clearview AI.

6. The good faith and substantial efforts that Johnson would make would ultimately lay fallow, as the Defendants refused to engage with the potential customers that were introduced by Johnson and, for those introductions that led to a sale of Clearview AI's products, the Defendants refused to pay Johnson the contractually obligated 10% Sales Commission.

7. This suit seeks to hold Defendants accountable for their misconduct and to recover the damages that Johnson has suffered as a direct result of Defendants' multiple breaches of the Wind-Down Agreement.

## PARTIES

8. Plaintiff Johnson is a citizen and resident of Virginia. Johnson brings this action on behalf of himself individually.

9. Defendant Clearview AI is a Delaware corporation, which was formerly doing business as SmartCheckr, LLC ("SmartCheckr"), a now-defunct New York limited liability company.

10. Upon information and belief, Defendant Ton-That is a citizen and resident of New York. Upon information and belief, Ton-That is a part-majority owner and has a controlling interest in Clearview AI.

11. Upon information and belief, Defendant Schwartz is a citizen of New York. Upon information and belief, Schwartz is a part-majority owner and has a controlling interest in Clearview AI.

## JURISDICTION

12. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because there is diversity of citizenship and the amount in controversy exceeds $75,000. Johnson is not a citizen of the states of which any of the Defendants are a citizen, and Johnson is not a citizen of any foreign state.

13. This Court has personal jurisdiction over Clearview AI because it has transacted business in New York.

14. This Court has personal jurisdiction over the Individual Defendants because they are domiciled in New York.

## VENUE

15. Venue is proper in this district because there are sufficient contacts in New York.

16. This action arises out of the Wind-Down Agreement in which the Parties consented to be governed by the laws of the state of New York. Exhibit A ¶ 8.

## BACKGROUND

### I. Johnson, Ton-That, and Schwartz Create SmartCheckr.

17. In or around May 2016, Johnson approached Ton-That, who has experience in the technology and intelligence fields, to discuss the possibility of starting a facial recognition technology company.

18. Subsequently, on or about July 23, 2016, Johnson introduced Ton-That to Schwartz, a communications consultant and former deputy mayor of New York City. Johnson, Ton-That, and Schwartz met several times to discuss starting the facial recognition technology company.

19. On or about February 24, 2017, Johnson, Ton-That, and Schwartz created SmartCheckr with the objective of becoming a leader in the field of facial recognition technology by engaging with strategic contacts in law enforcement agencies.

20. The ownership of SmartCheckr was initially divided evenly amongst Johnson, Ton-That, and Schwartz, with each possessing 33.3% ownership. Johnson presided over SmartCheckr as Co-President and Chief Strategic Officer, with Ton-That as Chief Executive Officer, and Schwartz as Co-President and Chief Operating Officer.

21.     From February 24, 2017 until November 24, 2018, Johnson, Ton-That, and Schwartz jointly worked together to enhance the value of their company, create intellectual property, and pursue business development opportunities.

22.     Johnson, Ton-That, and Schwartz mutually contributed to SmartCheckr by combining financial resources and property, contributing effort, skill, and/or knowledge, and exercising joint control over SmartCheckr.  In turn, they contemplated the sharing of profits and losses.

23.     During this period, Johnson owned shares and played a key role in creating SmartCheckr.  Johnson performed responsibilities as a co-founder, including but not limited to, raising money for the enterprise, recruiting talent, and making key policy and management decisions.

24.     Johnson, who was also a confidential informant for the FBI, provided significant value to SmartCheckr through his relationships with the intelligence committee and law enforcement.

25.     Furthermore, Johnson introduced several individuals to Ton-That, who became investors and board members of SmartCheckr.

26.     Johnson also procured crucial funding from investors in order to start the venture's operations.

27.     Ton-That hired Johnson's former employees and reached out to Johnson for advice on key management decisions.

28.     Johnson funded trips for SmartCheckr, including housing, meals, and other miscellaneous costs.

**II.     Johnson, Clearview AI, and the Individual Defendants Enter into an Agreement to Wind Down SmartCheckr.**

29.     In 2018, the Individual Defendants took the first step to divesting Johnson of ownership in SmartCheckr. The Individual Defendants—without consulting Johnson—decided to wind down SmartCheckr and transfer its assets and shares to a new company called Clearview AI.

30.     At the outset, the Individual Defendants tried to completely exclude Johnson from business dealings by attempting to buy out Johnson's equity ownership in SmartCheckr. These attempts failed only after Johnson threatened litigation.

31.     On or about November 24, 2018, Johnson, Clearview AI, and the Individual Defendants entered into the Wind-Down Agreement in which "SmartCheckr, LLC [was] dissolved with immediate effect and its affairs wound up."

32.     The Wind-Down Agreement reduced Johnson's ownership from thirty-three to ten percent. Exhibit A ¶ 2. Johnson agreed to accept "common stock of the Company, at $0.01 per Share, equal to ten percent (10%) of the current fully-diluted equity of the Company." Exhibit A ¶ 2.

33.     In consideration for this reduction of over two-thirds of Johnson's equity and for the fact that "Johnson has provided good and valuable advisory services to the Company" (Exhibit A at 1), the Wind-Down Agreement provided Johnson with the right to receive a lucrative Sales Commission of ten percent (10%) of the gross revenue received by Clearview AI "to the extent Johnson introduces the Company to potential customers with whom the Company was not previously in contact, and such introduction leads, in fact, to a sale of Company software or services . . . upon the consummation of a definitive agreement for such sale." Exhibit A ¶ 5.

34.     The Wind-Down Agreement also included a restrictive covenant in which Johnson, Ton-That, and Schwartz agreed that they would not "make, or cause or assist any other person to make any statement or other communication to any third party which impugns or attacks, or is otherwise critical of, the reputation, business or character of [Clearview AI], or any of its respective directors, officers, representatives, agents or employees." Exhibit A ¶ 4(b).

### III. Defendants Breached the Wind-Down Agreement by Interfering with Johnson's Ability to Recoup any Sales Commissions.

35.     Shortly after the execution of the Wind-Down Agreement, Johnson spent significant effort in connecting Clearview AI with numerous potential customers interested in Clearview AI's products and services.

36.     Johnson also connected Clearview AI with numerous valuable investors interested in providing funding and support for Clearview AI.

37.     During the term of the Wind-Down Agreement, Johnson made several introductions of interested and motivated individuals/entities to Clearview AI. In an attempt to determine whether definitive agreements for Clearview AI's products and services resulted from those introductions, Johnson made repeated requests to the Defendants for those definitive agreements. In response to these requests, Defendants claimed that Clearview AI's records indicated that Clearview AI had no agreements for the sale of Clearview AI's software or services with any customers that were introduced to Clearview AI by Johnson.

38.     Nevertheless, when requested to provide a sworn affidavit by a Clearview AI representative with direct knowledge attesting to Clearview AI's purported position that there are no such agreements written or otherwise, Defendants responded by asking for the names of

7

customers that Johnson introduced to Clearview AI that concluded in an agreement for the sale of Clearview AI's products and services—information that only Defendants possess.

39.     Upon information and belief, discovery will reveal that Clearview AI, in fact, consummated contracts with individuals/entities introduced by Johnson that would have resulted in lucrative Sales Commissions pursuant to Paragraph 5 of the Wind-Down Agreement.

40.     Putting aside the consummated contracts noted above from which Clearview AI failed to pay Johnson his 10% Sales Commissions, Johnson also introduced Clearview AI to many other individuals interested in Clearview AI's products and services. However, these introductions were ultimately ignored, or upon information and belief, resulted in consummated contracts that removed Johnson from the process altogether, rendering his ability to collect the contractually agreed-upon Sales Commissions impossible.

41.     It became clear that the Individual Defendants had no interest in pursuing any of Johnson's introductions in breach of the Wind-Down Agreement and wanted to distance themselves from Johnson altogether.

42.     Indeed, Ton-That informed Hal Lambert, a major investor in the Company, that Ton-That refused to do business with any potential customers Johnson introduced.

43.     There is no good faith explanation for Defendants' refusal to consider (i) Johnson's proposed buyers or (ii) the consummation of contracts with these proposed buyers while removing Johnson from the process. The only explanation is that Defendants wanted to prevent Johnson from realizing the Sales Commissions rightfully owed to Johnson under the Wind-Down Agreement and pocket those revenues for Clearview AI.

**IV.     The Individual Defendants Breached the Contract by Publicly Criticizing Johnson and Denying His Involvement in Clearview AI.**

44.     After the Wind-Down Agreement was executed, it became apparent that the Individual Defendants intended to further distance themselves from Johnson through a campaign of lies and disparagement.

45.     The Individual Defendants continuously circulated false information about Johnson to the press and lied about Johnson's role with Clearview AI to further hinder Johnson's ability to sell Clearview AI's products and services.

46.     On many occasions, Johnson pled with the Individual Defendants to correct these false and disparaging statements that were made about him. However, the Individual Defendants denied Johnson's requests.

47.     Johnson also sought guidance from the Clearview AI's public relations and legal team, who refused to advise Johnson.

48.     The disparaging and false comments made by the Individual Defendants irreparably damaged Johnson's reputation and resulted in significant economic harm.

**CAUSES OF ACTION**

**COUNT I**
**(Breach of Contract – Against Clearview AI)**

49.     Paragraphs 1–48 above are incorporated as if fully set forth herein.

50.     The Wind-Down Agreement constitutes a valid and enforceable contract between Johnson, Clearview AI, Ton-That, and Schwartz.

51.     Johnson complied with all conditions precedent, if any, and fully performed his obligations under the Wind-Down Agreement, including introducing Clearview AI to potential

9

customers with whom Clearview AI was not previously in contact, which led to definitive agreements for sales of Clearview AI software or services. *See* Exhibit A ¶ 5.

52. Clearview AI failed to pay Johnson the Sales Commission for introductions of new customers that Johnson made leading to final sales of Clearview AI software or services.

53. Clearview AI breached its obligation to pay Johnson the Sales Commission for every introduction of new customers that Johnson made that led to sales of Clearview AI software or services. *See* Exhibit A ¶ 5.

54. Johnson has suffered damages exceeding $75,000 as a proximate result of Clearview AI's breach of contract.

55. Johnson is entitled to all compensatory and consequential damages in an amount to be determined at trial, as well as any other injunctive or other appropriate equitable relief. *See* Exhibit A ¶ 4(e).

**COUNT II**
**(Breach of Contract – Against Individual Defendants)**

56. Paragraphs 1–55 above are incorporated as if fully set forth herein.

57. The Wind-Down Agreement constitutes a valid and enforceable contract between Johnson, Clearview AI, Ton-That, and Schwartz.

58. Johnson complied with all conditions precedent, if any, and fully performed his obligations under the Wind-Down Agreement.

59. The Individual Defendants publicly criticized and disparaged Johnson and denied his involvement in Clearview AI.

60. The Individual Defendants breached their obligations under the Wind-Down Agreement to not make any statements that were critical of Johnson's reputation and character. *See* Exhibit A ¶ 4(b).

61. Johnson has suffered damages exceeding $75,000 as a proximate result of the Individual Defendants' breach of contract.

62. Johnson is entitled to all compensatory and consequential damages in an amount to be determined at trial, as well as any other injunctive or other appropriate equitable relief. *See* Exhibit A ¶ 4(e).

## COUNT III
**(Breach of the Duty of Good Faith and Fair Dealing – Against All Defendants)**

63. Paragraphs 1–62 above are incorporated as if fully set forth herein.

64. The duty of good faith and fair dealing during the course of performance is implied in the Wind-Down Agreement.

65. Defendants materially breached the duty of good faith and fair dealing under the Wind-Down Agreement by knowingly and substantially impairing Johnson's rights under the Wind-Down Agreement, including but not limited to, the right to earn Sales Commissions as compensation for Johnson's lost equity. Defendants: (i) arbitrarily refused to negotiate with Johnson's contacts; (ii) knowingly spread false information denying Johnson's role with Clearview AI; and (iii), upon information and belief, concealed consummated contracts that resulted from Johnson's introductions.

66. Johnson has suffered damages exceeding $75,000 as a proximate result of the Defendants' breach of the duty of good faith and fair dealing.

67. Johnson is entitled to all compensatory and consequential damages in an amount to be determined at trial, as well as any other injunctive or other appropriate equitable relief. *See* Exhibit A ¶ 4(e).

## COUNT IV
### (Unjust Enrichment – Against Clearview AI)

68. Paragraphs 1 —67 above are incorporated as if fully set forth herein.

69. This cause of action is pled in the alternative to Johnson's breach of contract and breach of the duty of good faith and fair dealing claims. To the extent that there is no dispute that a valid contract exists between the parties, Johnson does not intend to proceed with his unjust enrichment claim.

70. Johnson conferred a tangible economic benefit upon Clearview AI by providing his services, knowledge, and contacts.

71. Clearview AI continued to use and benefit from Johnson's services.

72. By engaging in the conduct described above, Clearview AI has unjustly enriched itself and received a benefit in excess of $75,000, at the expense of Johnson.

73. It would be unjust and inequitable for Clearview AI to retain the benefit of Johnson's services.

74. By reason of the foregoing, Clearview AI is liable to Johnson for the damage that he has suffered as a result of Clearview AI's actions, the amount of which shall be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Johnson respectfully asks the Court to:

(a) Order necessary and appropriate injunctive or other appropriate equitable relief;

(b) Award Johnson compensatory damages in excess of $75,000 to be proved at trial;

(c) Award Johnson all costs and interests allowed by law, including attorney's fees;

(d) Award Johnson such other relief as is just and reasonable; and

(e) Provide Johnson with the right to amend this Complaint in the event the Court determines Johnson has failed to adequately plead any of the foregoing claims against Defendants or as other events may warrant.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Johnson demands a trial by jury in this action of all issues so triable.

Dated: March 22, 2023               ALSTON & BIRD LLP

/s/ Steven L. Penaro
Steven L. Penaro
90 Park Avenue
New York, New York 10016
Tel: (212) 210-9460
steve.penaro@alston.com

*Attorneys for Plaintiff*