# EXHIBIT A

EXECUTION COPY

# WIND-DOWN AND TRANSFER AGREEMENT

THIS WIND-DOWN AND TRANSFER AGREEMENT (this "**Agreement**") is dated as of November 24, 2018, by and between Clearview AI, Inc. a Delaware corporation, and each of its subsidiaries and affiliates (hereinafter collectively referred to as the "**Company**"), the undersigned individuals Cam-Hoan Ton-That ("**Ton-That**"), Charles C. Johnson ("**Johnson**"), Richard J. Schwartz ("**Schwartz**") (Ton-That, Johnson and Schwartz, collectively, the "**Individuals**"), and collectively, the ("**Parties**").

WHEREAS, the Individuals are the owners of 100 percent of the membership interests in SmartCheckr, LLC, a New York limited liability company; and

WHEREAS, the Individuals wish to wind-down operations and dissolve SmartCheckr, LLC; and

WHEREAS, Johnson has provided good and valuable advisory services to the Company.

NOW THEREFORE, in consideration of the mutual covenants and representations set forth below, the Parties agree as follows:

1. The Individuals mutually agree that pursuant to Section 13.1 of that certain Limited Liability Operating Agreement of SmartCheckr, LLC, dated February 24, 2017, SmartCheckr, LLC will be dissolved with immediate effect and its affairs wound up. The Individuals agree and acknowledge that as of the date hereof, SmartCheckr, LLC has no assets or liabilities, and hereby appoint Schwartz as its agent and attorney-in-fact to effectuate its orderly dissolution and winding up pursuant to the Limited Liability Company Law of the State of New York.

2. Subject to the terms and conditions of this Agreement, the Company agrees to issue, and Johnson, through a limited liability company to be designated within thirty (30) days of the date hereof (the "**Transferee**"), agrees to subscribe for that number of shares of common stock of the Company (the "**Shares**"), at $0.01 per Share, equal to ten percent (10%) of the current fully-diluted equity of the Company. Johnson represents that any Shares acquired pursuant to this Agreement are being purchased for his own account, for investment, and not for distribution or resale to others. Except in connection with a change in control of the Company (including an initial public offering), neither Johnson nor the Transferee will assign any or all of such Shares or any beneficial interest therein, in whole or in part, to any other person or entity without the prior consent of the Company. Johnson understands that there is no public market for the Shares and that a public market is not likely to develop. Johnson represents that he is cognizant of and understands Rule 144 promulgated under the United States Securities Act of 1933, as amended (the "**Act**") and the limitations on the transfer of "restricted securities" imposed thereby which shall apply to the Shares. Johnson understands that the Shares have not been registered under the Act or any state securities laws by reason of specific

LEGAL_US_E # 138228963.6

exemptions under the provisions thereof which depend in part upon the investment intent of Johnson and of the other representations made by Johnson in this Agreement.

3. In connection with the Company's first sale of at least Two Million Dollars ($2,000,000) worth of Preferred Stock of the Company in the aggregate (a "**Qualified Financing**"), the Company shall, for no additional consideration, promptly cause the Company to issue to Transferee that number of additional shares of Common Stock necessary to ensure that Transferee holds Common Stock representing not less than ten percent (10%) of the total outstanding Capital Stock of the Company as determined on a Fully-Diluted Basis after giving effect to any shares issued to counter-parties of Simple Agreements for Future Equity (SAFE) with the Company in connection with such Qualified Financing but disregarding and not giving effect to (x) any Preferred Stock sold in such Qualified Financing and (y) any shares issued in connection with, or set aside for, the Company's employee incentive plans.

4. The Parties hereby agree to the following Restrictive Covenants:

   a. At any time the Individuals or affiliates of the Individuals (including, in the case of Johnson, the Transferee) are stockholders of the Company, and for a period of two (2) years thereafter (the "**Restricted Period**"), the Individuals shall not directly or indirectly induce or attempt to induce any supplier, licensor or other person or entity then having a similar non-customer/client business relationship with the Company or any of its affiliates to cease doing such non-customer/client business with the Company or any of its affiliates, or in any way knowingly interfere with the relationship between the Company or any of its affiliates and any supplier, licensor or other similar non-customer/client business relationship. As used herein, and as used in Section 5, the term "indirectly" will include, without limitation, the authorized use of an Individual's name by another person or entity to induce or interfere with any employee or business relationship of the Company or any of its affiliates.

   b. The Individuals agree that at no time during the Restricted Period shall the Individuals or affiliates of the Individuals (including, in the case of Johnson, the Transferee) make, or cause or assist any other person to make any statement or other communication to any third party which impugns or attacks, or is otherwise critical of, the reputation, business or character of the Company, or any of its respective directors, officers, representatives, agents or employees. The Company agrees, in turn, that it will not make, in any authorized corporate communications to third parties, and it will direct the members of the Board not to make, cause or assist any other person to make any statement or other communication to any third party which impugns or attacks, or is otherwise critical of the reputation, business or character of any of the Individuals. Notwithstanding anything in this Section 5(b) to the contrary, in no event shall any party be prohibited from

    providing truthful testimony in connection with a legal proceeding or governmental investigation.

    c. Johnson agrees that without the prior written consent of the Company, at no time during the Restricted Period shall Johnson or any of his affiliates, including the Transferee, publicly disclose the existence of this Agreement, his indirect ownership of the Shares, or his prior provision of services to the Company.

    d. The Individuals represent that they (i) are familiar with the foregoing covenants in this Section 5, (ii) are fully aware of their obligations hereunder, (iii) agree to the reasonableness of the length of time, scope and geographic coverage of the foregoing covenants, and (iv) agree that such covenants are necessary to protect the Company's confidential and proprietary information, good will, stable workforce, and customer relations.

    e. The Parties agree that a breach of any of the covenants of Section 4 would cause material and irreparable harm to the Company that would be difficult or impossible to measure, and that damages or other legal remedies available to the Company for any such injury would, therefore, be an inadequate remedy for any such breach. Accordingly, the Parties agree that in the event of a breach of any term of Section 5, the Company shall be entitled, in addition to and without limitation upon all other remedies the Company may have under this Agreement, at law or otherwise, to obtain injunctive or other appropriate equitable relief, without bond or other security, to restrain any such breach. Such equitable relief in any court shall be available to the Company in lieu of, or prior to or pending determination in any legal proceeding.

5. The Company hereby agrees that to the extent Johnson introduces the Company to potential customers with whom the Company was not previously in contact, and such introduction leads, in fact, to a sale of Company software or services, then, upon the consummation of a definitive agreement for such sale, the Transferee shall be entitled to a sales commission of ten percent (10%) of the gross revenue received by the Company under such agreement during the first twenty-four (24) months thereof (the "**Sales Commission**"). Any such sale commission shall be paid proportionately in cash within thirty (30) days of the Company receiving payment(s) from the applicable customer.

6. The Parties mutually agree that upon the execution of this Agreement and the consummation of the transactions contemplated hereby, and except for the Sales Commission and any claims which may arise for a breach hereof, neither Party shall have any further obligations, financial or otherwise, to the other Party whatsoever. Johnson and Transferee hereby waive any and all rights to additional and/or future payments or issuance of equity from the Company or its affiliates other than in connection with Section 3 hereof.

3

7. Each Party agrees, for itself and its heirs, executors, and assigns, that the terms of this Agreement are offered by the Company without any admission of liability on the part of the Company or any affiliate, and are in full and final settlement of any and all claims or rights of action, liability or responsibility for all grievances, disputes, actions, and claims at law or equity, sounding in contract or tort, whether under any state or federal statutory or common law, that such Party has or may have against the other Party, arising out of or related in any way to the SmartCheckr, LLC and the operations or activities carried out thereby, whether such claims are, or could be, known to the Parties as of the date hereof.

8. This Agreement may be executed in counterparts. A facsimile or .pdf of this Agreement and signatures shall be as effective as an original. This Agreement represents the entire agreement and understanding of the Parties with respect to the subject matter hereof and supersedes all prior agreements and understandings of the parties in connection therewith. This Agreement may not be altered or amended except by mutual agreement evidenced by a writing signed by the Parties. This Agreement shall be governed by the laws of the State of New York, without regard to conflicts of laws.

[*Remainder of page left intentionally blank. Signature page(s) follow*.]

LEGAL_US_E # 138228963.6

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

Charles C. Johnson:

By: *[signature: Charles Johnson]*

Cam-Hoan Ton-That

By: *[signature: Hoan Ton-That]*

Richard J. Schwartz

By: *[signature: Richard Schwartz]*

Clearview AI, Inc.

By: *[signature: Hoan Ton-That]*

[*Signature Page to Wind-Down and Transfer Agreement*]

LEGAL_US_E # 138228963.6