**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CHARLES JOHNSON,

                    Plaintiff,

          vs.                                              Case No. 1:23-cv-02441 (KPF)

CLEARVIEW AI, INC., HOAN TON-THAT and
RICHARD SCHWARTZ,

                    Defendants.

## <u>MEMORANDUM OF LAW IN OPPOSITION TO</u> <u>DEFENDANTS' MOTION TO DISMISS</u>

ALSTON & BIRD LLP

Steven L. Penaro
Kristen C. Kuan
New York, New York 10016
Tel: (212) 210-9400
steve.penaro@alston.com
kristen.kuan@alston.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ........................................................................................................ 3

ARGUMENT ........................................................................................................................... 5

I.    JOHNSON'S BREACH OF CONTRACT CLAIM AGAINST THE INDIVIDUAL
      DEFENDANTS (COUNT II) SHOULD NOT BE DISMISSED ...................................... 6

      A.    Section 4(b) Of The Wind-Down Agreement Applies To Statements Made About
            Johnson Because He Was An Agent Or Representative Of Clearview During The
            Relevant Time Period. ......................................................................................... 6

      B.    Defendants' Attempts To Exclude Johnson From Section 4(b) Of The Wind-
            Down Agreement Fail. ......................................................................................... 9

      C.    Section 4(b) Of The Wind-Down Agreement Applies To Statements Made About
            Johnson Because The Statements Made By The Individual Defendants About
            Johnson Were Critical Of Johnson's Reputation Or Character. .......................... 10

II.   JOHNSON'S BREACH OF GOOD FAITH AND FAIR DEALING CLAIM (COUNT
      III) SHOULD NOT BE DISMISSED ............................................................................ 11

      A.    Johnson's Breach Of Good Faith And Fair Dealing Claim Is Not Duplicative Of
            His Breach Of Contract Claim ............................................................................ 11

      B.    Johnson Has Sufficiently Alleged A Claim For Breach Of Good Faith And Fair
            Dealing. ............................................................................................................. 13

III.  JOHNSON IS PERMITTED TO ALLEGE HIS UNJUST ENRICHMENT CLAIM
      (COUNT IV) IN THE ALTERNATIVE SHOULD DISCOVERY REVEAL THAT THE
      WIND-DOWN AGREEMENT IS INVALID ................................................................. 14

CONCLUSION ...................................................................................................................... 15

## **TABLE OF AUTHORITIES**

**Page(s)**

FEDERAL CASES

*APEX Employee Wellness Servs., Inc. v. APS Healthcare Bethesda, Inc.*,
    725 F. App'x 4 (2d Cir. 2018)........................................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................6

*Banko Co. v. Starrett Hous. Corp.*,
    1991 U.S. Dist. LEXIS 14659 (S.D.N.Y. Oct. 10, 1991) ....................................6, 7

*Barron v. Helbiz Inc.*,
    2023 U.S. Dist. LEXIS 155324 (S.D.N.Y. Aug. 31, 2023) ......................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................................5

*BOCA Aviation Ltd. v. AirBridgeCargo Airlines, LLC*,
    2023 U.S. Dist. LEXIS 63610 (S.D.N.Y Apr. 11, 2023)..........................................9

*Conti v. Doe*,
    535 F. Supp. 3d 257 (S.D.N.Y. 2021).....................................................................10

*Eastman Chem. Co. v. Nestle Waters Mgmt. & Tech*,
    2012 U.S. Dist. LEXIS 141281 (S.D.N.Y. Sept. 28, 2012).....................................14

*Fed. Ins. Co. v. Am. Home Assur. Co.*,
    639 F.3d 557 (2d Cir. 2011).......................................................................................8

*Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*,
    10 F. Supp. 3d 460 (S.D.N.Y. 2014).........................................................................8

*Full Circle United, LLC v. Skee-Ball, Inc.*,
    2014 U.S. Dist. LEXIS 202841 (E.D.N.Y. May 13, 2014) ....................................12

*Gao v. JPMorgan Chase & Co.*,
    2015 U.S. Dist. LEXIS 74793 (S.D.N.Y. June 9, 2015)....................................14, 15

*Gregory v. Daly*,
    243 F.3d 687 (2d Cir. 2001).......................................................................................5

*Haight v. NYU Langone Med. Ctr.*,
    2014 U.S. Dist. LEXIS 88117 (S.D.N.Y. June 27, 2014).........................................8

*Holland Loader Co., LLC v. FLSmidth A/S*,
    313 F. Supp. 3d 447 (S.D.N.Y. 2018).......................................................................9

*Kelly v. Schmidberger*,
    806 F.2d 44 (2d Cir. 1986).............................................................................10

*Khan v. Laninver United States*,
    2021 U.S. Dist. LEXIS 64417 (W.D.N.Y. Mar. 31, 2021)....................................12

*Neitzke* v. *Williams*,
    490 U.S. 319 (1989).......................................................................................5

*Nespresso USA, Inc. v. Peet's Coffee, Inc.*,
    2023 U.S. Dist. LEXIS 12228 (S.D.N.Y. Jan. 24, 2023)........................................8

*Process Am., Inc. v. Cynergy Holdings, LLC*,
    839 F.3d 125 (2d Cir. 2016).........................................................................7, 8

*Royal Dispatch Servs. v. UBS Fin. Servs.*,
    2012 U.S. Dist. LEXIS 107027 (E.D.N.Y. Jul. 31, 2012)....................................13

*S. Telecom Inc. v. ThreeSixty Brands Grp.*,
    LLC, 520 F. Supp. 3d 497 (S.D.N.Y 2021) ...................................................13

*SA Luxury Expeditions, LLC v. Schleien*,
     2022 U.S. Dist. LEXIS 155127 (S.D.N.Y. Aug. 29, 2022) ...............................11

*Scheuer* v. *Rhodes*,
    416 U.S. 232 (1974)....................................................................................5, 6

*Spinelli v. NFL*,
    903 F.3d 185 (2d Cir. 2018).........................................................................12

*Summit Health, Inc. v. APS Healthcare Bethesda, Inc.*,
    993 F. Supp. 2d 379 (S.D.N.Y. 2014)...............................................................8

*Supreme Showroom, Inc. v. Branded Apparel Grp. LLC*,
    2018 U.S. Dist. LEXIS 107902 (S.D.N.Y. June 27, 2018)..................................7, 8

*Tarshis v. Riese Org.*,
    211 F.3d 30 (2d Cir. 2000)...............................................................................5

*Trireme Energy Holdings, Inc. v. Innogy Renewables US LLC*,
    2021 U.S. Dist. LEXIS 154846 (S.D.N.Y. Aug. 17, 2021)..................................12

*United States v. Thomas*,
    377 F.3d 232 (2d Cir. 2004)............................................................................7

STATE CASES

*Dalton v. Educ. Testing Serv.*,
    87 N.Y.2d 384 (1995) ...................................................................................13

*N.Y. State Thruway Auth. v. KTA-Tator Eng'g Servs., P.C.*,
   78 A.D.3d 1566, 913 N.Y.S.2d 438 (4th Dep't 2010) ..............................................9

**RULES**

Fed. R. Civ. P. 12(b)(6)........................................................................................5

**OTHER AUTHORITIES**

Black's Law Dictionary, 11th Ed. (2019)...............................................................7

Restatement (Third) Of Agency § 1.01 (2006).......................................................7

Plaintiff Charles Johnson ("Johnson"), by and through his undersigned attorneys, respectfully submits this Memorandum of Law in opposition to Defendant Clearview AI, Inc. ("Clearview") and the Individual Defendants Hoan Ton-That and Richard Schwartz's (together, the "Individual Defendants" and collectively with Clearview, the "Defendants") Partial Motion to Dismiss Counts II, III, and IV of the Amended Complaint.[1]

## PRELIMINARY STATEMENT

This lawsuit arises out of Defendants' misconduct in materially breaching a contract between Johnson and Defendants (the "Wind-Down Agreement") under which the parties agreed to transfer the assets and shares of a facial recognition technology company called SmartCheckr LLC ("SmartCheckr") that Johnson co-founded into a new company that would ultimately become Clearview. Despite Johnson's significant efforts in creating, nurturing, and developing SmartCheckr, Johnson agreed to drastically diminish his ownership interest in the newly formed Clearview from thirty-three percent to ten percent under the Wind-Down Agreement. Johnson's reason for drastically reducing his ownership interest was simple. In return for the reduced ownership interest, Johnson was to receive lucrative sales commissions of ten percent of the gross revenue received by Clearview when Johnson introduced potential new customers that resulted in consummated sales of Clearview's products or services. The ability to obtain the lucrative ten percent sales commissions was a material consideration for Johnson in agreeing to drastically reduce his equity.

However, unbeknownst to Johnson, Defendants had no intention of paying Johnson *any* sales commissions for introductions made by Johnson that resulted in a sale of Clearview's products or services. Indeed, Johnson is aware of at least two introductions that he made that

---

[1] Defendants do not move to dismiss Count I of the Amended Complaint.

resulted in consummated sales of Clearview's technology that he was never compensated for. What is more, Defendants ensured that no sales commission could ever be obtained by Johnson as the Individual Defendants completely ignored or refused to negotiate with many potential customers that Johnson introduced to Clearview.

If that was not enough, the Individual Defendants breached another provision of the Wind-Down Agreement by continuously making false statements, often in the press, about Johnson's involvement in co-founding Clearview. This campaign of lies has harmed Johnson's reputation and character by discrediting him and painting him as not credible in the artificial intelligence community, which has not only created obstacles in generating more business for Clearview, but also in other business ventures for Johnson.

Now, Johnson brings this suit in order to hold Defendants accountable for their misconduct and to recover the damages that Johnson has suffered as a direct result of Defendants' multiple breaches of the Wind-Down Agreement. In turn, the Defendants bring their Partial Motion to Dismiss based on misguided interpretations of the facts and the law. Indeed, Johnson's claims have all been adequately pled and should be allowed to proceed past the motion to dismiss stage and into discovery, which will reveal that Defendants, in fact, breached the Wind-Down Agreement and acted in bad faith.

* * *

*First*, the Defendants' arguments that Section 4(b) of the Wind-Down Agreement does not cover statements made about Johnson are fatally flawed. In fact, the statements made about Johnson are covered by Section 4(b) of the Wind-Down Agreement because Johnson was, at the very least, an agent or representative of Clearview, and the statements made by the Individual Defendants were made to "impugn[] or attack, or [was] otherwise critical of, the reputation or

character" of Johnson. Furthermore, whether or not the statements made about Johnson are covered under the Wind-Down Agreement is ultimately a question of fact that is not suitable for adjudication at the motion to dismiss stage.

*Second*, Johnson's breach of contract claim and a breach of the good faith and fair dealing claim may co-exist for the simple reason that each claim is based on a different set of facts. Johnson has also met the requisite pleading standard in stating a claim for breach of good faith and fair dealing.

*Third*, Johnson is permitted to bring his unjust enrichment claim in the alternative to a breach of contract claim in the event that discovery reveals that the Wind-Down Agreement was procured by fraud or is otherwise invalid.

Accordingly, Defendants have not met their burden to demonstrate that Johnson has failed to state a claim upon which relief should be granted and Defendants' Partial Motion to Dismiss should be denied in its entirety.

## <u>STATEMENT OF FACTS</u>

On or about February 24, 2017, Johnson and the Individual Defendants created a new preeminent facial recognition technology company called SmartCheckr. Dkt. No. 25 ("Am. Compl.") ¶ 19. The ownership of SmartCheckr was evenly divided among each of the Individual Defendants and Johnson, and they worked together for nearly two years to enhance the value of their company, create intellectual property, and pursue business opportunities. *Id*. ¶¶ 20, 21. Johnson played a key role in the day-to-day operations of SmartCheckr, which included raising capital, recruiting talent, and making introductions to several individuals who later became investors and board members. *Id*. ¶¶ 23-28.

However, in late 2018, the Individual Defendants, unbeknownst to Johnson, decided to

wind down SmartCheckr and transfer all of its assets to a new company that would later become Clearview. Am. Compl. ¶ 29. Incredibly, the Individual Defendants initially tried to exclude Johnson from all business dealings involving Clearview by attempting to buy out Johnson's equity ownership in SmartCheckr. *Id*. ¶ 30. However, their scheme ultimately failed after Johnson threatened litigation. *Id*.

On November 24, 2018, Johnson, Clearview and the Individual Defendants entered into the Wind-Down Agreement, which dissolved SmartCheckr and created Clearview. Am. Compl. ¶ 31. Johnson ultimately agreed to a reduction of his ownership from thirty-three percent to ten percent of the "current fully-diluted equity of [Clearview]" in return for the ability to receive a lucrative sales commission of ten percent of the gross revenue received by Clearview (the "Sales Commission") "to the extent Johnson introduces [Clearview] to potential customers with whom [Clearview] was not previously in contact, and such introduction leads, in fact, to a sale of [Clearview] software or services . . . upon the consummation of a definitive agreement for such sale." *Id*. ¶ 33 (citing Section 5 of the Wind-Down Agreement).

The Wind-Down Agreement also contained a restrictive covenant whereby Johnson and the Individual Defendants agreed that during the "Restricted Period" they would not "make, or cause or assist any other person to make any statement or other communication to any third party which impugns or attacks, or is otherwise critical of, the reputation, business or character of [Clearview], or any of its respective directors, officers, representatives, agents or employees." *Id*. ¶ 34 (citing Section 4(b) of the Wind-Down Agreement). The Wind-Down Agreement defines "Restricted Period" as the time Johnson and the Individual Defendants are stockholders of Clearview, and for a period two years thereafter. *Id*. ¶ 35.

Shortly after the execution of the Wind-Down Agreement, Johnson spent significant

effort connecting Clearview with numerous motivated customers, including the Miami Dade Police Department and the Texas Department of Public Safety, that ultimately led to consummated contracts that triggered the ten percent Sales Commission that Johnson was entitled to receive. Am. Compl. ¶¶ 36-40. However, the Defendants have failed to pay Johnson's Sales Commissions for these consummated contracts. *Id*. ¶ 45.

Apart from these consummated contracts, there were many other individuals interested in purchasing Clearview's products and services that Johnson introduced to Clearview that were ultimately ignored. Am. Compl. ¶ 46. Instead of pursuing any of these introductions, the Individual Defendants undertook a campaign of lies in order to distance themselves from Johnson altogether. *Id*. ¶ 47. From 2019 through March 2021, the Individual Defendants continuously circulated false information about Johnson to the press (including two articles published in the New York Times) and a myriad of individuals by denying that Johnson founded Clearview and that he had an operational role. *Id*. ¶¶ 51-54.

## ARGUMENT

On a motion to dismiss a complaint under Rule 12(b)(6), a court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001) (quoting *Tarshis v. Riese Org.*, 211 F.3d 30, 35 (2d Cir. 2000)). The court should not dismiss the complaint for failure to state a claim if the "[f]actual allegations . . . raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Neitzke* v. *Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer* v. *Rhodes*,

416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely")); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236.

I.    **JOHNSON'S BREACH OF CONTRACT CLAIM AGAINST THE INDIVIDUAL DEFENDANTS (COUNT II) SHOULD NOT BE DISMISSED**

A.    **Section 4(b) Of The Wind-Down Agreement Applies To Statements Made About Johnson Because He Was An Agent Or Representative Of Clearview During The Relevant Time Period.**

Section 4(b) states that the Individual Defendants shall not "make, or cause or assist any other person to make any statement or other communication to any third party which impugns or attacks, or is otherwise critical of, the reputation, business or character of the Company, or any of its ***respective directors, officers, representatives, agents, or employees***." Am. Compl. ¶ 34 (emphasis added). Here, Section 4(b) of the Wind-Down Agreement clearly applies to statements made about Johnson because Johnson was, during the relevant time, a "director, officer, representative, agent or employee" of Clearview and the Amended Complaint has sufficiently alleged such a relationship in order to survive a motion to dismiss.

*First*, the Amended Complaint alleges that Johnson was a minority owner of Clearview. *See* Am. Compl. ¶ 32 (alleging that the Wind-Down Agreement reduced Johnson's ownership in Clearview from thirty-three to ten percent). That in and of itself is sufficient to demonstrate an agency relationship. *See Barron v. Helbiz Inc.*, 2023 U.S. Dist. LEXIS 155324, at *10 (S.D.N.Y. Aug. 31, 2023) ("[A]n uncontested principal owner of a company may be presumed to be an agent of a company.") (quoting *Banko Co. v. Starrett Hous. Corp.*, 1991 U.S. Dist. LEXIS 14659, at *1

6

(S.D.N.Y. Oct. 10, 1991) (finding that owner was an agent of the company under the law of agency)).

*Second*, the Amended Complaint extensively alleges an agency relationship between Johnson and Clearview in that the Wind-Down Agreement provided Johnson, as an independent contractor, the right to receive a lucrative Sales Commission of ten percent of the gross revenue received by Clearview provided that Johnson introduced Clearview to potential customers that led to a sale of Clearview's products and services. Am. Compl. ¶ 33. It is well-settled that an independent contractor is considered to be an agent. *See Supreme Showroom, Inc. v. Branded Apparel Grp. LLC*, 2018 U.S. Dist. LEXIS 107902, at *23 (S.D.N.Y. June 27, 2018) (finding the independent contractor was an agent even though the parties' sales agreement disclaimed a principal-agent relationship); *United States v. Thomas*, 377 F.3d 232, 238 (2d Cir. 2004) (stating that an independent contractor may also be an agent). Even though Johnson may not have the authority to bind Clearview to a contract, that is not the end of the inquiry when determining if an agency relationship exists. *See Supreme Showroom*, 2018 U.S. Dist. LEXIS 107902, at *23 ("[I]t is only colloquially that the terms independent contractor and agent are necessarily distinct, and the power to bind a principal is not the *sine qua non* of an agency relationship") (citing Restatement (Third) Of Agency § 1.01 (2006) cmt. c ("Agents who lack authority to bind their principals to contracts nevertheless often have authority to negotiate or to transmit or receive information on their behalf.")).

*Third*, the Amended Complaint also alleges that Johnson is a representative of Clearview. Am. Compl. ¶¶ 36-40. The Black's Law Dictionary defines representative as "[o]ne who stands for or acts on behalf of another." Black's Law Dictionary, 11th Ed. (2019). Under New York law, "words and phrases . . . should be given their plain meaning." *Process Am., Inc. v. Cynergy*

7

*Holdings, LLC*, 839 F.3d 125, 133 (2d Cir. 2016) (internal citations omitted). In determining that meaning, courts generally look to dictionary definitions. *See Summit Health, Inc. v. APS Healthcare Bethesda, Inc.*, 993 F. Supp. 2d 379, 390 (S.D.N.Y. 2014), *aff'd sub nom. APEX Employee Wellness Servs., Inc. v. APS Healthcare Bethesda, Inc.*, 725 F. App'x 4 (2d Cir. 2018); *see also Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*, 10 F. Supp. 3d 460, 494 (S.D.N.Y. 2014) (noting that it is "common practice" for New York courts "to refer to the dictionary to determine the plain and ordinary meaning of words of a contract") (citing *Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 567 (2d Cir. 2011)).

Here, Johnson introduced Clearview to many individuals and entities that were interested in Clearview's products and services. Am. Compl. ¶ 36. In fact, at least two of those introductions (with the Miami Dade Police Department and the Texas Department of Public Safety) resulted in the use of Clearview's products and services. Am. Compl. ¶¶ 36-40. These allegations clearly demonstrate that Johnson was, at the very least, a representative of Clearview, as Johnson was acting on behalf of Clearview in order to bring in business for Clearview.

In any event, the issue of whether Johnson qualifies as a director, officer, representative, agent or employee of Clearview unequivocally creates a triable issue of fact that does not warrant adjudication at the motion to dismiss stage. *See Nespresso USA, Inc. v. Peet's Coffee, Inc.*, 2023 U.S. Dist. LEXIS 12228, at *26 (S.D.N.Y. Jan. 24, 2023) (denying motion to dismiss where a question of fact existed); *Haight v. NYU Langone Med. Ctr.*, 2014 U.S. Dist. LEXIS 88117, at *31 (S.D.N.Y. June 27, 2014) ("The determination of whether an entity may be considered an employer is essentially a factual issue."); *Supreme Showroom*, 2018 U.S. Dist. LEXIS 107902, at *20 (internal citations omitted) ("The existence of an agency relationship is a mixed question of law and fact that should generally be decided by a jury. . .  Likewise, whether a fiduciary relationship

exists is necessarily fact specific.").

**B.    Defendants' Attempts To Exclude Johnson From Section 4(b) Of The Wind-Down Agreement Fail.**

Defendants seem to suggest, based on their readings of Sections 4(d) and 4(e) of the Wind-Down Agreement, that Section 4(b) only applies to statements made against Clearview and argue that any damages from a breach of Section 4(b) would only flow to Clearview rather than Johnson in his individual capacity. However, the Defendants completely ignore the fact that Section 4(b) explicitly extends to "directors, officers, representatives, agents, or employees" of Clearview. If allowed to read Sections 4(d) and 4(e) separate and apart from the entirety of the contract, it would effectively render Section 4(b) meaningless, which is wholly impermissible under well-settled law. *See BOCA Aviation Ltd. v. AirBridgeCargo Airlines, LLC*, 2023 U.S. Dist. LEXIS 63610, at *38-39 (S.D.N.Y Apr. 11, 2023) (internal citations omitted) ("The Court 'must give effect and meaning . . . to every term of [a] contract' and strive 'to harmonize all of its terms.'") ("The Court must guard against adopting a[n] . . . interpretation that would 'render any individual provision superfluous.'"); *see also N.Y. State Thruway Auth. v. KTA-Tator Eng'g Servs., P.C.*, 78 A.D.3d 1566, 913 N.Y.S.2d 438, 440 (4th Dep't 2010) ("It is well settled that a contract must be read as a whole to give effect and meaning to every term . . .  Indeed, a contract should be interpreted in a way that reconciles all of its provisions, if possible."); *Holland Loader Co., LLC v. FLSmidth A/S*, 313 F. Supp. 3d 447, 469 (S.D.N.Y. 2018) (internal citations omitted) ("In interpreting a contract, courts 'should examine the entire contract and consider the relation of the parties and the circumstances under which it was executed. Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby.'"). Thus, the Court should not allow the Defendants to carve out certain sections of the Wind-Down Agreement in order to fit their narrative.

**C.      Section 4(b) Of The Wind-Down Agreement Applies To Statements Made About Johnson Because The Statements Made By The Individual Defendants About Johnson Were Critical Of Johnson's Reputation Or Character.**

The statements made by the Individual Defendants clearly attack or are critical of Johnson's reputation and character, which is plainly prohibited by the plain language of Section 4(b) of the Wind-Down Agreement. At every turn, the Individual Defendants have continuously claimed that Johnson had nothing to do with Clearview and that he was not the founder nor in any way affiliated with Clearview. *See* Am. Compl. ¶¶ 50-54. These statements are critical of Johnson's reputation or character because they discredit him and plainly paint him as incredible in the artificial intelligence community. Not only do these statements prohibit him from soliciting business for Clearview (and thereby frustrate his ability to obtain Sales Commissions under the Wind-Down Agreement), but they also create immense hurdles for him to generate other lucrative business opportunities within this community.

Furthermore, like the threshold issue of whether Johnson qualifies as a representative or agent of Clearview, whether the statements made by the Individual Defendants "impugn, attack or criticize" Johnson's business, reputation or character is similarly a triable issue of fact that is not ripe for adjudication at the motion to dismiss stage. Am. Compl. ¶ 34; *see Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986) ("On a motion to dismiss or for summary judgment, the issue is not whether the court regards the language as libelous, but whether it is reasonably susceptible of such a construction. The court may not . . . interfere with the jury's role by treating as nondefamatory a statement that a reasonable juror may fairly read in context as defamatory."); *Conti v. Doe*, 535 F. Supp. 3d 257, 266 (S.D.N.Y. 2021) ("The Court must determine whether the contested statements are reasonably susceptible of a defamatory connotation . . . If any defamatory construction is possible, it is a question of fact for the jury whether the statements were understood as defamatory.").

Likewise, Defendants' reliance on *SA Luxury Expeditions, LLC v. Schleien* is misguided. While the defendants in *SA Luxury* had an explicit agreement with the plaintiffs prohibiting them "from making disparaging written or oral statements 'describing [SA Luxury] in a manner that could reasonably be construed to portray [it] in a negative light, including by describing [it] as dishonest, incompetent, corrupt, immoral, unethical, weak, unimportant, evil, or craven,'" the defendants subsequently chose to give 4-star ratings to the plaintiffs, which lowered their consistently high 5-star ratings. 2022 U.S. Dist. LEXIS 155127, at *5-6 (S.D.N.Y. Aug. 29, 2022). The court in *SA Luxury* found that this was not against the agreement because the 4-star ratings are not disparaging in and of themselves. *See id.* at *6-7. However, unlike the case at hand, the defendants in *SA Luxury* did not explicitly make a false statement when they gave the plaintiffs a 4-star review instead of a 5-star review, which is a rating of opinion or discretion. *See id.* In contrast, here, the Individual Defendants blatantly lied about Johnson's deep involvement with Clearview and did not simply provide statements that were discretionary or based on opinion. These falsehoods have a direct impact on Johnson's reputation because it paints Johnson as untrustworthy, incredible, and a liar—traits that make it nearly impossible to generate lucrative business opportunities.

Thus, Johnson has sufficiently stated a claim for breach of contract claim against the Individual Defendants and the Partial Motion to Dismiss as regards Count II should fail.

## II.    JOHNSON'S BREACH OF GOOD FAITH AND FAIR DEALING CLAIM (COUNT III) SHOULD NOT BE DISMISSED

### A.    Johnson's Breach Of Good Faith And Fair Dealing Claim Is Not Duplicative Of His Breach Of Contract Claim.

It is well-settled that a breach of good faith and fair dealing claim and a breach of contract claim can coexist in a pleading when the two claims are based on different facts. *See, e.g.*, *Full Circle United, LLC v. Skee-Ball, Inc.*, 2014 U.S. Dist. LEXIS 202841, at *22-23 (E.D.N.Y. May

13, 2014) (denying motion to dismiss where good faith and fair dealing claim was not redundant to breach of contract claim). Courts have widely held that a party who frustrates another party's rights under a contract has breached the duty of good faith and fair dealing. *See Trireme Energy Holdings, Inc. v. Innogy Renewables US LLC*, 2021 U.S. Dist. LEXIS 154846, at *20-21 (S.D.N.Y. Aug. 17, 2021); *Spinelli v. NFL*, 903 F.3d 185, 205 (2d Cir. 2018); *Khan v. Laninver United States*, 2021 U.S. Dist. LEXIS 64417, at *13-15 (W.D.N.Y. Mar. 31, 2021) (finding breach of the implied covenant of good faith and fair dealing when defendant frustrated the plaintiff's right to benefit under the agreement).

Here, Johnson's breach of contract claim and breach of good faith and fair dealing claim are based on different facts. On the one hand, Johnson's breach of contract claim is premised on allegations that: (i) Johnson introduced Clearview to several individuals and entities, including the Miami Dade Police Department and the Texas Department of Public Safety; (ii) these individuals and entities currently utilize Clearview's products and services as a result of Johnson's introductions to Clearview; and (iii) Clearview failed to pay Johnson the Sales Commissions due and owing to him under the Wind-Down Agreement. *See* Am. Compl. ¶¶ 36-45. On the other hand, Johnson's breach of good faith and fair dealing claim is premised on allegations that Defendants failed to follow up with many other potential customers that Johnson introduced to Clearview and continuously circulated false information about Johnson's role with Clearview, thereby frustrating Johnson's ability to earn additional Sales Commissions separate and apart from the Sales Commissions owed to him for the introductions that actually led to a sale of Clearview's products and services. *Id.* ¶¶ 46-49. Because the facts and the damages underlying Johnson's breach of contract claim are entirely different than the facts and damages underlying Johnson's breach of the good faith and fair dealing claim, both should be allowed to stand as distinct claims.

Defendants also claim that because there is no express provision in the Wind-Down Agreement requiring Defendants to act in good faith when pursuing potential customers introduced by Johnson, there is no obligation to do so. However, by Defendants' logic, this would allow Defendants to deliberately prohibit Johnson from ever recouping the Sales Commissions under the Section 5 of the Wind-Down Agreement simply because there is no express provision in the Wind-Down Agreement requiring them to not frustrate the entire purpose of this provision (namely, to allow Johnson to recoup some earnings after giving away a substantial amount of his equity in Clearview)—an absurd result. Indeed, as part of bedrock contract law, imbedded in every contract is the duty to act in good faith. *See S. Telecom Inc. v. ThreeSixty Brands Grp.*, LLC, 520 F. Supp. 3d 497, 504 (S.D.N.Y 2021) ("Under New York law, a covenant of good faith and fair dealing is implied in all contracts.") (internal quotations omitted); *Royal Dispatch Servs. v. UBS Fin. Servs*., 2012 U.S. Dist. LEXIS 107027, at *12 (E.D.N.Y. Jul. 31, 2012) ("Moreover, '[i]mplicit in all contracts [governed by New York law] is a covenant of good faith and fair dealing in the course of contract performance.'") (citing *Dalton v. Educ. Testing Serv*., 87 N.Y.2d 384, 389 (1995)). Thus, Defendants' duty to act in good faith in pursuing potential customers introduced by Johnson is not an independent obligation that exists beyond the contract.

**B.      Johnson Has Sufficiently Alleged A Claim For Breach Of Good Faith And Fair Dealing.**

Contrary to Defendants' claims, the Amended Complaint contains many factual allegations about the potential customers or investors that Johnson introduced to Clearview that Defendants deliberately ignored. Specifically, the Amended Complaint alleges that the Defendants frustrated the purpose of Section 5 of the Wind-Down Agreement by: (i) arbitrarily refusing to negotiate with Johnson's contacts that were interested in purchasing Clearview's products and services; and (ii)

knowingly spreading false information denying Johnson's role with Clearview, thereby preventing Johnson from recouping additional Sales Commissions. *See* Am. Compl. ¶¶ 46-49.

Even if the Court were to find that the Amended Complaint is devoid of factual allegations to support Johnson's good faith and fair dealing claim, the Court should not dismiss this claim because the supporting facts are squarely within the possession of the Defendants. *See Eastman Chem. Co. v. Nestle Waters Mgmt. & Tech*, 2012 U.S. Dist. LEXIS 141281, at *15 (S.D.N.Y. Sept. 28, 2012) (denying motion to dismiss where plaintiff pled facts that were peculiarly within the possession and control of defendant). While the Amended Complaint alleges that Johnson introduced Clearview to many potential customers that were interested in Clearview's products and services (*see* Am. Compl. ¶¶ 46-49), whether or not the Defendants acted in good faith in pursuing those potential customers is information only Defendants possess.

Therefore, the Defendants' Partial Motion to Dismiss as regards Count III should fail.

## III.   JOHNSON IS PERMITTED TO ALLEGE HIS UNJUST ENRICHMENT CLAIM (COUNT IV) IN THE ALTERNATIVE SHOULD DISCOVERY REVEAL THAT THE WIND-DOWN AGREEMENT IS INVALID

As Defendants concede, Johnson may plead his unjust enrichment claim in the alternative to a breach of contract claim. *See, e.g., Gao v. JPMorgan Chase & Co.*, 2015 U.S. Dist. LEXIS 74793, at *14-15 (S.D.N.Y. June 9, 2015). While it is true that Johnson alleged in his Amended Complaint that a valid and binding contract exists between the parties, Johnson pled his unjust enrichment claim in the alternative in the event that discovery reveals that the Wind-Down Agreement was procured by fraud or is otherwise invalid. Indeed, it is well-settled that an unjust enrichment claim may be brought in the alternative to a breach of contract claim where a court could determine the contract's invalidity after the motion to dismiss stage. *See Gao*, 2015 U.S. Dist. LEXIS 74793, at *14-15 ("In light of [p]laintiffs' allegation regarding the contract's enforceability, the Court may later determine the contract unenforceable, and could then consider

in the alternative a claim for unjust enrichment. At this stage in the litigation, [p]laintiffs may plead both that a valid (breached) contract exists and that the contract is unenforceable.").

## **CONCLUSION**

For the foregoing reasons, the Court should respectfully deny Defendants' Partial Motion to Dismiss Counts II, III, and IV of the Amended Complaint.

Dated: October 6, 2023                                ALSTON & BIRD LLP

                                                                         */s/ Steven L. Penaro*
                                                                         Steven L. Penaro
                                                                         Kristen C. Kuan
                                                                         90 Park Avenue
                                                                         New York, New York 10016
                                                                         Tel: (212) 210-9400
                                                                         steve.penaro@alston.com
                                                                         kristen.kuan@alston.com

                                                                         *Attorneys for Plaintiff*