UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARLES JOHNSON,<br><br>    Plaintiff,<br><br>vs.<br><br>CLEARVIEW AI, INC., HOAN TON-THAT and RICHARD SCHWARTZ,<br><br>    Defendants. | Case No.: 1:23-cv-2441<br><br>**DEFENDANTS' FIRST AMENDED ANSWER TO AMENDED COMPLAINT AND COUNTERCLAIMS** |

  Defendants CLEARVIEW AI, INC., HOAN TON-THAT and RICHARD SCHWARTZ, by and for their Answer and Counterclaims to the Amended Complaint filed by Plaintiff CHARLES JOHNSON, respectfully respond as follows:

## NATURE OF THE ACTION

  1. Defendants deny the allegations contained in paragraph 1 of the Amended Complaint.

  2. Defendants deny the allegations contained in paragraph 2 of the Amended Complaint except admit that they were parties to the Wind-Down Agreement and refer to that document for a full recitation of its terms.

  3. Defendants deny the allegations contained in paragraph 3 of the Amended Complaint.

  4. Defendants deny the allegations contained in paragraph 4 of the Amended Complaint except admit that they were parties to the Wind-Down Agreement and refer to that document for a full recitation of its terms.

1

5. Defendants deny the allegations contained in paragraph 5 of the Amended Complaint.

6. Defendants deny the allegations contained in paragraph 6 of the Amended Complaint.

## **PARTIES**

7. Defendants deny the allegations contained in paragraph 7 of the Amended Complaint.

8. Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8 of the Amended Complaint.

9. Defendants admit that Clearview AI is a Delaware corporation and that SmartCheckr has been dissolved but deny the remaining allegations of paragraph 9 of the Amended Complaint.

10. Defendants deny the allegations in paragraph 10 of the Amended Complaint.

11. Defendants deny the allegations in paragraph 11 of the Amended Complaint.

## **JURISDICTION**

12. Paragraph 12 of the Amended Complaint sets forth a statement of law and/or a legal conclusion for which no responsive pleading is required. To the extent a response is required, Defendants deny the allegations set forth in this paragraph and respectfully refers all matters of law to the Court.

13. Defendants admit the allegations in paragraph 13 of the Amended Complaint.

14. Defendants admit the allegations in paragraph 14 of the Amended Complaint.

15. Paragraph 15 of the Amended Complaint sets forth a statement of law and/or a legal conclusion for which no responsive pleading is required. To the extent a response is

required, Defendants deny the allegations set forth in this paragraph and respectfully refers all matters of law to the Court.

16. Defendants deny the allegations contained in paragraph 16 of the Amended Complaint except admit that they were parties to the Wind-Down Agreement and refer to that document for a full recitation of its terms.

## BACKGROUND

17. Defendants deny the allegations in paragraph 17 of the Amended Complaint.

18. Defendants admit the allegations in paragraph 18 of the Amended Complaint.

19. Defendants deny the allegations in paragraph 19 of the Amended Complaint.

20. Defendants admit the allegations in paragraph 20 of the Amended Complaint.

21. Defendants deny the allegations in paragraph 21 of the Amended Complaint.

22. Defendants deny the allegations in paragraph 22 of the Amended Complaint.

23. Defendants deny the allegations in paragraph 23 of the Amended Complaint.

24. Defendants lack knowledge or information sufficient to form a belief as to whether Johnson was a confidential information for the FBI, but deny the remaining allegations in paragraph 24 of the Amended Complaint.

25. Defendants deny the allegations in paragraph 25 of the Amended Complaint.

26. Defendants deny the allegations in paragraph 26 of the Amended Complaint.

27. Defendants deny the allegations in paragraph 27 of the Amended Complaint.

28. Defendants deny the allegations in paragraph 28 of the Amended Complaint.

29. Defendants deny the allegations in paragraph 29 of the Amended Complaint.

30. Defendants deny the allegations in paragraph 30 of the Amended Complaint.

31. Defendants deny the allegations contained in paragraph 31 of the Amended Complaint except admit that they were parties to the Wind-Down Agreement and refer to that document for a full recitation of its terms.

32. Defendants deny the allegations contained in paragraph 32 of the Amended Complaint and refer to that document for a full recitation of its terms.

33. Defendants deny the allegations contained in paragraph 33 of the Amended Complaint and refer to that document for a full recitation of its terms.

34. Defendants deny the allegations contained in paragraph 34 of the Amended Complaint and refer to that document for a full recitation of its terms.

35. Defendants deny the allegations contained in paragraph 35 of the Amended Complaint and refer to that document for a full recitation of its terms.

36. Defendants deny the allegations contained in paragraph 36 of the Amended Complaint.

37. Defendants deny the allegations contained in paragraph 37 of the Amended Complaint.

38. Defendants deny the allegations contained in paragraph 38 of the Amended Complaint.

39. Defendants deny the allegations contained in paragraph 39 of the Amended Complaint.

40. Defendants deny the allegations contained in paragraph 40 of the Amended Complaint.

41. Defendants deny the allegations contained in paragraph 41 of the Amended Complaint.

42. Defendants deny the allegations contained in paragraph 42 of the Amended Complaint.

43. Defendants deny the allegations contained in paragraph 43 of the Amended Complaint.

44. Defendants deny the allegations contained in paragraph 44 of the Amended Complaint.

45. Defendants deny the allegations contained in paragraph 45 of the Amended Complaint.

46. Defendants deny the allegations contained in paragraph 46 of the Amended Complaint.

47. Defendants deny the allegations contained in paragraph 47 of the Amended Complaint.

48. Defendants deny the allegations contained in paragraph 48 of the Amended Complaint.

49. Defendants deny the allegations contained in paragraph 49 of the Amended Complaint.

50. Defendants deny the allegations contained in paragraph 50 of the Amended Complaint.

51. Defendants deny the allegations contained in paragraph 51 of the Amended Complaint.

52. Defendants deny the allegations contained in paragraph 52 of the Amended Complaint.

53. Defendants deny the allegations contained in paragraph 53 of the Amended Complaint.

54. Defendants deny the allegations contained in paragraph 54 of the Amended Complaint.

55. Defendants admit the allegations contained in paragraph 55 of the Amended Complaint.

56. Defendants deny the allegations contained in paragraph 56 of the Amended Complaint and refer to the Wind-Down Agreement for a full recitation of its terms.

57. Defendants deny the allegations contained in paragraph 57 of the Amended Complaint.

58. Defendants deny the allegations contained in paragraph 58 of the Amended Complaint.

59. Defendants deny the allegations contained in paragraph 59 of the Amended Complaint.

60. Defendants deny the allegations contained in paragraph 60 of the Amended Complaint.

## CAUSES OF ACTION

## COUNT I

### (Breach of Contract – Against Clearview AI)

61. Defendants repeats and re-alleges its responses to paragraphs 1 through 60 above as though fully set forth herein.

62. Defendants admit the allegations contained in paragraph 62 of the Amended Complaint.

63. Defendants deny the allegations contained in paragraph 63 of the Amended Complaint.

64. Defendants deny the allegations contained in paragraph 64 of the Amended Complaint.

65. Defendants deny the allegations contained in paragraph 65 of the Amended Complaint.

66. Defendants deny the allegations contained in paragraph 66 of the Amended Complaint.

67. Defendants deny the allegations contained in paragraph 67 of the Amended Complaint.

The remaining counts have been dismissed so no response is required.

## CONCLUSION

**WHEREFORE**, Defendants respectfully requests judgment dismissing the Complaint asserted by Plaintiff, together with the costs and disbursements incurred by Defendants in defending these frivolous claims, together with such other and further relief as this Court deems just, proper and equitable.

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

Plaintiff fails to state a claim on which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Unclean Hands)

Plaintiff made misrepresentations of material fact and behaved in a fashion that precludes him from obtaining the relief sought in this matter.

### THIRD AFFIRMATIVE DEFENSE
(Additional Affirmative Defenses)

Defendants has not knowingly or intentionally waived any applicable affirmative defenses and reserves the right to assert and rely on such other applicable affirmative defenses as may become available or apparent during discovery.  Defendants further reserves the right to amend its answer and/or affirmative defenses accordingly and/or to delete affirmative defenses that it determines are not applicable during the course of subsequent discovery.

### COUNTERCLAIMS

Defendants CLEARVIEW AI, INC., HOAN TON-THAT and RICHARD SCHWARTZ ("Counterclaim Plaintiffs") by and through its undersigned attorneys, for its counterclaims against Charles Johnson ("Counterclaim Defendant") alleges as follows:

### NATURE OF THE ACTION

1. This is an action for damages arising from Counterclaim Defendant's material breaches of the Restrictive Covenants set forth in the Wind-Down Agreement.

### PARTIES

2. Counterclaim Plaintiff Clearview AI, Inc. is a New York-based corporation incorporated in Delaware.

3. Counterclaim Plaintiff Ton-That is a citizen and resident of California and is a part owner of Clearview AI.

4. Counterclaim Plaintiff Schwartz is a citizen and resident of New York and is a part owner of Clearview AI.

5. Upon information and belief, Counterclaim Defendant Johnson is a citizen and resident of Virginia.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over this action under 28 U.S.C. 1332(a).

7. Counterclaim Plaintiffs are not citizens of the state in which Counterclaim Defendant is a citizen, and are not a citizen of any foreign state, and as such, complete diversity of citizenship exists. As set forth more fully below, the amount in controversy, exceeds the sum or value of $75,0000.

8. This Court has personal jurisdiction over Counterclaim Defendant as he consented to jurisdiction by commencing litigation in New York.

9. Venue is proper in this Court pursuant to 28 U.S.C. 1391 (a) and (b) as Johnson commenced an action in this judicial district, there are sufficient contacts in New York, and the Parties consented to be governed by the laws of the state of New York. *See* Exhibit A, ¶8, attached to Counterclaim Defendant's First Amended Complaint ("FAC") (Dkt. No. 25-1).

**FACTUAL ALLEGATIONS**

**I.   BACKGROUND**

10. Clearview AI is a small technology startup that was founded in 2018.

11. Clearview AI is a small tech startup that provides the world's leading facial recognition search engine.. Clearview collects billions of publicly available online images, along with the webpage addresses where they appear, from the open web , including social media, news media, image hosting sites, mugshot sites, and business webpages. Clearview applies a facial recognition algorithm to the images it collects. This enables Clearview to take images of unidentified individuals supplied by its clients and return search results with images of highly similar faces from the public Internet.

12. Clearview's clients are government agencies or government contractors, who use the Clearview Application for official investigative, law enforcement, and national security purposes.

13. Clearview was founded by co-founders, Ton-That and Schwartz.

14. Ton-That is a self-taught computer-programmer, and is primarily responsible for leading Clearview's strategic direction as Chief Executive Officer.

15. His duties include leadership and decision-making regarding the company's product development, sales, business development, fundraising, investor relations, hiring, media relations and other matters.

16. Johnson is a political activist, former journalist, and media entrepreneur, who has started a series of now-bankrupt and defunct companies.

17. Johnson is not a director, officer, representative, agent, or employee of Clearview.

18. Indeed, the extent of Johnson's relationship with Clearview is set forth in the Wind-Down Agreement, which provides, in relevant part, that Johnson is able to receive sales commissions of ten percent (10%) of the gross revenue received by Clearview AI for consummated sales of the company's software or services that originate from leads provided to the company by Johnson.

19. Johnson is no stranger to the legal system.

    a. Johnson brought suit against Missouri state judicial and government officials seeking Michael Brown's supposed juvenile criminal record in the aftermath of the 2014 Ferguson riots.

    b. Johnson brought a defamation suit against the now-defunct online media outlet Gawker in 2015.

      c.      Johnson brought a libel suit against the Huffington Post in 2020.

      d.      Upon information and belief, Johnson paid to settle a defamation lawsuit brought by a man he falsely accused of killing a protester at the 2017 Charlottesville rally.

      e.      In 2017, Johnson refused to comply with a request from the United States Senate Intelligence Committee seeking information about contacts he may have had with agents of the Russian government and his alleged efforts to obtain Hillary Clinton's emails.

## II.  THE WIND-DOWN AGREEMENT

20. On or about November 24, 2018, Clearview AI, Ton-That, Schwartz, and Johnson entered into the Wind-Down Agreement. *See* Exhibit A, to FAC.

21. The Agreement dissolved and wound up the affairs of SmartCheckr, LLC, a facial recognition company owned by Johnson, Ton-That, and Schwartz. *Id.*

22. As part of the Agreement, the Individuals – defined by the Agreement as Ton-That, Schwartz, and Johnson – agreed to abide by certain Restrictive Covenants. *See id.* at ¶4.

23. Specifically, the Individuals agreed to the following Restrictive Covenant:

> [A]t no time during the Restricted Period shall the Individuals or affiliates of the Individuals (including, in the case of Johnson, the Transferee) make, or cause or assist any other person to make any statement or other communication to any third party which impugns or attacks, or is otherwise critical of, the reputation, business or character of the Company, or any of its respective directors, officers, representatives, agents or employees.

*See id.* at ¶4(b).

24. The Restricted Period is defined under the Agreement as the time the Individuals are stock holders of the Company, and for a period of two (2) years thereafter. *See id.* at ¶4(a).

25. Johnson also agreed to abide by the following Restrictive Covenant:

11

> Johnson agrees that without the prior written consent of the Company, at no time during the Restricted Period shall Johnson or any of his affiliates, including the Transferee, publicly disclose the existence of this Agreement, his indirect ownership of the Shares, or his prior provision of services to the Company.

*See id.* at ¶4(c).

26. By signing the Agreement, the Individuals represented that they were (i) familiar with the Restrictive Covenants in the Agreement, (ii) were fully aware of their obligations; (iii) agreed that the length of time, scope and geographic coverage of the Restrictive Covenants were reasonable; and (iv) agreed that Restrictive Covenants were necessary to protect Clearview's confidential and proprietary information, good will, stable workforce, and customer relations. *See id.* at ¶4(d).

27. The Individuals also acknowledged and agreed that any breach of the Restrictive Covenants would cause material and irreparable harm to Clearview. *See id.* at ¶4(e).

### III.    RELEVANT RESTRICTED PERIOD

28. At the time the Wind-Down Agreement was executed, Johnson was a stockholder of the Company, and therefore was bound to refrain from conduct that violated the Restrictive Covenants set forth in the Agreement. *See* Exhibit A, to FAC ¶¶ 2; 4(a).

29. On May 21, 2021, the Clearview AI board approved a resolution to buyback all of Johnson's shares in Clearview AI.

30. Therefore, the Restricted Period, as defined under the Wind-Down Agreement, extended from on or about November 28, 2018, to on or about May 21, 2023 – two years after Johnson's shares in Clearview AI were sold.

## IV. JOHNSON'S VIOLATIONS OF THE RESTRICTIVE COVENANTS DURING THE RESTRICTED PERIOD

31. Throughout the Restricted Period, Johnson engaged in a campaign of harassment against Counterclaim Plaintiffs and published *numerous* false statements that impugned, attacked, and/or were critical of the reputation, business and character of Clearview, and the Individual Defendants in blatant violation of the Restrictive Covenants set forth in the Wind-Down Agreement.

32. In fact, less than two years after the Agreement was executed, Johnson made it clear that he intended to violate the Agreement in an email to Ton-That and Hal Lambert, a third-party Board member and investor of Clearview, dated October 24, 2020. *See* Exhibit A.

33. Specifically - while criticizing the company in breach of the Agreement - Johnson stated, "[i]n light of that terrible interview and effective immediately I no longer support the direction of the company nor its leadership…And given that I, a cofounder of the company, was thrown under the bus in a public manner to stroke Hoan's ego I consider our already breached agreement over with…You are cowards who do not deserve to run the company moving forward."

34. Johnson's statement that he believed the agreement (referring to the Wind-Down Agreement) was "over with," clearly indicated he intended to breach the Agreement moving forward – which is exactly what he did.

35. Later that same day, Johnson sent another email to Ton-That and Lambert, breaching the Agreement by attacking Ton-That's character and falsely accusing him of lying, stating "Hoan has now lied to both the Wall Street Journal and the New York Times about my involvement with the company." *See* Exhibit B.

13

36. A few months later, the New York Times published an article dated March 18, 2021, titled "*Your Face is Not Your Own.*" *See* Exhibit C.[1]

37. In the Times article, Johnson is quoted on the record regarding his indirect ownership stake in the Corporation – disclosure of which was a violation of Paragraph 4(c) of the Agreement. *Id.* at 10.

38. Johnson also publicly disclosed the existence of the Agreement and provided the Times with a copy of the Agreement, which were violations of Paragraph 4(c) of the Agreement. *Id.*

39. Most egregiously, Johnson acknowledged to the New York Times that by providing the foregoing, he was purposefully and knowingly breaching the Agreement. *Id.* at 11.

40. Indeed, Johnson told the Times that "he [was] willing to break the agreement, both because he's upset about having been erased from Clearview's past and because he thinks the company should have gone further than it has in making the technology available." *Id.*

41. Johnson then began using his public website, Charles Johnson's Thoughts and Adventures, as a vehicle to post additional disparaging statements against Counterclaim Plaintiffs in breach of the Agreement.

42. Upon information and belief, Johnson has over 2,000 subscribers to his public website.

43. Upon information and belief, Johnson also posts the links to articles published on his website to his social media account on X.com - @JohnsonThought1 - where he has over 14,000 followers.

---

[1] Exhibit C contains relevant pages of the article. A full copy of the article is located at New York Times, "*Your Face is Not Your Own*", https://www.nytimes.com/interactive/2021/03/18/magazine/facial-recognition-clearview-ai.html.

44. On October 29, 2021, Johnson breached the Agreement, publishing a blog post on his public website, Charles Johnson's Thoughts and Adventures, titled "*My Email To New York Times's Ryan Mac: A New Accountability Project*", disparaging Ton-That by stating "[l]et me help you on your apology to Hoan Ton-That, Clearview's brilliant but hapless CEO, and to your readers." *See* Exhibit D,[2] at 3.

45. On October 14, 2022, Johnson published a blog post on his public website Charles Johnson's Thoughts and Adventures, titled "*Did A U.S. Senate Candidate Ask Me For A Bribe?*" where he criticized Clearview and its employees in breach of the Agreement, stating "[o]ne of the former executive directors at RAGA went off and joined Clearview.AI where she employs a number of not so competent people. That's probably why Clearview isn't doing so well. Shoulda listened, Hoan but you were too busy building a monument unto yourself." *See* Exhibit E,[3] at 2.

46. On October 24, 2022, Johnson published a blog post on his public website Charles Johnson's Thoughts and Adventures, titled "*Techify the Police: What a New Biden Crime Bill Might Look Like,*" attacking and criticizing Clearview and Ton-That in breach of the Agreement, stating "Clearview has its problems and its management needs changing or taming but facial recognition is here to stay. To be sure, Clearview needs to be cleaned up but like Musk's Starlink, it, too, can be pressed into the service of the state, especially given its Emirati cap table. Hoan would need to go or be sidelined." *See* Exhibit F,[4] at 4.

---

[2] The article is also located at Charles Johnson's Thoughts and Adventures, "*My Email To New York Times's Ryan Mac: A New Accountability Project*", https://charlesjohnson.substack.com/p/my-email-to-new-york-timess-ryan?utm_source=profile&utm_medium=reader2.
[3] The article is also located at Charles Johnson's Thoughts and Adventures, "*Did A U.S. Senate Candidate Ask Me For A Bribe?*", https://charlesjohnson.substack.com/p/did-a-us-senate-candidate-ask-me?utm_source=profile&utm_medium=reader2.
[4] The article is also located at Charles Johnson's Thoughts and Adventures, "*Techify the Police: What a New Biden Crime Bill Might Look Like,*"https://charlesjohnson.substack.com/p/techify-the-police-what-a-new-biden?utm_source=profile&utm_medium=reader2.

47. On April 27, 2022, Johnson emailed Ton-That and Lambert, attacking Ton-That's character accusing him of lying in breach of the Agreement, stating "[j]ust letting you know I watched Hoan lie to Drew Harrell of the Washington Post about my involvement in cofounding Clearview. https://youtu.be/ 0fxD39cvKXQ I'm disappointed to see this. Boy is discovery going to be illuminating." *See* Exhibit G.

48. On March 8, 2023, Johnson published a blog post on his public website, Charles Johnson's Thoughts and Adventures, titled "Clearview USA: Or, How I Learned to Love Creepy Facial Recognition Spy Surveillance" where he again, attacks Ton-That's character accusing him of lying, stating "[n]aturally I rescued the company by securing investors through my network—only to have Hoan try to push me out of the company for talking to the press after he was lying about me to the press. I'm suing and it's going to be a whole thing even though it didn't need to be. Hoan just wanted to protect his ego and not the shareholders or the company. Many such cases!" *See* Exhibit H,[5] at 5.

49. Upon information and belief, Johnson made statements that impugned, attacked and/or were otherwise critical of Clearview and the Individual Defendants to media outlets during the Restricted Period.

50. For example, Johnson appeared in an interview in a documentary film published by France24 on June 4, 2023, wherein he made statements disparaging Clearview and Ton-That (e.g. "He's [Hoan] lying unfortunately. it's sad. It's sad to see somebody lie to try to make money. Very pathetic. But very American too in a way. Maybe he's assimilating you know?"). Johnson published a photograph of himself with France24 journalist Jessica Le Masurier on his X.com

---

[5] The article is also located at Charles Johnson's Thoughts and Adventures, "*Clearview USA: Or, How I Learned to Love Creepy Facial Recognition Spy Surveillance*, https://charlesjohnson.substack.com/p/clearview-usa-or-how-i-learned-to?utm_source=profile&utm_medium=reader2.

16

profile on May 27, 2023–less than a week after the expiration of the Restricted Period. Therefore, upon information and belief, Johnson made disparaging statements about Clearview and the Individual Defendants during the Restricted Period in the course of his correspondence with France24 and other media outlets.

51. Upon information and belief, Johnson also made statements that impugned, attacked and/or were otherwise critical of Clearview and the Individual Defendants to several Clearview investors during the Restricted Period.

52. For example, in January of 2021, counsel for Johnson delivered, on his behalf, an unsolicited offer to purchase Ton-That and Schwartz's shares in the company, which cited alleged failings of Clearview and its management, and claimed that several existing investors supported these efforts. This offer was the outcome of discussions between Johnson and minority shareholders in Clearview wherein Johnson disparaged Ton-That, Schwartz and Clearview.

## COUNT I

### Breach of Contract

53. Counterclaim Plaintiffs repeat and reallege the allegations contained in Paragraphs 1-52 as if fully set forth herein.

54. As set forth above, on or about November 24, 2018, Counterclaim Plaintiffs and Counterclaim Defendant entered into the Wind-Down Agreement, which is a valid, enforceable and binding contract, and is made a part hereof and incorporated herein by reference. *See* FAC, Exhibit A.

55. Counterclaim Plaintiffs compiled with all conditions precedent, if any, and fully performed their obligations under the Wind-Down Agreement.

56. Counterclaim Defendant committed multiple, material breaches of the Wind-Down Agreement during the Restricted Period, as defined by the Agreement.

57. More specifically, Counterclaim Defendant breached Paragraph 4(b) of the Wind-Down Agreement by making statements that impugned or attacked, or were otherwise critical of, the reputation, business or character of Clearview and its respective directors, officers, representatives, agents and employees during the Restricted Period, through emails to third parties and public statements published on his website and social media platform.

58. Counterclaim Defendant also breached Paragraph 4(c) of the Wind-Down Agreement by publicly disclosing the existence of the Agreement, his indirect ownership of the shares of the company, and his prior provision of services to the company to the New York Times in March 2021.

59. As a direct and proximate result of Counterclaim Defendant's material breaches, Counterclaim Plaintiffs have sustained damages exceeding $75,000, and with the exact amount to be proven at trial.

60. Counterclaim Plaintiffs are entitled to all compensatory and consequential damages in an amount to be determined at trial, as well as any other injunctive or other appropriate equitable relief.

## PRAYER FOR RELIEF

**WHEREFORE,** having fully answered and responded to the allegations in the First Amended Complaint, and having set forth their own allegations and counterclaims, Defendants/Counterclaim Plaintiffs respectfully request that this Court:

A. Deny Plaintiff/Counterclaim Defendant any relief;

B. Enter judgment in favor of Defendant/Counterclaim Plaintiffs on all claims;

  C. Grant Defendant/Counterclaim Plaintiffs relief for damages in excess of $75,000 to be proven at trial, as well as all costs and interests allowed by law, including attorney's fees; and

  D. Grant Defendant/Counterclaim Plaintiffs such other and further relief that the Court deems just and proper.

Dated: New York, New York
   July 5, 2024

                Respectfully submitted,

                GORDON & REES LLP
                *Attorneys for Defendants Clearview AI, Inc., Hoan Ton-That and Richard Schwartz*

                By: **/s/ Ronald A. Giller**
                   Ronald A. Giller

                1 Battery Park Plaza, 28th Floor
                New York, NY 10004
                Phone: (973) 549-2500
                Fax: (973) 377-1911
                E-mail: rgiller@grsm.com