UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
================================

CHARLES JOHNSON,
    Plaintiff- Counter-Defendant,
:
:
— *versus* —:

CLEARVIEW AI, INC., HOAN
TON-THAT, RICHARD SCHWARTZ,
    Defendants-Counter-Plaintiffs.:
=================================

Case No. 23-cv-02441-KPF

=================================

BRIEF IN SUPPORT OF COUNTER-DEFENDANT'S
MOTION TO DISMISS

Bernard V. Kleinman, Esq.
Attorney for Plaintiff-Counter-Defendant
Law Office of Bernard V. Kleinman, PLLC
108 Village Square
Suite 313
Somers, NY 10589-2305
Tel. 914.644.6660
Mobile 203.981.0781
Fax 914.694.1647
Email: *attrnylwyr@yahoo.com*

Movant Requests Oral Argument

Dated:  11 April 2025

## **TABLE OF CONTENTS**

Table of Authorities ............................................................................................... 2

I. Factual and Procedural Background .................................................................. 4

II. Legal Standards

   A. Dismissal Under Rule 12(b)(1) ..................................................................... 7

III. Point One

   A. This Case Does Not Comply With 28 U.S.C. § 1332(a) &
      Therefore Dismissal is Required .................................................................. 7

IV. Conclusion ........................................................................................................ 17

[1]

**TABLE OF AUTHORITIES**

**CASES**

*American Standard, Inc. v. Oakfabco, Inc.*, 498 F. Supp.2d 711 (S.D.N.Y. 2007) ............. 13

*City & County of San Francisco v. Tutor-Saliba Corp.*,
    218 F.R.D. 219 (N.D. Cal. 2003) ............. 16

*Dawkins v. Carmack*, 2023 U.S. Dist. LEXIS 35313 (S.D.N.Y. 2023) ............. 9

*First Nat'l Bank of Chicago v. Ackerley Communications, Inc.*,
    2001 U.S. Dist. LEXIS 15693 (S.D.N.Y. 2001) ............. 15

*GW Holdings Group, LLC v. US Highland, Inc.*, 367 F. Supp.3d 78 (S.D.N.Y. 2019) ............. 12

*John Wiley & Sons, Inc. v. Glass*, 2010 U.S. Dist. LEXIS 44986 (S.D.N.Y. 2010) ............. 9

*Johnson-Kamara v. W. Chacon Trucking*, 2006 U.S. Dist. LEXIS 5487
    (S.D.N.Y. 2006) ............. 10

*Lupo v. Human Affairs Int'l*, 28 F.3d 269 (2d Cir. 1994) ............. 10

*Lyndonville Savings Bank & Trust Co. v. Lussier,* 211 F.3d 697 (2d Cir. 2000) ............. 8

*Maitland v. Lunn*, 2017 U.S. Dist. LEXIS 40467 (E.D.N.Y. 2017) ............. 9

*Max Impact, LLC v. Sherwood Group, Inc.*, 2014 U.S. Dist. LEXIS
    30011 at (S.D.N.Y. 2014) ............. 16

*Mayer v. United States*, 1967 U.S. Dist. LEXIS 10704 (S.D.N.Y. 1967) ............. 10

*Methyl Tertiary Butyl Ether Prods. Liability Litigation, In re*,
    2022 U.S. Dist. LEXIS 133759 (S.D.N.Y. 2022) ............. 8

*Michael J. Redenburg, Esq. PC v. Midvale Indemnity Co.*,
    515 F. Supp.3d 95 (S.D.N.Y. 2021) ............. 13

*Morrison v. Nat'l Australia Bank, Ltd.*, 547 F.3d 167 (2d Cir. 2008),
    aff'd 561 U.S. 247 (2010) ............. 8

*Navarro Savings Ass'n v. Lee*, 446 U.S. 458 (1980) ............. 7

*Petrello v. White*, 2012 U.S. Dist. LEXIS 95387 (E.D.N.Y. 2012) ............. 17

*Reed v. Marvin Lumber & Cedar Co., LLC*, 2022 U.S. Dist. LEXIS 208198
    (S.D.N.Y. 2022) ............. 9

*Ritchie Risk-Linked Strategies Trading, Ltd. v. Coventry First, LLC*,
    280 F.R.D. 147 (S.D.N.Y. 2012) ............. 15

*Rene v. Citibank NA*, 32 F. Supp. 2d 539 (E.D.N.Y. 1999) ............. 7

*Roche v. Lincoln Property Co.*, 373 F.3d 610 (4th Cir. 2004),
    rev'd on other grnds. 546 U.S. 81 (2005) ............. 9

*Scherer v. Equitable Life Assurance Soc'y of the U.S.*, 347 F.3d 394 (2d Cir. 2003) ............. 10

*Security Plans, Inc. v. CUNA Mut. Ins. Soc'y*, 769 F.3d 807 (2d Cir. 2014) ............. 8

*Suarez v. Mosaic Sales Solutions US Operating Co., LLC*,
    720 Fed. App'x 22 (2d Cir. 2018) ...................................................................................... 11

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239 (2d Cir. 2014) ............ 9

*Tongkook Am. v. Shipton Sportswear Co.*, 14 F.3d 781 (2d Cir. 1994) ................................ 9

*Uktor v. McElroy*, 930 F. Supp. 881 (S.D.N.Y. 1996) ............................................................ 10

*Villafana v. So*, 2013 U.S. Dist. LEXIS 76832 (S.D.N.Y. 2013) .............................................. 8

*Washington Nat'l Ins. Co. v. OBEX Grp. LLC*, 958 F.3d 126 (2d Cir. 2020) ......................... 8

*Wilmington Savings Fund Soc'y, FSB v. Thomson*, 2019 U.S. Dist. LEXIS
    106184 (S.D.N.Y. 2019) .................................................................................................... 7

**STATUTES & RULES**

28 U.S.C. § 1332(a) ............................................................................................................. *passim*

Rule 12(b) ............................................................................................................................ *passim*

Rule 26(a)(1)(A)(iii) ............................................................................................................ 15-16

Plaintiff-Counter-Defendant Charles Johnson (hereinafter referred to as "Johnson"), by and through his counsel of record, Bernard V. Kleinman, Esq., does submit this Memorandum of Law in Support of his Rule 12(b) Motion to Dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

On or about March 22d, 2023, Johnson commenced suit, in the Southern District of New York, naming Clearview AI, Inc., Richard Schwartz, Hoan Ton-That, as defendants. ECF No. 1.  The Complaint was subsequently amended and efiled on August 4th, 2023. ECF No. 25.  On September 25, 2023, Defendants moved to Dismiss, pursuant to Rule 12(b)(6), Counts II, III and IV.  ECF No. 29.[1]  Count II was a cause of action for Breach of Contract, as against Defendants Ton-That and Schwartz.  ECF No. 25 at ¶¶ 38-74.  Count III was a cause of action for breach of duty of good faith and fair dealing, as against all of the defendants.  *Id*. at ¶¶ 74-79.  And, Count IV was a cause of action for unjust enrichment, naming solely Defendant Clearview AI.  *Id*. at ¶¶ 80-86.  On May 20, 2024 the Court, after the motion was fully briefed, granted the Defendants' Motion, and dismissed Counts II, III, and IV.  ECF No. 40.  The only remaining Cause of Action that survived was Johnson's claim that Clearview (and not Ton-That and Schwartz) breached the Wind Down Agreement clauses relating to commissions owed to Johnson for alleged new business he brought to the company.  See Amended Complaint at ¶¶ 61 through 67. ECF No. 25.  There was no claim based upon any disparagement, or disclosure of the Wind Down Agreement, or any other provision of the Wind Down Agreement, entirely and solely relied upon by the Counterclaimants in their pleading.

---

[1] While this Motion raised several issues and bases for dismissal, they were all under Rule 12(b)(6).  The issue of jurisdiction was never raised, nor ruled upon by the Court.  See ECF Nos. 29, 40.

[4]

Subsequent to this, on June 21, 2024, Defendants filed their Answer to the sole surviving cause of action. ECF No. 44. The Answer also included Counterclaims as against Johnson. These Counterclaims were for Breach of Contract (ECF No. 44 at ¶¶ 61-67), and for defamation as to Defendant Ton-That. *Id.* at ¶¶ 68-76.

On July 5th, 2024, the Defendants filed an Amended Answer with Counterclaim. ECF No. 50. In the Amended Counterclaim portion of the pleading, the Defendants struck their claim for defamation as to Ton-That, and solely limited their claim to one of Breach of Contract. See ECF No. 50 at pp. 17-18, ¶¶ 53-60. This claim was on behalf of Defendants Clearview AI, Ton-That and Schwartz.

In the Counterclaim the Counterclaimant Plaintiffs set forth their basis for jurisdiction as under 28 U.S.C. § 1332(a), and alleged the following:

> Counterclaim Plaintiffs are not citizens of the state in which Counterclaim Defendant is a citizen, and are not a citizen of any foreign state, and as such, complete diversity of citizenship exists. As set forth more fully below, the amount in controversy, exceeds the sum or value of $75,000.

Counterclaim at ¶ 7.

No other basis for jurisdiction was asserted.

Beyond this is the fact that Johnson's claim for damages exceeding the jurisdictional limits of this Court were all premised upon his claim of commissions earned. See Amended Complaint at ¶¶ 2, 3, 4, 6, 33, 36 through 49. ECF No. 25. However, all of these claims, upon which jurisdiction in this Court was based, were specifically denied by the Counterclaimants. See Answer and Counterclaim at ¶¶ 2, 3, 4, 6, 33, 36-49. ECF No. 50. The Counterclaimants further stated that

> the extent of Johnson's relationship with Clearview is set forth in the Wind-Down Agreement, which provides, in relevant part, that Johnson is able to receive sales commissions of ten percent (10%) of the gross revenue received by Clearview AI for consummated sales of the company's software or services that originate from leads provided to the company by Johnson.

[5]

ECF No. 50, at ¶ 18.

And, then go on to state that Johnson, in fact, did not provide any such leads or business that would have generated any commissions in an amount that would satisfy Section 1332(a). See ECF No. 50 at ¶ 63.

The simple truth is you cannot have it both ways — either Johnson earned the commissions of more than $75,000, or he did not. If he earned them then he is clearly entitled to have been paid, which Counterclaimants assert he did not.

Although the Counterclaim asserted that the jurisdictional requirements of damages in excess of $75,000 would be "set forth more fully below", the following 52 paragraphs contain absolutely no discussion, reference, basis, or claims as to the calculation or basis upon which the amount in controversy exceeded $75,000.

Furthermore, in the Amended Answer (ECF No. 50), the Defendants-Counter-Plaintiffs specifically stated that they denied the claim of Johnson that his damages exceeded the jurisdictional threshold of $75,000. See ECF No. 50 at ¶ 12, referring the ECF No. 25 at ¶ 12.

On January 13, 2025 Johnson's Complaint was dismissed, with prejudice, *viz.*,

> Minute Entry for proceedings held before Judge Katherine Polk Failla: Telephone Conference held on 1/13/2025. Plaintiff present with attorney Bernard V. Kleinman present. Attorneys Ronald Andrew Giller and Mallory J. Benner representing Defendants present. Plaintiff's claims are DISMISSED WITH PREJUDICE.

Emphasis in original.

Pursuant to the Court's Rules of Practice, on March 17, 2025, counsel for Johnson submitted a letter to the Court requesting a conference preparatory to filing a Motion to Dismiss under Rule 12(b). ECF No. 81. On April 2d, 2025 the parties appeared before Her Honor, and Court issued a scheduling order for the within motion, with the Motion to be filed on or before April 11, 2025, and Response thereto on or before May 2d, 2025,

[6]

and any Reply on or before May 9, 2025. ECF No. 84. The Court did not set a date for the parties to appear for any oral argument.

## LEGAL STANDARD

**A. Dismissal Pursuant to Fed. R. Civ. P. 12(b)(1)**

Defendant Johnson moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) on the ground that this Court does not have subject matter jurisdiction over Counterclaimants. "Federal subject matter jurisdiction exists only when a 'federal question' is presented under 28 U.S.C. § 1331, or, as provided in 28 U.S.C. § 1332, where the plaintiffs and all the defendants are of diverse citizenship and the amount in controversy exceeds $75,000." *Rene v. Citibank NA*, 32 F. Supp. 2d 539, 542 (E.D.N.Y. 1999). "In considering motions to dismiss for want of subject matter jurisdiction, the Court must accept as true all material factual allegations in the Complaint and refrain from drawing inferences in favor of the party contesting jurisdiction." *Id.* "Where jurisdiction is lacking, the district court must dismiss the Complaint without regard to the merits of the lawsuit." *Id.*

## POINT I

**THIS CASE DOES NOT COMPLY WITH 28 U.S.C. § 1332(a) & THEREFORE, DISMISSAL IS REQUIRED**

"Federal Courts exercise subject matter jurisdiction where the Plaintiff has established that there is proper diversity jurisdiction." *Wilmington Savings Fund Soc'y, FSB v. Thomson*, 2019 U.S. Dist. LEXIS 106184 at *3 (S.D.N.Y. 2019). And, pursuant to Section 1332(a), and Art. III, § 2 of the Constitution, the federal courts have jurisdiction over controversies between "citizens of different States". Further, the Supreme Court "established that citizens upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy." *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 460 (1980).

[7]

As this case is alleged to have been brought *via* diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), and fails to plausibly allege a $75,000 amount in controversy, the Court lacks subject matter jurisdiction and the case must be dismissed. "[28 U.S.C. § 1332(a)] establishes that diversity jurisdiction exists over civil actions between citizens of different States, where the matter in controversy exceeds the sum or value of $75,000." *Washington Nat'l Ins. Co. v. OBEX Grp. LLC*, 958 F.3d 126, 133 (2d Cir. 2020).

The significance of the necessity of a party seeking relief in federal court, on a diversity basis, cannot be minimized or dismissed as a nonessential argument. "[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*. If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Savings Bank & Trust Co. v. Lussier,* 211 F.3d 697, 700-01 (2d Cir. 2000). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *In re Methyl Tertiary Butyl Ether Prods. Liability Litigation*, 2022 U.S. Dist. LEXIS 133759 at *2 (S.D.N.Y. 2022), *quoting Morrison v. Nat'l Australia Bank, Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd* 561 U.S. 247 (2010).

"A party invoking the jurisdiction of the federal court has the burden of proving that it appears to <u>a reasonable probability</u> that the claim is in excess of the statutory jurisdictional amount." *Security Plans, Inc. v. CUNA Mut. Ins. Soc'y*, 769 F.3d 807, 814, n. 5 (2d Cir. 2014). Emphasis added. See also *Villafana v. So*, 2013 U.S. Dist. LEXIS 76832 at *1 (S.D.N.Y. 2013) ("[T]he party asserting diversity jurisdiction in federal court has the burden of establishing the existence of the jurisdictional amount in controversy."). Moreover, "[t]he amount in controversy is determined at the time the action is com-

[8]

menced." *Tongkook Am. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994). Where, as here, "'Plaintiff [alleges] damages in a sum which exceeds the sum or value established by 28 USC § 1332(a) exclusive of interests and costs' and is lacking in additional details to support this assertion, [it constitutes a] conclusory reference to 28 U.S.C. § 1332(a) [and] fails to adequately establish that the amount in controversy exceeds $75,000." *Dawkins v. Carmack*, 2023 U.S. Dist. LEXIS 35313 at *1-*2 (S.D.N.Y. 2023).

Merely repeating the language of the statute, with nothing else at all, whatsoever, in support thereof, is inadequate to satisfy the jurisdictional requirements that Congress has set.[2]

Furthermore, some supporting information, in the Complaint, is necessary to satisfy a claim of jurisdiction under Section 1332. *Reed v. Marvin Lumber & Cedar Co., LLC*, 2022 U.S. Dist. LEXIS 208198 at *5 (S.D.N.Y. 2022). Mere conclusory statements that the amount of damages exceeds the $75,000 threshold are inadequate to support a claim of jurisdiction in a federal court. *John Wiley & Sons, Inc. v. Glass*, 2010 U.S. Dist. LEXIS 44986 at *8 (S.D.N.Y. 2010). And, such claims must, minimally, satisfy a quantum of proof of a preponderance of the evidence. *John Wiley & Sons, supra*. See also *Maitland v. Lunn*, 2017 U.S. Dist. LEXIS 40467 at *1 (E.D.N.Y. 2017). See also *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

This standard of a "preponderance of the evidence" is not something to be dismissed as a meaningless term. "The term 'fair preponderance of the evidence,' means the greater

---

[2] This is, for example, the same as a pleader merely stating that the parties reside in two different states. Section 1332 requires that the citizenship of the opposing parties be established, by a preponderance of the evidence, in two distinct states, and, the failure to do so merits dismissal under Section 1332. See *Roche v. Lincoln Property Co.*, 373 F.3d 610, 616-17 (4th Cir. 2004), *rev'd on other grnds.* 546 U.S. 81 (2005).

[9]

weight of the evidence. It refers to the quality of the evidence . . ." *Mayer v. United States*, 1967 U.S. Dist. LEXIS 10704 at *5 (S.D.N.Y. 1967).  And, it is more than mere "substantial evidence".  See *Uktor v. McElroy*, 930 F. Supp. 881, 884 (S.D.N.Y. 1996).

However, in the case at Bar, the Counterclaim contains absolutely nothing that relates to the amount in controversy.  Merely by stating that the amount in controversy exceeds $75,00, certainly does not make it so.

The Counterclaim is full of everything except a discussion (or even the slimmest reference) to how the Counterclaimants were damaged.  All of the statements are conclusory, and, hence, of no value whatsoever in deciding on jurisdiction.  See *Johnson-Kamara v. W. Chacon Trucking*, 2006 U.S. Dist. LEXIS 5487 at *7 (S.D.N.Y. 2006).  And, "the party asserting diversity jurisdiction in federal court has the burden of establishing the existence of the jurisdictional amount in controversy." *Lupo v. Human Affairs Int'l*, 28 F.3d 269, 273 (2d Cir. 1994).  As the Court in *Johnson-Kamara, supra*, observed, in dismissing a matter for lack of subject matter jurisdiction,

> The burden [under Section 1332(a)] is not meant to be onerous, see *Scherer v. Equitable Life Assurance Soc'y of the U.S.*, 347 F.3d 394, 397 (2d Cir. 2003), but without a clear indication in the complaint that the amount-in-controversy requirement is met, defendants must give the court something in the way of a factual explanation to support the removal. They have failed to do so under a preponderance of the evidence, or any other, standard.

*Id*. at *7.

The Amended Answer/Counterclaim contains absolutely no clue as to how the Defendants have been damaged to any degree whatsoever, let alone the amount of $75,000 as Congress has minimally authorized.  A review of the Counterclaims provides no answer at all.  There is no claim that any contracts were lost, that any business

[10]

disappeared, that any resources (save litigation costs[3]) were expended due to Johnson's actions (even if we accept that all of the accusations are accurate). There is no assertion of lost customers, or that some entity, person or business opted not to do business with Clearview or the defendants based upon Johnson's alleged misconduct.

In fact, the Counterclaim asserts that Mr. Johnson, who commenced his alleged damaging actions occurred from mid-2021 until mid-2023. However, other evidence shows that during this period, Clearview's value increased from $130 million to $225 million.[4] Hence, how did Mr. Johnson's actions in any way affect the value of the company? The answer is clear: it did not.

The basis for the Counterclaim is that Johnson breached the terms of the so-called Wind Down Agreement, *viz.*,

> This is an action for damages arising from Counterclaim Defendant's material breaches of the Restrictive Covenants set forth in the Wind-Down Agreement.

Counterclaim at p. 8, § 1. ECF No. 50.

---

[3] "[A]ttorney's fees only calculate into the jurisdictional amount in controversy if they are 'recoverable as a matter of right.'" *Suarez v. Mosaic Sales Solutions US Operating Co., LLC*, 720 Fed. App'x 22, 55 (2d Cir. 2018). In the case at Bar, there is no statute that grants litigation costs applicable to this action, and, the Wind Down Agreement contains no provision, in its breach clause (¶ 4.e.) providing for the award of such fees to any prevailing party. See ECF No. 50-1.

[4] In *In re Clearview AI*, 21-cv-135 (N.D. Ill.), a class action lawsuit filed against Clearview for violating rights of privacy, the Plaintiffs' counsel, relying upon expert evidence, stated,
> While it is unknown what valuation Clearview can ultimately achieve, operating legally and without the threat of ruinous litigation hanging over it, the company was valued at over $130 million in 2021, raised funds in a January 2022 convertible note offering with a valuation of as much as $201.75 million, and in early 2024 was valued by a third party at $225 million.

See Plaintiffs' Motion and Memorandum in Support of Class Action Settlement, ECF No. 621, at p. 9. And, these numbers were fully accepted and adopted by the Hon. Sharon Coleman, U.S.D.J., in approving the class action settlement. See ECF No. 631 at p. 11.

[11]

However, that clause of the contract specifically states that damages would not be subject to any sort of calculation, and reserved the sole remedy, in the event of a breach, to injunctive relief, and that any money damages (if they could be proven) would "be an inadequate remedy", *viz.*,

> The Parties agree that a breach of any of the covenants of Section 4 would cause material and irreparable <u>harm to the Company that would be difficult or impossible to measure, and that damages or other legal remedies available to the Company for any such injury would, therefore, be an inadequate remedy for any such breach.</u>

Wind Down Agreement at p. 3, ¶ 4.e.  See ECF No. 50-1.  Emphasis added.

Perplexing is the fact that the Counterclaimants' *ad damnum* clause, asks for a number of forms of relief, but not the form to which the parties had agreed:

> Accordingly, the Parties agree that in the event of a breach of any term of Section 5, the Company shall be entitled, in addition to and without limitation upon all other remedies the Company may have under this Agreement,[5] at law or otherwise, to obtain injunctive or other appropriate equitable relief, without bond or other security, to restrain any such breach.

Wind Down Agreement at p. 3, ¶ 4.e.  See ECF No. 50-1.

In *GW Holdings Group, LLC v. US Highland, Inc.*, 367 F. Supp.3d 78 (S.D.N.Y. 2019), the Judge Keenan was ruling on a Rule 12(b)(1) motion premised on the failure of the plaintiff to meet the statutory threshold of $75,000.  In that case, as in this one, the contract specifically provided that its losses were "impossible" (as the Wind Down Agreement similarly states) to calculate, however, it attempted to submit some proof of damages, nevertheless.  Judge Keenan, in granting the Motion to Dismiss, stated that the "estimate [of damages], however, is conclusory as there are no factual allegations in the complaint to substantiate that estimate or explain how Plaintiff reached it."  *Id*. at 82.

---

[5] This language is completely inconsistent with the prior language which states, with the essence of clarity that money damages are "impossible" to calculate.

In the case at Bar, the Contract, itself, states that damages are "impossible" to calculate, and that the only relief available is injunctive relief.

It is accurate that a party seeking solely injunctive relief (which is not the case at Bar) can satisfy the jurisdictional amount limitation if "measured by the value of the object of the litigation." *American Standard, Inc. v. Oakfabco, Inc.*, 498 F. Supp.2d 711, 717 (S.D.N.Y. 2007). Under such circumstances, "[b]ecause that amount is measured from the plaintiff's perspective, the value of the requested relief is the monetary value of the benefit that would flow to the plaintiff if injunctive or declaratory relief were granted." *Ibid*. See also *Michael J. Redenburg, Esq. PC v. Midvale Indemnity Co.*, 515 F. Supp.3d 95, 101 (S.D.N.Y. 2021). However, since the contracting parties have already agreed that the amount of damages is "impossible" to calculate, there can be no manner or ability to calculate such damages, or, as to "the value of the requested relief". It is, as the parties have mutually agreed, and to which they are mutually bound, "impossible" of calculation.

Beyond this is that the Counterplaintiffs have presented nothing in their Complaint that states the value that they would receive if injunctive relief were to be granted. The Defendants' Complaint is totally devoid of any such claim or allegation.

A review of the Counterclaim makes clear the total absence of a basis for the action against Johnson, and that the breach provision has been satisfied.

The Wind Down Agreement, sets forth a series of "Restrictive Covenants". See Wind Down Agreement, at ¶ 4. ECF No. 50-1. The first of these provides as follows,

> the Individuals shall not directly or indirectly induce or attempt to induce any supplier, licensor or other person or entity then having a similar non-customer/client business relationship with the Company or any of its affiliates to cease doing such non-customer/client business with the Company or any of its affiliates, or in any way knowingly interfere with the relationship between the Company or any of its affiliates and any supplier, licensor or other similar non-customer/client business relationship.

*Id*. at ¶ 4.a.

[13]

However, a review of the Counterclaim contains no such allegations, nor offer of any proof, whatsoever, that Johnson engaged in such conduct.

Secondly, a breach occurs if,

> The Individuals agree that at no time during the Restricted Period shall the Individuals or affiliates of the Individuals (including, in the case of Johnson, the Transferee) make, or cause or assist any other person to make any statement or other communication to any third party which impugns or attacks, or is otherwise critical of, the reputation, business or character of the Company, or any of its respective directors, officers, representatives, agents or employees.

*Id.* at ¶ 4.b.

The Counterclaim contains a series of accusations and allegations that supposedly support a claim that Johnson has breached this clause. See Counterclaim at ¶¶ 31 through 48. If taken as true on their face, and that these statements do "impugn" either Clearview or Ton-That or Schwartz, there exists nothing in the Counterclaim, or otherwise, that, as a result of such conduct, the Counterclaimants have suffered some quantifiable measurable damages that exceed the jurisdictional limits of the statute. All that the Counterclaim does is state "As a direct and proximate result[6] of Counterclaim Defendant's material breaches, Counterclaim Plaintiffs have sustained damages exceeding $75,000, and with the exact amount to be proven at trial." See Counterclaim at ¶ 59.

A further basis for a breach is that Johnson allegedly violated ¶ 4.c., when he "publicly disclos[ed] the existence of the Agreement, his indirect ownership of the shares of the company, and his prior provision of services to the company to the [*sic*] New York Times in March 2021." See Counterclaim at ¶ 58. Yet, here too, there is no evidence that this action caused any quantifiable or calculable harm to the Counterclaimants,

---

[6] Indeed, not even indirectly were the Counterclaimants damaged, but as a "direct" result. Yet there exists nothing in the record to support either a "direct" or "indirect" harm to the Counterclaimants as a result of Johnson's alleged conduct.

[14]

notwithstanding Counterclaimants assertion that they were harmed in excess of the statutory jurisdictional amount under Section 1332(a). See Counterclaim at ¶ 59.

Even, in what little discovery has been provided by the Counterclaimants, they contain absolutely no evidence, not even a scintilla, that they have suffered any damages at all, and certainly not in an amount equal to $75,000. In Clearview's Rule 26(a)(1) mandatory disclosure, the following was provided:

> **C. Rule 26(a)(1)(A)(iii): Computation of Damages**
>
> Defendants are seeking damages due to Plaintiff's breach of the Wind-Down Agreement as set forth in Defendants' counterclaim. Damages are based on harm to reputation, as well as harm to business and client relationships. Defendants have sustained damages exceeding $75,000; however, the exact amount of damages are unknown at this time.

The Counterclaim contains no evidence or minimally substantive allegations that there was any "harm to reputation, as well as harm to business and client relationships."

Granted the Rule based opportunity to provide any "computation of damages", the Counterclaimants merely regurgitated the language of the statute, and provided no information whatsoever. "[P]ursuant to Rule 26(a)(1)(A)(iii), a party seeking damages must automatically 'provide to the other parties … a computation of each category of damages claimed by the disclosing party' and must 'make available for inspection and copying as under Rule 34 the documents or other evidentiary material… on which each computation is based, . . .'" *Ritchie Risk-Linked Strategies Trading, Ltd. v. Coventry First, LLC*, 280 F.R.D. 147, 156 (S.D.N.Y. 2012). And, the Rule is not satisfied by merely "setting forth the figure demanded." *First Nat'l Bank of Chicago v. Ackerley Communications, Inc.*, 2001 U.S. Dist. LEXIS 15693 at *6 n. 6 (S.D.N.Y. 2001). "Simply

[15]

Case 1:23-cv-02441-KPF   Document 85-2   Filed 04/11/25   Page 17 of 18

reciting a dollar figure [] is not enough, under Rule 26(a)(1)(A)(iii)." *City & County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003), quoted in *Max Impact, LLC v. Sherwood Group, Inc.*, 2014 U.S. Dist. LEXIS 30011 at *15 (S.D.N.Y. 2014).

Yet this is precisely what Counterclaimants did, and, the reason being that they have no evidence, whatsoever, that they suffered any damages of any quantifiable nature, even approaching the minimal statutory requirement.

In Counterdefendants' Rules 33/34 demands, the following response was received from the Counterclaimants:

> 4. Provide copies of all contracts, agreements, and other binding obligations entered into by or on behalf of Clearview AI from January 1, 2018 to the present.
> **RESPONSE: Defendant objects to this Request on the grounds that it is overly broad, unduly burdensome, and disproportionate to the needs of the case under the factors set forth in Rule 26(b)(1) of the Federal Rules of Civil Procedure, as it seeks "all" contracts, agreements, and other binding obligations entered to by or on behalf of Clearview AI from January 1, 2018 (before the Wind-Down Agreement was executed) to the present. Defendant further objects to this Request as it seeks the production of confidential company documents that do not relate to or concern any party's claims or defenses in this litigation. Clearview further objects that disclosing the identities of its client organizations en-masse would constitute disclosure of information which Clearview's users reasonably expect should remain confidential against such disclosure, and would expose them to increased risks to their physical safety, cybersecurity, and could compromise the effectiveness of their sensitive law enforcement and national security operations.**
> * * *
> 22. Provide the basis and relevance to the Counterclaim for Breach of Contract (see Counterclaim ¶¶ 53 thru 60) for which the assertions set forth in Counterclaim ¶ 19 are related thereto.
> **RESPONSE: Defendant objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case. Defendant further objects to this Interrogatory Request as it does not comply with Local Civil Rule 33.3.**

Boldface in original.

[16]

Thus, when provided further opportunity to set forth any basis for an allegation of damages, the Counterclaimants opted not to provide anything at all — the reasons being that there is no evidence that exists that can show, even remotely, that Clearview suffered any loss of revenue, loss of business, or any other harm as a result of Johnson's alleged breach of the Restrictive Covenants clause of the Wind Down Agreement.

Since the sole relief provided for under the Restrictive Covenants is injunctive relief, and the Counterdefendant has made clear, minimally by his withdrawal of his claims in this Court, that such a restriction is more than possible, the sole recognizable interest of the Counter-claimants (as they cannot demonstrate any dollar damages amount) is to punish Johnson with extended litigation and attorney fees and court costs.  Such action demonstrates "'bad faith' [and] implicates abuses of the litigation process itself." *Petrello v. White*, 2012 U.S. Dist. LEXIS 95387 at *9 (E.D.N.Y. 2012).

## CONCLUSION

For the reason set forth herein, it is respectfully requested that the Court grant the relief requested herein, and dismiss the Counterclaim on jurisdictional grounds, and grant such other and further relief as the Court may deem just and proper.

Dated: 11 April 2025
      Somers, NY

                                                Respectfully submitted,

                                                */s/ Bernard V. Kleinman*
                                                Bernard V. Kleinman, Esq.
                                                Attorney for Counterdefendant
                                                           Johnson