**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHARLES JOHNSON, | Case No.: 1:23-cv-2441 |
| Plaintiff, | |
| vs. | |
| CLEARVIEW AI, INC., HOAN TON-THAT and RICHARD SCHWARTZ, | |
| Defendants. | |

---

**DEFENDANTS CLEARVIEW AI, INC., HOAN TON-THAT AND RICHARD
SCHWARTZ'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1)**

---

**GORDON REES SCULLY MANSUKHANI, LLP**
Ronald A. Giller, Esq.
Mallory J. Benner, Esq.
1 Battery Park Plaza, 28th Floor
New York, NY 10004
Tel: (973) 549-2500
Fax: (973) 377-1911
Email: rgiller@grsm.com
Email: mbenner@grsm.com
*Attorneys for Defendants Clearview AI, Inc., Hoan
Ton-That and Richard Schwartz*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT                                          7

STATEMENT OF FACTS AND PROCEDURAL HISTORY                      7

LEGAL ARGUMENT                                                 9

      I.     9

      II.    10

            a.   12

      III.   15

            a.   20

            b.   21

CONCLUSION                                                    21

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Achtman v. Kirby, McInerney & Squire, LLP*,
  462 F.23d 328 (2d Cir. 2006) .......................................................... 10

*Adam v. Jacobs*,
  950 F.2d 89 (2d Cir.1991) .............................................................. 12

*Ascentive, LLC v. Opinion Corp.*,
  2012 WL 1569573 (E.D.N.Y. May 3, 2012) ................................... 11

*Baker v. Gold Seal Liquors, Inc.*,
  417 U.S. 467 (1974) ........................................................................ 10

*Barbagallo v. Marcum LLP*,
  925 F.Supp.2d 275 (E.D.N.Y. 2013), aff'd, 552 F. App'x 102 (2d Cir. 2014) ..... 15

*Bezuszka v. L.A. Models, Inc.*,
  2006 WL 770526 (S.D.N.Y. Mar. 24, 2006) ................................... 13

*Bonadio v. E. Park Research, Inc.*,
  220 F.R.D. 187 (N.D.N.Y.2003) .................................................... 14

*Chase Manhattan Bank, N.A. v. Am. Nat'l Bank & Tr. Co.*,
  93 F.3d 1064 (2d Cir. 1996) ........................................................... 15

*Conley v. Gibson*,
  355 U.S. 41 (1957) ............................................................................ 9

*Cooper Wiring Devices, Inc. v. Novikov*,
  No. 05-CV-2824 (NGG), 2007 WL 2287888 (E.D.N.Y. Aug. 8, 2007) ..... 16, 17

*Corsearch, Inc. v. Thomson & Thomson*,
  792 F.Supp. 305 (S.D.N.Y.1992) ................................................... 11

*D'Jamoos v. Griffith*,
  368 F. Supp.2d 200 (E.D.N.Y. 2005) ............................................. 10

*Eberhard Inv. Assocs., Inc. v. Santino*,
  No. 01 Civ.3840 (LMM), 2004 WL 594728 (S.D.N.Y. Mar.25, 2004) ..... 11

*Empire United Lines Co., Inc. v. Presniakovas*,
  2017 WL 4233032 (E.D.N.Y. Sept. 22, 2017) ................................ 11

*Geffner v. Iona Coll.*,
    No. 13 CIV. 1156 DAB, 2013 WL 5549922 (S.D.N.Y. Oct. 2, 2013)                16

*GW Holdings Group, LLC v. US Highland, Inc.*,
    367 F.Supp.3d 78 (S.D.N.Y. 2019)                20

*GW Holdings Grp., LLC v. U.S. Highland, Inc.*,
    794 F. App'x 49 (2d Cir. 2019)                20

*Harris v. Steinem*,
    571 F.2d 119 (2d Cir.1978)                11

*Holsten Import Corp. v. Rheingold Corp.*,
    285 F.Supp. 607 (S.D.N.Y.1968)                11

*James v. DeGrandis*,
    138 F.Supp.2d 402 (W.D.N.Y.2001)                18

*Jones v. Ford Motor Credit Co.*,
    358 F.3d 205 (2d Cir.2004)                12

*King Bros. Prods. v. RKO Teleradio Pictures, Inc.*,
    208 F.Supp. 271 (S.D.N.Y. 1962)                13

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)                17

*Marczeski v. Law*,
    122 F.Supp.2d 315 (D.Conn.2000)                18

*MMZ Assocs., Inc. v. Gelco Corp.*,
    2006 WL 3531429 (S.D.N.Y. Dec. 8, 2006)                13

*Moore v. New York Cotton Exchange*,
    270 U.S. 593 (1926)                11

*Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*,
    701 F.Supp.2d 568 (S.D.N.Y.2010)                12

*Navaera Sciences, LLC v. Acuity Forensic Inc.*,
    667 F.Supp.2d 369 (S.D.N.Y.2009)                16

*Nicholson v. Feeding Tree Style, Inc.*,
    No. 12 Civ. 6236(JPO), 2014 WL 476355 (S.D.N.Y. Feb. 6, 2014)                10

*Ortiz v. Cornetta*,
    867 F.2d 146 (2d Cir.1989)                9

*Scherer v. Equitable Life Assur. Soc'y*,
347 F.3d 394 (2d Cir. 2003) ....................................................................... 15, 16

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
659 F.3d 234 (2d Cir. 2011) ............................................................................. 10

*Skyline Steel, LLC v. Pilepro, LLC*,
2015 WL 999981 (S.D.N.Y. Mar. 5, 2015) ....................................................... 12

*Turban v. Bar Giacosa Corp.*,
No. 19-CV-1138 (JMF), 2019 WL 3495947 (S.D.N.Y. Aug. 1, 2019) ............... 10

*United States v. Aquavella*,
615 F.2d 12 (2d Cir.1979) ................................................................................. 12

*Ventana DBS LLC v. Hayner Hoyt Corp.*,
2020 WL 5549038 (N.D.N.Y. Sept. 16, 2020) .................................................. 12

*VFS Fin., Inc. v. Falcon Fifty LLC*,
17 F.Supp.3d 372 (S.D.N.Y. 2014) ................................................................... 14

*View 360 Solutions LLC v. Google, Inc.*,
310 F.R.D. 47 (N.D.N.Y. 2015) ......................................................................... 11

*Walker v. New York*,
345 F.Supp.2d 283 (E.D.N.Y.2004) (Hurley, J.) ................................................ 9

*Wewe v. Mt. Sinai Hosp.*,
518 F.Supp.3d 643 (E.D.N.Y. 2021) ............................................................... 9, 18

*Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*,
166 F.3d 59 (2d Cir. 1999) ................................................................................ 16

*Xerox Corp. v. Lantronix, Inc.*,
342 F.Supp.3d 362 (W.D.N.Y. 2018) ................................................................ 12

*Zacharia v. Harbor Island Spa, Inc.*,
684 F.2d 199 (2d Cir. 1982) .............................................................................. 16

**Statutes**

28 U.S.C. § 1331 ................................................................................................ 11

28 U.S.C. § 1332 ............................................................................................. 7, 15

28 U.S.C. § 1332(a) ............................................................................................. 8

28 U.S.C. § 1338 ................................................................................................ 11

28 U.S.C. § 1367(a)                                      10

**Rules**

Fed. R. Civ. P. 12(b)(1)                                  7, 9

Fed. R. Civ. P. 12(b)(6)                                   9

Fed. R. Civ. P. 13                                       9, 14

Fed. R. Civ. P. 13(a)                              7, 10, 12, 13

Fed. R. Civ. P. 33                                        18

Fed. R. Civ. P. 34                                        18

## PRELIMINARY STATEMENT

Defendants Clearview AI, Inc. ("Clearview AI"), Hoan Ton-That ("Ton-That"), and Richard Schwartz ("Schwartz") (collectively "Defendants") respectfully submit this Memorandum of Law in opposition of Plaintiff's Motion to Dismiss the Counterclaim for lack of subject matter jurisdiction under Fed. R. Civ. Pro. 12(b)(1).

As set forth in further detail below, Plaintiff's Motion is entirely baseless and is little more than a last-ditch attempt to escape accountability; and as such, must be denied. The most plain – and dispositive – reason for denial is that Defendants' Counterclaim is compulsory under Fed. R. Civ. Pro. 13(a), as it arises out of the same transaction or occurrence as Plaintiff's original claim. As such, this Court has supplemental jurisdiction over this claim. The law is also clear that dismissal of Plaintiff's original claim does not divest this Court of jurisdiction over the Counterclaim, as courts retain supplemental jurisdiction over compulsory counterclaims even after the original claim has been dismissed – particularly where, as here, judicial economy, fairness, and convenience overwhelmingly support retaining the case.

Alternatively, the Court has independent jurisdiction over the Counterclaim under 28 U.S.C. § 1332 because there is complete diversity between the parties (which is not disputed by the parties) and the amount in controversy has properly been pled in excess of $75,000. Because dismissal is improper under either basis, Defendants respectfully request the Court to deny Plaintiff's Motion to Dismiss in its entirety.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Defendants do not dispute Plaintiff's general timeline of the procedural history, including the dates and general descriptions of the filings made in this case. Accordingly, to avoid unnecessary repetition, Defendants provide only a summary of the key procedural points relevant to the jurisdictional issues before the Court.

Plaintiff initiated this action on March 22, 2023, against Defendants Clearview, Ton-That and Schwartz alleging four claims – all of which arose from the Wind-Down Agreement: (1) Breach of Contract against Clearview AI; (2) Breach of Contract Against Individual Defendants; (3) Breach of the Duty of Good Faith and Fair Dealing Against All Defendants; and (4) Unjust Enrichment Against Clearview AI. *See* Dkt. 1.

Thereafter, Defendants filed a partial motion to dismiss, which the Court granted in its entirety on May 20, 2024, leaving Plaintiff's sole remaining claim of breach of contract against Defendant Clearview AI for allegedly failing to pay Johnson the Sales Commission (as defined under the Wind-Down Agreement) for the introductions of new customers that Johnson allegedly made that led to final sales of Clearview AI software or services. *See* Dkt. 25; Dkt. 40.

On July 5, 2024, Defendants filed an Amended Answer and compulsory Counterclaim against Plaintiff for breach of contract under the Wind-Down Agreement. *See* Dkt. 50. More specifically, that Plaintiff breached ¶4(b) and (c) of the Wind-Down Agreement by: (1) making statements that impugned or attacked, or were otherwise critical of, the reputation, business or character of Clearview and its respective directors, officers, representatives, agents and employees during the Restricted Period, through emails to third parties and public statements published on his website and social media platform[1]; and (2) publicly disclosing the existence of the Agreement, his indirect ownership of the shares of the company, and his prior provision of services to the company to the New York Times in March 2021. *Id.* at ¶¶6-7.

The Court has independent diversity jurisdiction over the Counterclaim under 28 U.S.C. § 1332(a) – as pled in Defendants' pleading; however, the Court also has supplemental

---

[1] Paragraph 4(b) is the *same* contract provision that formed the basis of Plaintiff's breach of contract claim against the Individual Defendants. Although Plaintiff's claim was ultimately dismissed, the Court directly analyzed and interpreted the underlying contract provision in reaching its decision.

jurisdiction because the Counterclaim is compulsory under Fed. R. Civ. Pro. 13 (as discussed in detail, *infra*). *See* Dkt. 50. At the time of filing, Plaintiff did not challenge subject matter jurisdiction, responding that Plaintiff "Neither Admits nor Denies the allegations." *See* Dkt. 53.

On January 13, 2025, Plaintiff's claims were dismissed with prejudice. As such, the Counterclaim is the only remaining claim in this litigation. *See* Dkt, 68.

On April 11, 2025, Plaintiff filed this Motion to Dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. Pro. 12(b)(1). *See* Dkt. 85.

## LEGAL ARGUMENT

## I.    LEGAL STANDARD UNDER FED. R. CIV. PRO. 12(B)(1)

"[M]otions to dismiss for [lack of] subject matter jurisdiction under Rule 12(b)(1) are reviewed under the same standards as motions to dismiss for failure to state a claim under Rule 12(b)(6)." *Walker v. New York*, 345 F.Supp.2d 283, 286 (E.D.N.Y.2004) (Hurley, J.) (citations omitted). The Court must take the facts as alleged in the Counterclaim to be true, and must draw all reasonable inferences from those facts in favor of the Defendants. *See Ortiz v. Cornetta*, 867 F.2d 146, 149 (2d Cir.1989). The Court cannot dismiss the Counterclaim "unless it appears beyond doubt that the [Defendants] can prove no set of facts in support of [t]his claim which would entitle [them] to relief." *See Conley v. Gibson*, 355 U.S. 41, 45–46 (1957).

Under Fed. R. Civ. Pro. 12(b)(1), the Counterclaims can only be properly dismissed for lack of subject matter jurisdiction if the Court lacks the statutory or constitutional power to adjudicate it. *See Wewe v. Mt. Sinai Hosp.*, 518 F. Supp. 3d 643, 647 (E.D.N.Y. 2021) (internal citations omitted).

No such impediment to jurisdiction exists here as the Court has supplemental jurisdiction over the Counterclaim; and in the alternative, independent diversity jurisdiction. As such, Plaintiff's Motion to Dismiss lacks any sufficient legal basis and must be dismissed.

II.    **THE COURT HAS SUPPLEMENTAL JURISDICTION OVER THE COUNTERCLAIM**

Plaintiff's Motion to Dismiss is fundamentally flawed, as it entirely ignores this Court's supplemental jurisdiction over Defendants' Counterclaim, which is compulsory under Fed. R.. Civ. Pro. 13(a).

28 U.S.C. § 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts still have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Claims "form part of the same case or controversy" when they "derive from a common nucleus of operative fact." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011); *Achtman v. Kirby, McInerney & Squire, LLP*, 462 F.23d 328, 335, (2d Cir. 2006).

A compulsory counterclaim necessarily falls within a court's supplemental jurisdiction. *Turban v. Bar Giacosa Corp., No.* 19-CV-1138 (JMF), 2019 WL 3495947, at *3 (S.D.N.Y. Aug. 1, 2019); *Nicholson v. Feeding Tree Style, Inc.*, No. 12 Civ. 6236(JPO), 2014 WL 476355, at *2 (S.D.N.Y. Feb. 6, 2014) (finding that the test for whether counterclaims are compulsory is stricter than the test for whether a court may exercise supplemental jurisdiction over the counterclaims). As a result, it is well-settled that "courts have supplemental jurisdiction over compulsory counterclaims ***regardless*** of whether there is an independent basis for jurisdiction over those claims, *i.e.*, diversity jurisdiction or federal question jurisdiction." *D'Jamoos v. Griffith*, 368 F. Supp. 2d 200, 203 (E.D.N.Y. 2005) (emphasis added) (citing *Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 469 (1974) ("If a counterclaim is compulsory, the federal court will have ancillary jurisdiction over it even though ordinarily it would be a matter for a state

court"); *Harris v. Steinem,* 571 F.2d 119, 121–22 (2d Cir.1978) (citing rule regarding supplemental jurisdiction over compulsory counterclaims).

The law is also clear that the Court may retain supplemental jurisdiction over compulsory counterclaims, ***even if the plaintiff's claims are dismissed***. *See Ascentive, LLC v. Opinion Corp.,* 2012 WL 1569573, at *3 (E.D.N.Y. May 3, 2012) (where a "counterclaim is compulsory, even after a court dismisses a complaint . . . the court retains supplemental jurisdiction over the counterclaim"); *Empire United Lines Co., Inc. v. Presniakovas,* 2017 WL 4233032, at *3 (E.D.N.Y. Sept. 22, 2017) ("[W]hen counterclaims are compulsory . . . the Court may retain jurisdiction over the counterclaims, even if plaintiff's claims are dismissed"); *Holsten Import Corp. v. Rheingold Corp.*, 285 F.Supp. 607, 607–8 (S.D.N.Y.1968) (holding jurisdiction existed over compulsory counterclaim irrespective of independent basis for jurisdiction and declining to reach argument that diversity jurisdiction exists); *View 360 Solutions LLC v. Google, Inc.,* 310 F.R.D. 47, 50-51 (N.D.N.Y. 2015) (observing that despite dismissal of certain claims, the court "possesse[d] original subject-matter jurisdiction ... under 28 U.S.C. §§ 1331 and 1338," as the remaining cross-counterclaims were compulsory); *Moore v. New York Cotton Exchange,* 270 U.S. 593, 608–10 (1926) (court had jurisdiction over compulsory counterclaim, notwithstanding that claim creating federal question jurisdiction over complaint was dismissed); *Corsearch, Inc. v. Thomson & Thomson,* 792 F.Supp. 305, 333 (S.D.N.Y.1992) (holding court had supplemental jurisdiction over compulsory state law counterclaims and that jurisdiction remained despite plaintiff's claims being dismissed before trial); *Eberhard Inv. Assocs., Inc. v. Santino*, No. 01 Civ.3840 (LMM), 2004 WL 594728, at *2 (S.D.N.Y. Mar.25, 2004) ("[W]hen there is an independent jurisdictional basis for the counterclaim, Rule 41 does not prohibit dismissal of the underlying complaint. Similarly, the pendency of a compulsory counterclaim will not defeat

dismissal, since the court may retain jurisdiction over a compulsory counterclaim under Rule 13 so long as it had subject matter jurisdiction over the main claim.").

Accordingly, the supplemental jurisdiction analysis turns on whether the Counterclaim is compulsory – and as set forth below, there can be no dispute that it is.

### a.    The Counterclaim is Compulsory

Under Fed. R. Civ. Pro. 13(a), a claim is considered compulsory if it "(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." "The test for determining whether a counterclaim is compulsory is whether a logical relationship exists between the claim and the counterclaim and whether the essential facts of the claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Adam v. Jacobs,* 950 F.2d 89, 92 (2d Cir.1991) (internal quotation marks omitted); *see also Jones v. Ford Motor Credit Co.,* 358 F.3d 205, 209 (2d Cir.2004). In interpreting Rule 13(a), "this Circuit generally has taken a ***broad view***, not requiring an absolute identity of factual backgrounds[,] but only a logical relationship between them." *United States v. Aquavella,* 615 F.2d 12, 22 (2d Cir.1979) (emphasis added); *see also Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills,* 701 F.Supp.2d 568, 588 (S.D.N.Y.2010).

Using this framework, courts in this Circuit have ***consistently*** held that counterclaims based on a contract are compulsory in actions relating to the same contract. *See Skyline Steel, LLC v. Pilepro, LLC*, 2015 WL 999981, at *5 (S.D.N.Y. Mar. 5, 2015) (collecting cases); *Ventana DBS LLC v. Hayner Hoyt Corp.*, 2020 WL 5549038, at *3 (N.D.N.Y. Sept. 16, 2020) (claims "ar[o]se out of the same transaction or occurrence, as they both center[ed] on breaches of the same contract"); *Xerox Corp. v. Lantronix, Inc.*, 342 F. Supp. 3d 362, 372 (W.D.N.Y. 2018) ("It is well-established in this Circuit that a counterclaim is considered to be

compulsory where it arises out of the same contract as that at issue in the complaint."); *MMZ Assocs., Inc. v. Gelco Corp.,* 2006 WL 3531429, at *3 (S.D.N.Y. Dec. 8, 2006) (counterclaims related to same contract are compulsory); *Bezuszka v. L.A. Models, Inc.,* 2006 WL 770526 at *19 (S .D.N.Y. Mar. 24, 2006) (finding that counterclaims arising out of the same contract as the earlier action were compulsory in the earlier action).

Defendants' Counterclaim is a compulsory counterclaim under Fed. R. Civ. P. 13(a), as it is based on a breach of the *same* agreement that formed the basis of Plaintiff's claims – *i.e.,* the Wind-Down Agreement. Although the claims were based on different contract provisions (¶¶ 4(b) and 5), the standard is not that the provisions be identical or reciprocal, but merely that they be "logically related." *See MMZ Associates,* 2006 WL 3531429, at *3; *see also King Bros. Prods. v. RKO Teleradio Pictures, Inc.,* 208 F. Supp. 271, 275 (S.D.N.Y. 1962) (finding "[t]he word 'transaction' in Rule 13(a) cannot be read in such a restrictive sense as to limit compulsory counterclaims in actions for breach of contract to those addressed to the specific breach on which a plaintiff bases his claim for breach").

The claims at issue easily satisfy this standard. The contract provisions at issue were both integral to the overall bargain and agreement to wind-down the operations of and dissolve SmartCheckr, LLC. *See* Dkt. 25-1.  The claims involved identical parties – Clearview, Ton-That, Schwartz, and Johnson – all of whom were also parties to Wind-Down Agreement. The claims also contained factual overlap. For example, Plaintiff claimed that he introduced Clearview to Sheriff Ryan Gable of the Texas Department of Public Safety, which he claimed led to the sale of Clearview's services. Dkt. 25, ¶ 40. Plaintiff also admitted that he made critical, disparaging statements to Mr. Gable, as well as *dozens* of Clearview investors and/or shareholders[2]

---

[2] Plaintiff certified to these sets in his discovery responses.

concerning Defendants – thus, there were clearly overlaps in discovery. *See* Plaintiff's Second Supplemental Responses to Interrogatories, **Exhibit A**, attached to the Certification of Ronald A. Giller, Esq. submitted in support of this opposition ("Giller Cert.").

Furthermore, as noted above, the Court has already interpreted the contract provision at issue in the Counterclaim - ¶4(b) - when it granted Defendants' motion to dismiss Plaintiff's breach of contract claim against the Individual Defendants, which was based on the same provision. *See* Dkt. 40, at pgs. 4, 10–17. Moreover, in their moving brief, Defendants analyzed and discussed not only ¶4(b), which sets forth the standard of performance, but also requested the Court look to ¶4(e) concerning damages - the *same* provision Plaintiff now seeks the Court to interpret in this motion. Dkt. 32 at 14-15; *see also Bonadio v. E. Park Research, Inc*., 220 F.R.D. 187, 189 (N.D.N.Y.2003) (finding that claims were compulsory counterclaims . . . arising out of the same contract because allowing them to proceed . . . would be contrary to the purpose of Rule 13 which is preserving scarce judicial resources and preventing inconsistent judicial determination and verdicts on similar issues."). Thus, if this Counterclaim were deemed permissive, rather than compulsory, there would be a clear a risk of inconsistent judicial determinations in the interpretation of the contract provisions.

Moreover, while no longer relevant given that Plaintiff's claims have been dismissed, Defendants could have argued that Plaintiff's breaches of the Wind-Down Agreement were so material as to excuse their own performance under the Agreement (as would have been analyzed after the full disclosure of Plaintiff's breaches through discovery) –  a defense available under New York law – providing further support that this Counterclaim was compulsory. *VFS Fin., Inc. v. Falcon Fifty LLC,* 17 F. Supp. 3d 372, 379 (S.D.N.Y. 2014) ("Under New York law, a party's performance under a contract is excused where the other party has substantially failed to

perform its side of the bargain or, synonymously, where that party has committed a material breach.") (internal citations omitted); *Barbagallo v. Marcum LLP*, 925 F. Supp. 2d 275, 287 (E.D.N.Y. 2013), aff'd, 552 F. App'x 102 (2d Cir. 2014).

Thus, it clearly follows that the Counterclaim is compulsory, as the claims were so logically connected that considerations of judicial economy and fairness dictated the issues be resolved in one lawsuit. Moreover, this litigation has been proceeding for over two years (2), and the Court is ***intimately*** familiar with the parties, facts and procedural posture of this case – especially so, in light of the continuous discovery and sanctions issues that have been forced to be addressed *multiple* times by this Court - and retaining jurisdiction is undisputedly the most efficient and equitable path forward.

In sum, the Court has supplemental jurisdiction to retain jurisdiction over this compulsory Counterclaim and need not find an independent basis for jurisdiction.

## III.    INDEPENDENT BASIS FOR DIVERSITY JURISDICTION ALSO EXISTS

Assuming *arguendo* that the Court finds Defendants' counterclaim is permissive – which Defendants adamantly maintain it is not – Defendants have properly pled the requirements for diversity jurisdiction under the law.

This Court has jurisdiction over actions where there is citizenship diversity and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332. Defendants, as the parties invoking jurisdiction, bear the burden of proving their claims meet the minimum jurisdictional amount to a "reasonable probability." *Chase Manhattan Bank, N.A. v. Am. Nat'l Bank & Tr. Co.*, 93 F.3d 1064, 1070 (2d Cir. 1996). This burden is "hardly onerous." *Scherer v. Equitable Life Assur. Soc'y*, 347 F.3d 394, 397 (2d Cir. 2003).  In fact, the Second Circuit "recognizes a rebuttable presumption that the face of the complaint is a

good faith representation of the actual amount in controversy." *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999).

The party opposing jurisdiction then must demonstrate the insufficiency of the amount in question "to a legal certainty." *Navaera Sciences, LLC v. Acuity Forensic Inc.*, 667 F.Supp.2d 369, 378 (S.D.N.Y.2009). As a result, a challenge to the amount in controversy faces a high bar. *Scherer*, 347 F.3d at 397. "The legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Id.* Thus, "even where [the] allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982); *Navaera*, 667 F.Supp.2d at 373 (S.D.N.Y.2009) ("[E]ven if it appears highly unlikely that plaintiffs could recover compensatory damages remotely approaching $75,000, dismissal ... would be improper." (*citing Scherer*, 347 F.3d at 397)).

Plaintiff incorrectly argues that, because Defendants simply allege "the amount in controversy exceeds $75,000.00, exclusive of interests and costs," the Counterclaim is impermissibly conclusory.[3] However, "using boilerplate language that the amount of controversy exceeds $75,000 does not necessarily render the alleged damages conclusory." *Geffner v. Iona Coll.*, No. 13 CIV. 1156 DAB, 2013 WL 5549922, at *4 (S.D.N.Y. Oct. 2, 2013) (internal citation omitted); *Cooper Wiring Devices, Inc. v. Novikov*, No. 05-CV-2824 (NGG), 2007 WL 2287888, at *4 (E.D.N.Y. Aug. 8, 2007). Instead, this Court must review the

---

[3] As an aside, it is noteworthy that when Plaintiff pled his breach of contract claim against the Individual Defendants for the breach of the same contract provision (Count II of his original Complaint), he also only pled that he was seeking "damages exceeding $75,0000 as proximate result of the Individual Defendants' breach of contract." He also did not provide *any* details about how the alleged statements made caused him harm, nor did he identify any particular type of damage. *See* Dkt. 25. Now, in an about-face, he claims that that this type of pleading is improper.

Counterclaim "to determine whether the facts justify damages that would satisfy the amount in controversy threshold." *Cooper,* 2007 WL 2287888, at *4.

The allegations here are sufficient to give rise to a presumption that the amount-in-controversy threshold is satisfied. The counterclaim is based on Plaintiff's breach of ¶4(b) of the Agreement – i.*e.,* making statements that attacked, or were critical of the reputation, business or character of Defendants. *See* Dkt. 50. Defendants identified *multiple* instances in the Counterclaim (and attached supporting exhibits) where Plaintiff made statements to third parties, on his social media platforms, and/or to the major media companies that violated the Agreement – which Plaintiff **admitted** to not only to making but that they "impugned, attacked, or was otherwise critical." *See* Plaintiff's Supplemental Responses to Request for Admissions, **Exhibit B**, to Giller Cert.; *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss []under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings."). Plaintiff also identified at least **thirty-three (33)** investors and/or shareholders, and **four (4)** major media outlets – including the Washington Post and New York Times – to whom he made oral or written critical statements about Defendants to during the Restricted Period. *See* Plaintiff's Supplemental Responses to Interrogatories, **Exhibit C** to Giller Cert. This is a matter of common sense. Defendants are a successful, industry-leading technology company, with significant revenues and shareholder value. Plaintiff violated his confidentiality obligations and made disclosures that harmed Defendants reputation to the New York Times and other major media outlets, then disparaged Defendants dozens of times to their business network. Any reasonable person can understand that the damages at issue are monetarily significant. Only now that information Defendants could not have previously accessed  is being produced, are Defendants in a position to more fully assess the damage Plaintiff caused.

The Counterclaim is also based on Plaintiff's breach of ¶4(c) of the Agreement – *e.g.,* Plaintiff also admitted to disclosing the Wind-Down Agreement to Kashmir Hill in the New York Times. *See* **Exhibits B, C** to Giller Cert. Therefore, it is undisputed that Plaintiff has committed *numerous* breaches of the Wind-Down Agreement.

Defendants then alleged in good faith that these breaches caused damage exceeding $75,000, and with the exact amount to be proven at trial. Dkt. 50 at ¶¶7, 59, 60. Defendants claimed that the damages were based on harm to reputation, business and client relationships, as well as and other consequential damages stemming from Plaintiff's breach of the Wind-Down Agreement.[4] *See id.*; Initial Disclosures, **Exhibit D** to Giller Cert.

Defendants have not identified the exact damages amount because 1) damages for critical and/or damaging statements are difficult to quantify; 2) Plaintiff has only provided limited discovery concerning this counterclaim and no documents yet; and 3) discovery (including expert discovery) has not yet expired– thus, the extent and exact amount of damage is still unknown at this time. However, a detailed damages computation is not required at this stage; only a good faith allegation that the amount in controversy exceeds $75,000.

Notwithstanding, Defendants are submitting an affidavit from Defendant Richard Schwartz, current co-CEO of Clearview, in support of this opposition ("Schwartz Aff.") that provides further detail regarding the substantial harm believed to have been suffered by Clearview as a result of Plaintiff's breaches of the Agreement. *See Wewe,* 518 F. Supp. at 647

---

[4] Plaintiff misleads the Court into believing that Plaintiff had a meaningful opportunity to expand on the damages claim in response to Plaintiff's Rule 33 and 34 discovery demands; however, Plaintiff failed to serve *any* discovery demands relevant to damages. Plaintiff highlights Demand No. 4. – which requests *all* contracts, agreements, and "other binding obligations" entered into by or on behalf of Clearview AI for a *seven-year period.* It is unclear how that demand is relevant to Defendants' damages claim. Plaintiff also identifies Demand No. 22; however, that request asks the basis to support allegations relevant to *Plaintiff's background* - starting with the "Johnson is no stranger to the legal system" and continuing on to name several lawsuits Defendants are aware Plaintiff was engaged in. Again, completely irrelevant to damages.

(the court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional issues) (internal quotations omitted). This includes the loss of prospective investors, loss of funding, significant reputational damage within key industry and governmental circles, and consequential damages. *Id.* at ¶¶3-13. As set forth in the affidavit, these damages are not speculative in the abstract: Clearview – a company providing the world's leading facial recognition search engine (*see* Dkt. 50 at ¶11) – operates in a professional industry where investments and contracts can easily range anywhere from $100,000 to several million dollars, and where reputational damage can have lasting, measurable economic consequences. Notwithstanding, any doubt of these damages must be resolved in Defendants' favor. *See James v. DeGrandis*, 138 F.Supp.2d 402 (W.D.N.Y.2001); *Marczeski v. Law*, 122 F.Supp.2d 315, 321 (D.Conn.2000) (compensatory damages for libel and false statements are difficult to quantify).

Given the nature of the allegations – and the fact that there is clear proof that Plaintiff breached the Wind-Down Agreement by making disparaging statements about Defendants to individuals and entities within Clearview's business network –  it is more than plausible that the damages exceed the jurisdictional threshold.

Defendants have clearly met its low burden to show a "reasonable probability" that Plaintiff's numerous disparaging (and public) statements about Defendants caused damages in excess of $75,000 and Plaintiff has failed to set forth *any* argument to support that it is legally impossible for Defendants to recover this amount. In fact, this part of the analysis is completely omitted from Plaintiff's Motion.

Accordingly, dismissal for lack of subject matter jurisdiction is **not** warranted and Plaintiff's Motion to Dismiss must be denied.

a.    **Paragraph 4(e) of the Wind-Down Agreement Has No Relevance to the Jurisdictional Issues in this Case**

In support of his motion, Plaintiff appears to argue that ¶4(e) of the Wind-Down Agreement - which provides for injunctive relief in the event of a breach- somehow undermines Defendants' claim for compensatory damages and negates their ability to seek damages in excess of $75,000 as needed for diversity jurisdiction. This argument is not only illogical, but also inconsistent with the plain language of the Agreement.

Paragraph 4(e) outlines the remedies available in the event of a breach of the Wind-Down Agreement, and permits injunctive relief ***in addition and without limitation to any other remedies available to Defendants.*** It does not state that injunctive relief is the "sole remedy" for breach, as Plaintiff continuously misrepresents in his moving brief. *See* Dkt. 25-1; Plaintiff's Br. at 12-13; 17.

The Agreement also states that injunctive relief would be available because breaches of restrictive covenants, such as the one at issue, could be "difficult or impossible" to measure. *See* Dkt. 25-1. Plaintiff seemingly fixates on the word "impossible," ignoring the disjunctive language of the Agreement, incorrectly asserting that the parties agreed that damages "would not be subject to any sort of calculation" because they are "impossible to calculate." Plaintiff's Br. at 12. This is easily refuted by the plain and unambiguous contract language.

Notwithstanding the fact that Plaintiff's argument is unsupported by the Wind-Down Agreement's language, it is also unsupported by any controlling case law. Indeed, the case Plaintiff relies upon in support of this argument, *GW Holdings Group, LLC v. US Highland, Inc.*, 367 F. Supp.3d 78 (S.D.N.Y. 2019) – finding lack of subject matter jurisdiction in a case where damages were alleged to be "impossible" to accurately calculate – was ***overturned*** by the Second Circuit in *GW Holdings Grp., LLC v. U.S. Highland, Inc.*, 794 F. App'x 49, 51 (2d Cir. 2019).

20

The Circuit Court found that the amount in controversy was properly pled based on the plaintiff's good faith estimate of damages, declining to provide any weight to the fact that the damages were allegedly "impossible" to accuracy calculate.

Plaintiff then launches into a diatribe about the requirements for meeting jurisdictional amount thresholds in cases seeking solely injunctive relief. However, this discussion is entirely irrelevant, as Defendants are seeking compensatory damages. As such, the Court should completely disregard Plaintiff's arguments relating to injunctive relief, as they have no bearing on the jurisdictional issues currently before the Court.

      **b.**      **Defendants Did Not Challenge Jurisdiction of Plaintiff's Original Claim**

Plaintiff also appears to make an unsupported – and, frankly, unclear – argument that Defendants are precluded from asserting proper jurisdiction over the Counterclaim because they denied certain jurisdictional allegations in their Answer to Plaintiff's Amended Complaint. *See* Plaintiff's Br. at 6-7. However, as Plaintiff admits, Defendants never contested the Court's subject matter jurisdiction over Plaintiff's Amended Complaint. In responding to the jurisdictional allegations in their Answer, Defendants responded that the allegations "set forth a statement of law and/or a legal conclusion for which no responsive pleading is required." *See* Dkt. 50. While Defendants denied the allegations that Plaintiff suffered damages in excess of $75,000, this denial did not constitute an objection to this Court's jurisdiction, but rather was a routine part of responding to the merits of a complaint. *Id.*

Plaintiff is plainly grasping at straws, throwing every conceivable argument at the proverbial kitchen sink to see what will stick - which only underscores the clearly frivolous nature of this motion.

## **CONCLUSION**

Based upon the foregoing, supplemental jurisdiction and/or independent diversity

jurisdiction exists over Defendants' compulsory Counterclaim. As such, Defendants respectfully

request the Court to deny Plaintiff's Motion to Dismiss in its entirety.

Dated:  New York, New York
        May 2, 2025

Respectfully submitted,

GORDON & REES LLP
*Attorneys for Defendants Clearview AI, Inc.,*
*Hoan Ton-That and Richard Schwartz*

By:  __/s/ Ronald A. Giller_____
        Ronald A. Giller

1 Battery Park Plaza, 28th Floor
New York, NY 10004
Phone: (973) 549-2500
Fax: (973) 377-1911
E-mail: rgiller@grsm.com