UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
==============================

CHARLES JOHNSON,
    Plaintiff- Counter-Defendant,
                            :
                            :
        — *versus* —:


CLEARVIEW AI, INC., HOAN
TON-THAT, RICHARD SCHWARTZ,
    Defendants-Counter-Plaintiffs.:
==============================

Case No. 23-cv-02441-KPF

==============================

REPLY BRIEF IN SUPPORT OF
COUNTER-DEFENDANT'S MOTION TO DISMISS


Bernard V. Kleinman, Esq.
Attorney for Plaintiff-Counter-Defendant
Law Office of Bernard V. Kleinman, PLLC
108 Village Square
Suite 313
Somers, NY 10589-2305
Tel. 914.644.6660
Mobile 203.981.0781
Fax 914.694.1647
Email: *attrnylwyr@yahoo.com*


Movant Requests Oral Argument


Dated: 09 May 2025

## **<u>TABLE OF CONTENTS</u>**

Table of Authorities ..................................................................................................... ii

I. The Evidence Offered by the Counter-Plaintiffs is Entirely Speculative ..................... 1

II. Supplemental Jurisdiction Under Rule 13 is
      Unavailable to the Counterclaimants ...................................................................... 9

III. No Independent Basis for Jurisdiction Under Section 1332 Lies Here ................. 15

IV. Conclusion ........................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Absolute Activist Master Value Fund, Ltd. v. Ewing*,
    2014 U.S. Dist. LEXIS 99612 (S.D.N.Y. 2014)................................14

*ADYB Engineered for Life, Inc. v. Edan Administration Svces. Ltd.*,
    2021 U.S. Dist. LEXIS 59666 (S.D.N.Y. 2021)...........................12-13

*Alvarado Morales v. Digital Equip. Corp.*, 669 F. Supp. 1173
    (D.P.R. 1987), *aff'd* 843 F.2d 613 (1st Cir. 1988)........................ 3

*Bean Meridan, L.L.C. v. C.F. Bean, L.L.C.*,
    2018 U.S. Dist. LEXIS 168638 (S.D. Miss. 2018)............................16

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)........................ 2

*Bernal v. All Am. Investment Realty, Inc.*, 479 F. Supp.2d 1291 (S.D. Fla. 2007)....17

*CBS Outdoor LLC v. California Mini Storage, LLC*,
    2014 U.S. Dist. LEXIS 105739 (N.D. Cal. 2014)............................19

*Collar v. Abalux, Inc.*, 2018 U.S. Dist. LEXIS 112086 (S.D. Fla.),
    *aff'd* 895 F.3d 1278 (11th Cir. 2018)........................................ 4

*Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.*,
    233 F.3d 697 (2d Cir. 2000)................................................. 9

*Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014)..................10

*EEOC v. Amertac Holdings, Inc.*, 2007 U.S. Dist. LEXIS 3165796 (S.D.N.Y. 2007)  9

*Elome v. Sva Trucking, LLC,* 2021 U.S. Dist. LEXIS 188917 (E.D.N.Y 2021)............ 2

*Esurance Ins. Co. v. Smith*, 2018 U.S. Dist. LEXIS 99254 (W.D. Wash. 2018)......... 3

*Executive Park Partners, LLC v. Benicci, Inc.*,
    2023 U.S. Dist. LEXIS 94211 (S.D.N.Y. 2023)............................... 3

*Fenton v. Freedman*, 748 F.2d 1358 (9th Cir. 1984)........................................10

*Fujifilm North Am. Corp. v. Gelechmall Enterprises, LLC*,
    239 F. Supp.3d 640 (E.D.N.Y. 2017)........................................13

*G & M Tire Co. v. Dunlop Tire & Rubber Corp.*, 36 F.R.D. 440 (N.D. Miss. 1964)...15

*Genesco Entertainment, Div. of Lymutt Indus., Inc.*,
    593 F. Supp. 743 (S.D.N.Y. 1984)........................................... 2

*Graubart v. Jazz Images, Inc.*, 2006 U.S. Dist. LEXIS 24828 (S.D.N.Y. 2006)......19

*GW Holdings Group, LLC v. US Highland, Inc.*, 367 F. Supp.3d 78 (S.D.N.Y.),
    *rev'd* 794 Fed. App'x 49 (2d Cir. 2019)................................... 6

*Harty v. West Point Realty*, 28 F.4th 435 (2d Cir. 2021)............................... 3

*HID Global Corp. v. Leighton*, 2007 U.S. Dist. LEXIS 3566705 (N.D. Ohio 2007),.10

*Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp.2d 218 (S.D.N.Y. 2010) ...................... 2

*James v. DeGrandis*, 138 F. Supp.2d 402 (W.D.N.Y. 2001) ............................................18

*Jean-Louis v. Am. Eagle Transportation Corp.*, 2007 U.S. Dist. LEXIS 100492
    (S.D. Fla. 2007) ....................................................................................................15

*Johnson v. Geico Ins.*, 2025 U.S. Dist. LEXIS 78375 (E.D.N.Y. 2025) ...................... 2

*Jones v. Ford Motor Credit Co.*, 358 F.3d 205 (2d Cir. 2004) .................................. 9, 13, 14

*Kaplan v. Computer Sciences Corp.*, 148 F. Supp.2d 318 (S.D.N.Y. 2001) ...............11

*Lupo v. Human Affairs Int'l*, 28 F.3d 269 (2d Cir. 1994) .......................................... 2

*Macken v. Jensen*, 333 F.3d 797 (7th Cir. 2003) ..........................................................18

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000) ...........................................17

*Marczeski v. Law*, 122 F.Supp.2d 315 (D. Conn. 2000) .............................................18

*McCarthy v. United States*, 850 F.2d 558 (9th Cir. 1988) .......................................... 3

*MMZ Assocs., Inc. v. Gelco Corp.*, 2006 U.S. Dist. LEXIS 88535 (S.D.N.Y. 2006) .. 9

*Motorists Mutual Ins. Co. v. Simpson*, 404 F.2d 511 (7th Cir. 1968),
    *cert. denied* 294 U.S. 988 (1969) ......................................................................11

*Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*,
    292 F.3d 384 (3d Cir. 2002) ...............................................................................10

*Ransom v. Wal-Mart Stores*, 920 F. Supp. 176 (M.D. Ga. 1996) ...............................15

*Rekor Sys. v. Loughlin*, 2020 U.S. Dist. LEXIS 219768 (S.D.N.Y. 2020) ...................13

*Renderos v. Clearview AI, et al.*, 21-cv-2567 (N.D. Cal.) .......................................... 8

*Robets v. Zemen*, 191 F.R.D. 575 (N.D. Ill. 2000) .................................................... 3

*Skyline Steel, LLC v. Pilepro, LLC*, 2015 U.S. Dist. LEXIS 27436 (S.D.N.Y. 2015) ...12

*St. Paul Indemnity v. Red Cab Co.*, 303 U.S. 283 (1936) ...........................................10

*Travelers Casualty & Surety Co. v. Ace Am. Reinsurance Co.*,
    329 F. Supp.2d 659 (S.D.N.Y. 2005)
    *aff'd* 201 Fed. App'x 240 (2d Cir. 2006) ...........................................................16

*United Food & Comm'l Workers' Union, Local 919, AFL-CIO v.*
    *CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298 (2d Cir. 1994) .. 2

*United States v. Aquavella*, 615 F.2d 12 (2d Cir. 1979) ......................................... 9, 13

*Washington Nat'l Ins. Co. v. OBEX Grp. LLC*, 958 F.3d 126 (2d Cir. 2020) .............15

## STATUTES & RULES

28 U.S.C. § 1332(a) ..................................................................................... *passim*

Rule 11 ............................................................................................................ 3, 17

Rule 12(b) ....................................................................................................... 3

Rule 13 ............................................................................................................ 9-15

Rule 26(g) ....................................................................................................... 17

Rule 82 ............................................................................................................ 11

Plaintiff-Counter-Defendant Charles Johnson (hereinafter referred to as "Johnson"), by and through his counsel of record, Bernard V. Kleinman, Esq., does submit this Reply Memorandum of Law in Support of his Rule 12(b) Motion to Dismiss.

I. The Evidence Offered by the Counter-Plaintiffs is Entirely Speculative

In their "frivolous" response, the Counter-Plaintiffs attempt to offer some sort of proof that their damages are in excess of the jurisdictional amount requirements of Section 1332. They offer several items in support of that, including a sworn statement of Richard Schwartz (a named counter-plaintiff), an article from *The New York Times*, and several other documents. Absolutely none of these contain any information or evidence that Clearview has suffered any damages beyond a vague speculation of how Clearview has been damaged. There are no named individuals, entities, corporations, partnerships, investors, Government agencies (state, local or federal), or anyone else in the known universe who even remotely has refused to deal with Clearview based upon Mr. Johnson's alleged violation of the Wind Down Agreement. Indeed, the Counter-Plaintiffs position appears to be that the act of Congress, in setting a jurisdictional amount requirement, in diversity cases, is to be totally ignored, and that merely by saying so (*i.e.*, that it has been damaged in an amount in excess of $75,000), then "poof", it is so. And, then even more shameless, is the decision to recruit this Court, and the federal judicial system, for no other purpose than to attempt to bankrupt Mr. Johnson, by excessive litigation and motion practice, and pointless discovery demands.[1]

---

[1] As the Court well knows, Mr. Johnson has offered to settle this action, but the response of the Counter Plaintiffs is to not even discuss a settlement, which, in light of the glaring fact that Clearview is pained to demonstrate that it has suffered any quantifiable damages at all, why this litigation is proceeding (other than as a fee generating exercise), and the Court's time is being wasted.

The law is crystal clear, that in order to satisfy the amount in controversy requirement, a party must establish "that it appears to 'a reasonable probability' that the claim is in excess of [$75,000]," exclusive of interest and costs. *United Food & Comm'l Workers' Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 305 (2d Cir. 1994). Indeed, "the amount in controversy must be <u>non-speculative</u> in order to satisfy the statute, and conclusory allegations that the amount-in-controversy requirement is satisfied are insufficient." *Elome v. Sva Trucking, LLC,* 2021 U.S. Dist. LEXIS 188917 at *1 (E.D.N.Y 2021) (Emphasis added). "[I]f the jurisdictional amount is not clearly alleged in the plaintiff's complaint, and the defendants [claim] fails to allege facts adequate to establish that the amount in controversy exceeds the jurisdictional amount, federal courts lack diversity jurisdiction . . ." *Lupo v. Human Affairs Int'l*, 28 F.3d 269, 273-74 (2d Cir. 1994). While the Counter-Plaintiffs take the position that setting forth sufficient facts to support a claim that Section 1332 has been satisfied is of no consequence, that is just not the law. Indeed, even *pro se* plaintiffs, while held to a "liberal pleading standard", must still set forth sufficient facts to demonstrate that damages do exceed the amount that Congress has set forth in the statute. *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp.2d 218, 224 (S.D.N.Y. 2010), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In accord see *Johnson v. Geico Ins.*, 2025 U.S. Dist. LEXIS 78375 at *4 (E.D.N.Y. 2025).

Yet, the Counter-Plaintiffs clearly take the position that they merit a standard that renders the federal statute of no consequence or relevance, and can be ignored at will. Such a standard would, as the time-worn phrase, goes, would open the proverbial "flood gates" for any and all litigation. See *Genesco Entertainment, Div. of Lymutt Indus., Inc*., 593 F. Supp. 743, 755 (S.D.N.Y. 1984).

A review of what has been offered by the Counter-Plaintiffs is merited. It should be understood, that in a Rule 12(b)(1) Motion to dismiss, the Court may examine evidence outside the pleadings, and choose to rely upon such evidence or not. *Harty v. West Point Realty*, 28 F.4th 435, 441 (2d Cir. 2021). In accord see *Executive Park Partners, LLC v. Benicci, Inc.*, 2023 U.S. Dist. LEXIS 94211 at *5 (S.D.N.Y. 2023). Indeed, this wide-ranging ability of a party, in a Rule 12(b)(1) Motion, even one based upon satisfaction of the jurisdictional amount requirement, may submit "any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). In accord see *Esurance Ins. Co. v. Smith*, 2018 U.S. Dist. LEXIS 99254 at *2 (W.D. Wash. 2018). Thus, confronted by this opportunity to present whatever evidence it may possess, or have the ability to discover, it can be reasonably presumed that the Counter-Plaintiffs have offered the best and most persuasive evidence that the amount in controversy exceeds Section 1332's jurisdictional amount minimum of $75,000. Otherwise, to use their word, their opposition claims would be "frivolous".

The fact that no evidence exists that the jurisdiction amount in controversy exceeds the Section 1332 threshold, and the failure of Counter-Plaintiff's counsel to make such an inquiry, before the filing of its counter-claim, is a sanctionable event under Rule 11. As one Court has opined, "An attorney has an affirmative duty to investigate the facts prior to subscribing any motion or other paper." *Alvarado Morales v. Digital Equip. Corp.*, 669 F. Supp. 1173, 1187 (D.P.R. 1987), *aff'd* 843 F.2d 613 (1st Cir. 1988). And, this applies to confirming that the amount in controversy exceeds Section 1332's threshold. *Robets v. Zemen*, 191 F.R.D. 575, 576-77 (N.D. Ill. 2000) (sanctions imposed on plaintiff's counsel for failure to properly confirm that the amount in controversy exceeded the statutory

minimum). See generally *Collar v. Abalux, Inc.*, 2018 U.S. Dist. LEXIS 112086 at *60 (S.D. Fla.), *aff'd* 895 F.3d 1278 (11th Cir. 2018).

As far as the evidence that has been proffered by the Counter-Plaintiffs, none of these satisfy the statutory or case-law requirements.

*Schwartz Affidavit*: Schwartz attempts to show a "reasonable probability" that the amount of loss exceeds the jurisdictional minimum, by making a number of completely conclusory statements, throwing around numbers that are purely imaginative. He swears, for example, that "Clearview has suffered harm to reputation, business and client relationships." Affid. at ¶ 3. But, then states, that "the exact amount of damages are unknown at this time". *Ibid*. In other words, he has no idea of the amount, if any, that Clearview has been damaged by Johnson's actions. He speaks of "reputational harm to Clearview", but shows no evidence of that. Indeed, if Clearview's reputation has been harmed, it is due to its multiple violations of privacy requirements, and the undefended actions in support thereof in the European Union.[2] Arguably, all of these actions, in which

---

[2] See "The French SA fines Clearview AI EUR 20 million", reported at *https://www.edpb.europa.eu/news/national-news/2022/french-sa-fines-clearview-ai-eur-20-million_en* (Oct. 20, 2022), where, in imposing the fine, the EU, summarized its findings as follows:
- Unlawful processing of personal data (breach of article 6 of the GDPR)
- Individuals' rights not respected (articles 12, 15 and 17 of the GDPR)
- Lack of cooperation with the CNIL (Article 31 of the RGPD)

See also, "Clearview AI's massive fine for GDPR violations — and what it means," reported at *https://blog.barracuda.com/2024/10/23/clearview-ai-fine-gdpr-violations* (Oct. 23, 2024), reporting that Clearview had been fined €33.4 million by the Dutch Data Protection Authority for violating the EU's General Data Protection Regulation.

Also reported by the Library of Congress: "Netherlands: Face-Recognition Company Clearview AI Fined for Violating EU's General Data Protection Regulation*", https://www.loc.gov/item/global-legal-monitor/2024-10-16/netherlands-face-recognition-company-clearview-ai-fined-for-violating-eus-general-data-protection-regulation/*

millions of dollars of fines have been imposed upon Clearview, lie at the feet of Schwartz

and That, and not Johnson.  Schwartz also states that Johnson's breach of the Wind Down

Agreement, by disclosing it to a reporter for *The New York Times*, has again caused some

sort of quantifiable damages, but none are specified or even hinted at.  *Id*. at ¶ 5.  Schwartz

then cites as some of proof of damages *The New York Times* article (attached to Counter

Plaintiff's Response as "Exhibit A"), the statement in the article that "a potential investor

refused to invest in the company, stating that Clearview's ties with Plaintiff 'scared him

off.'"  *Id*. at ¶ 6.  Yet, even if true, this has nothing to do with the claims in the counter-

claim.  It is alleged that Clearview was damaged by Johnson's breach of the Wind Down

Agreement, nothing else.  See Counter-Claim at ¶¶ 53 thru 60.  ECF No. 50.  Yet, this

claim of damages has nothing to do with the Wind Down Agreement or its disclosure.  The

article states that "Another investor who was approached by the company said that the

product was impressive but that the ties to Charles Johnson scared him off. (He did not

want to be named, fearing retribution from Johnson.)".  See Schwartz "Exhibit A", at p.

32.  And, even if this statement is somehow related to the breach of contract action (which

it clearly is not) it is unknown if this investor was even going to invest the statutory

minimum of $75,000.  And, then Schwartz states that "this is just one example of the

harm suffered as a result of Plaintiff's breaches of the Agreement".  But, what were the

others?  Schwartz then states, with no support whatsoever, that "it is Clearview's <u>belief</u>

that many prospective investors faced the same deterrent (which the company anticipates

---

None of these fines, for violating EU rules governing privacy, have anything to do with
Charles Johnson, the Wind Down Agreement, or this case.  What they establish is that
any on-going litigation expenses, and other damages suffered by Clearview, are clearly
self-inflicted.

will be revealed in discovery), reducing the number of offers that the company would receive, resulting in less favorable terms, lower overall valuations, and less available capital that the company could deploy to fuel its growth." Emphasis added. Something more than "belief" is required. Schwartz follows this entire line of speculation in the rest of his sworn statement. He states that "Clearview believes investors were deterred from investing, as a result of [Johnson's Substack] statements". *Id.* at ¶ 7. But, as is a theme throughout, nothing of, even minimal proof is provided. This is followed by "[Johnson] also criticized Clearview to, at least, the [*sic*] New York Times and France24", but then acknowledges the following: "Although <u>difficult to quantify</u>, this undisputedly reduced Clearview's ability to secure contracts and investments." Emphasis added. *Id.* at ¶ 8. Rather, Schwartz should have said "impossible to quantify", as he can establish no damages at all.[3]

---

[3] In their Responsive Memorandum of Law, the Counter Plaintiffs point out that a case cited by Movant (*GW Holdings Group, LLC v. US Highland, Inc.*, 367 F. Supp.3d 78 (S.D.N.Y. 2019)), was reversed by the Court of Appeals. See *GW Holdings Group, LLC v. US Highland, Inc.,* 794 Fed. App'x 49 (2d Cir. 2019). While, in fact that case was reversed on the issue of jurisdictional amount, the record there was much, much more than that presented here. As the Court of Appeals summarized the facts, it observed that

> Plaintiff-Appellant alleges that the two promissory notes at issue were worth respectively $55,000 and $36,750. It alleges that it was able to partially convert the first note but that Defendant-Appellee breached the terms of both agreements, causing contractual damages in excess of $225,000.

*Id.* at 50.

In other words, the Appellant had presented evidence, in its pleadings below, that it had suffered a specific, amount of quantifiable harm — $225,000. In that case, a reading of the Complaint, and the supporting documentation of the Plaintiffs, made clear that, while difficult to actually specifically quantify, the damages did exceed $225,000. See *GW Holdings v. US Highland*, 18-cv-4997 (S.D.N.Y.), ECF No. 5, which contained four supporting documents.

No such number, or even an attempt to provide a number, is present in the case at Bar.

Schwartz continues that "a potential investor, Founders Fund, informed former Clearview CEO, Hoan Ton-That, that there would be a '0% chance' that they could invest given the 'insane threats' Plaintiff made to their team members." *Id*. at ¶ 10.  See Schwartz Exhibit B.  Who this person is, how much he/she was thinking of investing, if they decided not to invest based upon Johnson's alleged breach of the Wind Down Agreement, and more,  are all unanswered.  And, why is there no sworn statement from this "potential investor"?  None has been provided in discovery, and certainly, none in this Response. Schwartz then proffers "Exhibit C", which was an emailed offer by Johnson, from January 26, 2021, wherein Johnson was making an offer to purchase Schwartz's shares in Clearview, and was addressed to Schwartz and Ton-That.  While Schwartz's Affidavit claims that, in this email, "Plaintiff alleged that Clearview was mismanaged" (*id*. at ¶ 11), the email plainly states otherwise, *viz*., "Mr. Johnson has great respect for you [*i.e.*, Schwartz and Ton-That] both", "Mr. Johnson is also aware that Mr. Ton-That is essential to the technical operations of Clearview and intends to keep him on as CTO with full control over technical questions within the company."  How, in any manner or understanding, this translates to damages "anywhere from $25,000 to several million dollars" (*ibid*), is beyond comprehension.

Only in a Bizarro World, where up is down, and in is out, does this sworn statement of Schartz make any sense in the context of setting forth a jurisdictional amount requirement.

Schwartz also attaches an email (Exhibit C), dated August 5, 2021, where Johnson stated "Didn't I tell you you'd get no contracts if you kicked me out of the company." Schwartz claims that "I believe this statement  . . .harmed Clearview's business by depriving it of revenues it otherwise would have earned."  All that Schwartz can state, with

no proof, of even minimal tangible evidence, that this is true. No statements from any prospective clients or customers, no contracts canceled due to Johnson's alleged breach, no statements from any investors that Johnson's breach of the Wind Down Agreement caused them to decide not to invest — absolutely no proof of any damages at all!

Schwartz then states that "Plaintiff's breaches of the Agreement also contributed to increased litigation expenses." See *id*. at ¶ 13. And, then refers to some unidentified litigation in California, stating that "The plaintiffs in that matter cited Johnson's alleged involvement with Clearview" caused said "litigation expenses".[4] First of all, this case is never identified. However, the reference is apparently to *Renderos v. Clearview AI, et al*., 21-cv-2567 (N.D. Cal.). While the Complaint does reference Johnson, it references Ton-That, and others as well, and, as ¶ 19 of the Complaint makes clear (see Exhibit 1, at pp. 16-17), issues of reputation damaging Clearview apply equally, if not more so, to Ton-That and others, more so than Johnson. Tying that case to the alleged breach of contract action in the case at Bar is such a stretch as to be render a new meaning to the phrase creative draftsmanship. As to the final paragraph in Schwartz's affidavit, this too, is entirely speculative, with no even minimal support for a claim of damages.

Hence, the Court should find that the Schwartz Affidavit, does anything but "provide[] further detail regarding the substantial harm believed to have been suffered by Clearview as a result of Plaintiff's breaches of the Agreement." See Counter-Plaintiffs' Memor-

---

[4] Oddly, Schwartz refers to the plaintiffs as "a group of anti-law enforcement activists." Why he so characterizes them in this manner is befuddling, at best. It is unclear if he means this to be pejorative, or what. Or, that he believes they are nihilists or anarchists[?]. But, perhaps, any damages suffered by Clearview may well be caused by such characterizations by a Clearview officer (whom the Complaint ties to disgraced former Mayor Rudy Giuliani, see Exh. 1, ¶ 18, p. 16), of individuals interested in their protecting their on-line privacy, rather than the actions of Mr. Johnson.

andum of Law at p. 18.  This surely, considering Schwartz's role as an investor and officer of Clearview going back many years (see Clearview Amended Counterclaim at ¶ 13), and someone intimately familiar with the company, and its origins and business dealings, should have been Clearview's best evidence of establishing some financial harm, and it has failed completely, to do so.

## II. Supplemental Jurisdiction Under Rule 13 is Unavailable to the Counterclaimants

F.R.Civ.P. Rule 13 sets forth a basis for a party to file a counterclaim.  Under Rule 13 an "absolute identity of factual backgrounds" is not required to render a counterclaim compulsory.  *Jones v. Ford Motor Credit Co*., 358 F.3d 205, 209 (2d Cir. 2004), quoting *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979).  See also *MMZ Assocs., Inc. v. Gelco Corp*., 2006 U.S. Dist. LEXIS 88535 at *3 (S.D.N.Y. 2006) ("Although this action and the Minnesota Action are not identical, combining the actions will serve the interest of judicial economy by preventing likely duplication of effort.").  Rather, "[a] claim is compulsory if a logical relationship exists between the claim and the counterclaim and if the essential facts of the claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit."  *Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.*, 233 F.3d 697, 699 (2d Cir. 2000).  In accord see *Jones*, *supra*, 358 F.3d at 209 (noting that a claim is compulsory if it "'arises out of the transaction or occurrence that is the subject matter of the opposing party's claim[,]' . . . and [the Second] Circuit has long considered this standard met when there is a logical relationship between the counterclaim and the main claim", quoting Rule 13(a)(1)(A). As oner court has put it, "this standard [is] met when there is a logical relationship between the counterclaim and the main claim."  *EEOC v. Amertac Holdings, Inc.*, 2007 U.S. Dist. LEXIS 3165796 at *3 (S.D.N.Y. 2007).  Furthermore, the compulsory counterclaim may

only be made as against an opposing party. *HID Global Corp. v. Leighton*, 2007 U.S. Dist. LEXIS 3566705 at \*3 (N.D. Ohio 2007). And, that language includes a party who is the "functional equivalent" of the named party. *Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 391 (3d Cir. 2002).

The Counter Plaintiffs argue that under Rule 13, the counterclaim is compulsory in nature, and, hence, even though the original claim was dismissed, this Court retains jurisdiction of the counterclaim. See Responsive Brief at pp. 10-15.

While it is arguable that the counterclaim here is compulsory, in nature, and not permissive, nevertheless, the Court cannot assume jurisdiction, unless it satisfies the requirements of Section 1332 — both diversity and jurisdictional amount. While diversity is conceded, the Counter Plaintiffs rely upon the jurisdiction asserted in Johnson's initial complaint, notwithstanding the abject failure, in their counterclaim to satisfy the minimal pleading requirements of Section 1332 (see discussion *infra*). In *St. Paul Indemnity v. Red Cab Co.*, 303 U.S. 283 (1936), the Supreme Court, by way of dictum, made clear that a plaintiff's initial claim of jurisdiction, if found wanting, cannot serve as a basis for a counter claim denominated as "compulsory". *Id.* at 288-29. See *Fenton v. Freedman*, 748 F.2d 1358, 1359 n. 1 (9th Cir. 1984). And, only if the plaintiff's assertion of jurisdictional amount has been made, in good faith, may the counter claimants, and the courts, rely upon it in invoking jurisdiction. See *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014), citing to and quoting from *St. Paul Indemnity*.

In the case at Bar, as referenced in Movant's initial Motion, the Counter Claimants specifically denied that "Johnson has suffered damages exceeding $75,000 as a proximate result of Clearview AI's breach of contract." See Plaintiff's Complaint at ¶ 66 (ECF No. 25); Counter Claimants' Answer at ¶ 66. ECF No. 50. As the Seventh Circuit has stated,

> we believe that a compulsory counterclaim should not be held to give rise to
> federal jurisdiction where the defendant-counterclaimant has objected
> from the beginning to the federal court's assumption of jurisdiction over the
> plaintiff's main action on the ground that the amount in controversy in that
> action is insufficient

*Motorists Mutual Ins. Co. v. Simpson*, 404 F.2d 511, 514 (7th Cir. 1968), *cert. denied*

294 U.S. 988 (1969).

Instructive is the decision in *Kaplan v. Computer Sciences Corp.*, 148 F. Supp.2d 318

(S.D.N.Y. 2001), where Judge Brieant, in a removal proceeding, declined to exercise

jurisdiction, as neither party had adequately pled the requisite jurisdictional amount. The

Court relied upon the strictures of Rule 82, which states,

> These rules do not extend or limit the jurisdiction of the district courts or
> the venue of actions in those courts.

*Id.* at 320-21.

It defies logic that if Johnson's claim does not meet the threshold of the statutory

jurisdictional minimum, that the Counterclaimants should be able to rely on it to assert

their own jurisdiction in the absence of any valid proof of damages. The fact that the

Defendants' Rule 12 Motion did not seek dismissal based upon jurisdictional grounds is

of no moment, as it is not the parties that determine jurisdiction, it is the facts and the

law — and plainly they do not support federal diversity jurisdiction in this case. A reading

of Plaintiff's Complaint demonstrates that is lacked the same detail necessary to establish

and satisfy Section 1332's jurisdictional amount requirement.

At the same time, it is Movant's position, that the counterclaim here, is more in the

nature of permissive (Rule 13(b)), than compulsory (Rule 13(a)). While both claims arose

out of the same document — the Wind Down Agreement, the causes of action were rooted

in a different set of facts to be proven. Johnson's claims arose out of his asserted

commissions due him based upon alleged contracts and leads he had developed on behalf

of Clearview.  See Complaint (ECF No. 25) at ¶¶ 36 thru 49.  As opposed to this, the claims of the Counter Plaintiffs, while relying upon the Wind Down Agreement, alleged some sort of undefined damages based upon Johnson's publishing of the Wind Down Agreement, and supposed critical comments about Clearview and its principals (Schwartz and Ton-That) that caused a loss of sales and other revenue.  See Counter Claim (ECF No. 50) at ¶¶ 54-59.

In general, if a counter claim arises out of the same contract, it is deemed compulsory. *Skyline Steel, LLC v. Pilepro, LLC*, 2015 U.S. Dist. LEXIS 27436 at *5 (S.D.N.Y. 2015). However, in both of these causes of action, a different set of facts needed to be developed. And, the evidence to be presented at trial would be unrelated.  In Johnson's claim, he was seeking alleged commissions owed him (admittedly under the Wind Down Agreement), for sales and business leads he had developed.  Opposed to this was the Counterclaim which a breach of contract action based upon entirely different grounds, and proof.  In the Counterclaim the Counter Plaintiffs need to prove that, due to Johnson's actions, Clearview lost business and revenue.  In Johnson's action he had to prove that he had developed leads and sales, and that he was owed a sales commission, as set forth in the Wind Down Agreement.  These are entirely different actions, and, though rooted in the Wind Down Agreement, had different elements of proof and different and evidence necessary to prove their case.  As such, a compulsory counterclaim, under Rule 13(a) is not applicable.  In *ADYB Engineered for Life, Inc. v. Edan Administration Svces. Ltd.*, 2021 U.S. Dist. LEXIS 59666 (S.D.N.Y. 2021), the Court observed that

> The counterclaims for tortious interference, fraud, libel, and declaratory relief (Counts II-IV, VI and IX) are logically related to ADYB's causes of action for breach of contract and conversion because they arise from the parties' ongoing business relationship under the Investment Agreement,

MOU-1, and MOU-2 <u>and are premised on the same nucleus of operative facts</u>.

*Id*. at \*32.

In the case at Bar, while both Breach of Contract claims arise out of the Wind Down Agreement, they are not "premised on the same nucleus of operative facts". Hence, this is not a compulsory counterclaim under Rule 13(a).

The *ADYB* Court continued that since "the 'essential facts' of the counterclaims by EDAN, PAAS, and E. Cohen are 'so logically connected' to the breach of contract claim by ADYB 'that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" *Id*. at \*33, quoting from *Jones v. Ford Motor Credit*, *supra*, 358 F.3d at 209.

The stated rule is that there must be some "logical relationship" between the counter-claim and the original claim, for the Court to entertain jurisdiction. *United States v. Aquavella, supra*, 615 F.2d at 22. Although the "logical relationship" test does not require "an absolute identity of factual backgrounds," (*ibid*), the "essential facts of the claims [must be] so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Critical-Vac Filtration*, *supra*, 233 F.3d at 699. And, as the *ADYB* Court noted, the "essential" or "operative" facts must be identical. Here they are not.

See also *Rekor Sys. v. Loughlin*, 2020 U.S. Dist. LEXIS 219768 at \*49-\*50 (S.D.N.Y. 2020); *Fujifilm North Am. Corp. v. Geleshmall Enterprises, LLC*, 239 F. Supp.3d 640, 645 (E.D.N.Y. 2017) (Citing to *Jones*, *supra*, "Here, Geleshmall's counterclaims are permissive, not compulsory, as the 'essential facts' of the gray market claims do not meet the requirement in *Jones* that 'the claims must be so logically connected that con-siderations of judicial economy and fairness dictate that all the issues be resolved in one

lawsuit.'"); *Absolute Activist Master Value Fund, Ltd. v. Ewing*, 2014 U.S. Dist. LEXIS 99612 at *11-*14 (S.D.N.Y. 2014) (court denies compulsory counterclaim status, quoting from *Jones, supra*, that "[t]he essential facts for proving the counterclaims and the [main] claim are not so closely related that resolving both sets of issues in one lawsuit would yield judicial efficiency", *Jones*, *supra*, 358 F.3d at 210; and that "There is no logical relationship between the Fund's breach of fiduciary duty and fraud claims, and Ewing's breach of contract and equitable Counterclaims." *Id*. at *13.).

In the case at Bar, the fact that the claims arise out of the same contract, *i.e.*, the Wind Down Agreement, is not determinative, in and of itself, that Rule 13(a) is applicable. The gravamen of the Counter Claim is that Johnson's disclosure of the Wind Down Agreement was in violation of the contract, and, further, that his alleged disparaging comments about Clearview and Messrs. Schwartz and Ton-That, was also in violation thereof, and, as a proximate result, thereof, Clearview was somehow financially harmed. Mr. Johnson's claim was entirely otherwise. While based upon the Wind Down Agreement, he alleged that he earned commissions as a result of sales, and sales leads he had developed. These are entirely different causes of action. The factual elements of proof for each of these alleged breaches of contract are entirely different. Even if the Counter Plaintiffs can establish that Johnson did breach the contract, as set forth in their Counter Claim, it provides no resolution, whatsoever, as to what would have been Johnson's now defunct claims. And, the same is true, *vise versa*.

What the Counter Plaintiffs seek to do here, is, in the absence of any proof, whatsoever, that they suffered any damages at all (see discussion herein, Parts I and III), to maintain this ongoing litigation only to burden this Court, and generate unnecessary legal fees and costs.

As such, this Counter claim was permissive in nature.  As a permissive counterclaim requires an independent source of jurisdiction, in the absence of some proof satisfying the jurisdictional amount requirement of the statute, the counterclaim must be dismissed. *See, e.g., Jean-Louis v. Am. Eagle Transportation Corp*., 2007 U.S. Dist. LEXIS 100492 at *4 (S.D. Fla. 2007); *G & M Tire Co. v. Dunlop Tire & Rubber Corp.*, 36 F.R.D. 440, 441 (N.D. Miss. 1964).

III. No Independent Basis for Jurisdiction Under Section 1332 Lies Here

The Movant's position is well set forth in the initial moving papers.  The statute and the case law are clear — "[28 U.S.C. § 1332(a)] establishes that diversity jurisdiction exists over civil actions between citizens of different States, where the matter in controversy exceeds the sum or value of $75,000."  *Washington Nat'l Ins. Co. v. OBEX Grp. LLC*, 958 F.3d 126, 133 (2d Cir. 2020).  This is as simple as it can be.  While the Counter Plaintiffs would render the jurisdictional amount requirement meaningless, and of no substance, that is neither their, nor this Court's, prerogative to do so.  As one court has observed, "If the mere allegation that the plaintiff was 'seriously injured' sufficed to establish the jurisdictional amount, then virtually every personal injury case could be removed to federal court. The amount in controversy requirement would be rendered meaningless." *Ransom v. Wal-Mart Stores*, 920 F. Supp. 176, 178 (M.D. Ga. 1996).  The Counter Plaintiffs would have the Court adopt the reasoning therein, *i.e.*, to render the statute meaningless and thereby, welcome every litigant who presents themselves to the Clerk's Office.  Indeed, while this court has acknowledged that it has "300 cases of [its] own", this number would surely mushroom to the thousands, if the Counter Plaintiffs arguments and reasoning were to be adopted.

It is clearly inadequate to merely state, in the Counter Plaintiffs' pleading, that "As a direct and proximate result of Counterclaim Defendant's material breaches, Counterclaim Plaintiffs have sustained damages exceeding $75,000, and with the exact amount to be proven at trial." See Counterclaim at ¶ 59. This does not, indeed, cannot, suffice under the statute.

The Counter Plaintiffs make clear that they believe that the above statement is not "impermissibly conclusory" (see Memorandum of Law at p. 16[5]), and they go on to state that the alleged actions of Johnson, which were allegedly critical of the Counter Plaintiffs, are sufficient to satisfy the statutory mandate. *Id.* at p. 17. Here the Counter Plaintiffs rely upon the allegation that Johnson has "identified at least **thirty-three (33)** investors and/or shareholders, and **four (4)** major media outlets – including the Washington Post and New York Times – to whom he made oral or written critical statements about Defendants to during the Restricted Period." *Ibid.* Emphasis in original. And, that from this statement, the amount in controversy has been satisfied. Yet, with all this available information to the Counter Plaintiffs, along with supposedly "**thirty-three (33)** investors and/or shareholders, and **four (4)** major media outlets", the Counter Plaintiffs have provided not a single declaration or sworn statement from any person whatsoever,

---

[5] In a "two wrongs make a right" argument, the Counter Plaintiffs' argue that Johnson, in his now dismissed complaint, similarly failed to satisfy the pleading requirements of Section 1332. See Memorandum of Law at p. 16, n. 3. Certainly, this is not a legal basis upon which the Court should deny the Motion to Dismiss. As Judge Rakoff once observed, one's "reliance on the childhood maxim that 'two wrongs make a right' is as baseless in this dispute as it was in the schoolyard years ago." *Travelers Casualty & Surety Co. v. Ace Am. Reinsurance Co.*, 329 F. Supp.2d 659, 665 (S.D.N.Y. 2005), *aff'd* 201 Fed. App'x 240 (2d Cir. 2006). See also *Bean Meridan, L.L.C. v. C.F. Bean, L.L.C.*, 2018 U.S. Dist. LEXIS 168638 at *23 n. 6 (S.D. Miss. 2018) (the court castigating a party for "apparently subscribing to the view that 'two wrongs make a right.'").

that stated they declined to invest in, or refused to contract with, or would not do business with Clearview as a result of Johnson's alleged actions. Indeed, a reading of Exhibit 1, herein, and the claims about, not only Johnson, but others in the company, including Ton-That and Schwartz, makes it just as likely, if not more so, that any damages that Clearview has suffered has been due to those individuals' actions and history, and not Johnson's. Oddly, the Counter Plaintiffs cite to *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000), for the proposition that the court may rely upon outside sources in ruling on a Motino to Dismiss, yet, they have produced no such outside sources or evidence — not a one.[6]

With regard to the Breach of Contract cause of action, the only cause of action present before this Court, the Counter Plaintiffs argue that "a detailed damages computation is not required at this stage", and that "only a good faith allegation that the amount in controversy exceeds $75,000". Memorandum of Law at p. 18. The question is whose "good faith" is relied upon here. Counsel has a duty, under Rule 11, to certify that the claims made therein are based upon the facts and the law, after an inquiry reasonable under the circumstances". F.R.Civ.P. Rule 11(b). See also Rule 26(g). And, this applies to an allegation regarding the jurisdictional amount. See *Bernal v. All Am. Investment Realty, Inc.*, 479 F. Supp.2d 1291, 1298 (S.D. Fla. 2007). From what the pleadings state, and what has been provided in discovery to date, regarding the amount of loss, and the Counter Plaintiffs' responsive pleadings herein, it is clear that there was hardly any "good

---

[6] If the Counter Plaintiffs are relying upon an article in *The New York Times*, it is unclear under what Rule of Evidence this would be admissible, or at all persuasive on the issue of damages.

faith" in the case at Bar.  While the amount in controversy was an "allegation", there is no evidence that it was made in "good faith".

While the Counter Plaintiffs rely upon the Schwartz Affidavit (see Memorandum of Law at pp. 18-19), it is clear, as set forth above, this document is of little or no value in ruling on this Motion.

In their argument the Counter Plaintiffs specifically state that "Defendants have not identified the exact damages amount because 1) damages for critical and/or damaging statements are difficult to quantify; . . .", and that only through discovery will their amount of damages be calculable.   Memorandum of Law at p. 18.   This clearly is inadequate.   In *Macken v. Jensen*, 333 F.3d 797 (7th Cir. 2003), the Sevent Circuit observed the following,

> No one is entitled to file in federal court and throw on the defendant (and the judicial system) the entire burden of estimation plus the risk of uncertainty in that process. To the contrary, Fed. R. Civ. P. 11(b)(3) requires the plaintiff (personally or through counsel) to establish evidentiary support, or at least a likelihood of obtaining that support, before filing suit in federal court.

*Id.* at 800.[7]

---

[7] In support of this "difficult to quantify" argument, the Counter Plaintiffs cite to two cases, *James v. DeGrandis*, 138 F. Supp.2d 402 (W.D.N.Y. 2001); *Marczeski v. Law*, 122 F.Supp.2d 315, 321 (D. Conn. 2000).  See Responsive Memorandum of Law at p. 19.  Both of these cases are defamation lawsuits, not breach of contract actions, as this one is.  As was made clear in Movant's opening pleading, the Counter Plaintiffs, in their Amended Counter Claim dropped, without any explanation, their original claim for defamation. Even this Court was apparently surprised at that action. See Hg. of Apr. 2, 2025, at p. 44, *ll.* 13-20.  While no explanation was given, there does arise the possibility that the reason it was dropped was because the allegedly defamatory statements made by Johnson in the original Counter Claim (compare Counterclaim, ECF No. 40, at ¶¶ 68 thru 76 (Cause of Action for Defamation, with Amended Counterclaim, ECF No. 50, in which the Defamation Cause of Action was eliminated), were, truthful.  However, as the defamation claim has been removed, case law regarding the supposedly unquantifiable nature of defamatory claims damages, is of no relevance in this motion and should be disregarded. They do not cite to any breach of contract cases in this "difficult to quantify" argument.

To commence an action in federal court (or to file a counter claim), and then seek to justify the court's jurisdiction, only after discovery, puts the proverbial cart before the horse, and makes a mockery of the diversity statute. And, this is a fundamental principal adopted by more than one court. *See, e.g., CBS Outdoor LLC v. California Mini Storage, LLC*, 2014 U.S. Dist. LEXIS 105739 at *10-*11 (N.D. Cal. 2014); *Graubart v. Jazz Images, Inc.*, 2006 U.S. Dist. LEXIS 24828 at *31-*32 (S.D.N.Y. 2006). This sort of *post hoc* analysis, to satisfy a jurisdictional requirement, is impermissible, and should be denied by this Court.

The Counter Plaintiffs assert that Johnson mischaracterizes the nature of the remedy as one that should properly be for injunctive relief. See Response Memorandum of Law at pp. 20-21. This issue is thoroughly discussed in the moving papers. See Movant's Memorandum of Law at pp. 11-13. Plainly the document speaks for itself, *viz.*,

> The Parties agree that a breach of <u>any of the covenants of Section 4</u> would cause material and irreparable harm to the Company that would be difficult or impossible to measure, and that damages or other legal remedies available to the Company for any such injury would, therefore, be an inadequate remedy for any such breach.

Wind Down Agreement at p. 3, ¶ 4.e. See ECF No. 50-1. Emphasis added.

The Breach of Contract cause of action, in the Amended Counterclaim speaks specifically of Johnson's violation of Section 4 of the Wind Down Agreement. See Amended Counter Claim (ECF No. 50) at pp. 11-14, and ¶¶ 57 and 58, which specifically refer to Johnson's violation of Clause 4 of the Wind Down Agreement. Hence, this argument of the Counter Plaintiffs is without adequate support.

IV. Conclusion

For the reason set forth herein, it is respectfully requested that the Court grant the relief requested herein, and dismiss the Counterclaim on jurisdictional grounds, and grant such other and further relief as the Court may deem just and proper.

Dated: 09 May 2025
      Somers, NY

                                     Respectfully submitted,


                                     */s/ Bernard V. Kleinman*
                                     Bernard V. Kleinman, Esq.
                                     Attorney for Counterdefendant
                                            Johnson