UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARLES JOHNSON,<br><br>                    Plaintiff,<br><br>         -v.-<br><br>CLEARVIEW AI, INC.; HOAN TON-THAT;<br>and RICHARD SCHWARTZ,<br><br>                    Defendants. | 23 Civ. 2441 (KPF)<br><br>**ORDER** |

KATHERINE POLK FAILLA, District Judge:

Plaintiff Charles Johnson brought this lawsuit in 2023, seeking *inter alia*, injunctive relief and damages emanating from an alleged breach of contract. Unfortunately, since that filing, Plaintiff has acted more to obstruct this litigation than to resolve it. Throughout these proceedings, Plaintiff has openly and repeatedly flouted this Court's orders, including orders regarding discovery. Moreover, the record in this case is littered with Plaintiff's false statements, half-truths, and misrepresentations — to say nothing of his overtly racist tirades against his adversaries and their counsel. For the reasons set forth in further detail below, the Court imposes the following sanctions against Plaintiff: the Court fines Plaintiff in the amount of $10,000, strikes Plaintiff's Answer (Dkt. #53), and directs the Clerk of Court to enter default against Plaintiff.

## BACKGROUND[1]

According to Plaintiff, in February 2017, he founded a facial recognition technology company, SmartCheckr, LLC ("SmartCheckr"), with Defendants Hoan Ton-That and Richard Schwartz (together, the "Individual Defendants"). (AC ¶ 19). Eventually, the Individual Defendants sought to wind down SmartCheckr and transfer its assets to a new company, Defendant Clearview AI (together with the Individual Defendants, "Defendants"). (*Id.* ¶ 29). The dissolution of SmartCheckr was formalized in a Wind-Down Agreement, pursuant to which Plaintiff was given a ten-percent ownership stake in Clearview AI and the right to receive certain commissions on Clearview AI's sales, to the extent that an introduction made by him led to a sale of Clearview AI's software or services. (*Id.* ¶¶ 31-33).

On March 22, 2023, more than four years after the execution of the Wind-Down Agreement, Plaintiff brought the instant action, principally alleging that both the Individual Defendants and Clearview AI had breached their obligations under that agreement. (Dkt. #1). On August 4, 2023, Plaintiff filed an amended complaint (the "Amended Complaint"). (Dkt. #25). On June 21, 2024, Defendants filed their answer to the Amended Complaint, which included a counterclaim (the "Counterclaim") against Plaintiff. (Dkt. #44 (Answer), 50 (Amended Answer)). Plaintiff filed his answer to the Counterclaim on July 26, 2024. (Dkt. #53).

---

[1] The Court draws facts from the amended complaint in this action (Dkt. #25 ("AC")), the well-pleaded allegations of which have been accepted as true at this stage of the litigation.

The Court endorsed the parties' initial case management plan on July 1, 2024. (Dkt. #48). That plan provided for a period of fact discovery ending on December 6, 2024. (*Id.* at 2). The Court later granted an extension of the end date for fact discovery to on or before March 6, 2025. (Dkt. #57 (Endorsement), 59 (Revised Case Management Plan)). In doing so, the Court warned that it would not grant further extensions of the discovery deadlines in this case, absent exigent circumstances. (Dkt. #57).

From the inception of the case, the Court has received disturbing reports from Defendants regarding Plaintiff's false, racist, and inflammatory postings about Defendants, defense counsel, and this case on social media. (*See, e.g.*, Dkt. #21, 34, 37, 45; *see also, e.g.*, Dkt. #22, 36, 39 (Court orders seeking to prevent Plaintiff from intimidating defense counsel or otherwise interfering with the conduct of this litigation, while acknowledging Plaintiff's First Amendment rights)). Plaintiff's contumacious conduct only worsened after the second case management plan in this case was endorsed. (Dkt. #59). The Court received defense submissions detailing Plaintiff's (i) continued postings on social media of false information and bigoted musings about the parties and their counsel, and (ii) deficient responses to discovery requests. (*See, e.g.*, Dkt. #60-61, 65).

Ultimately, the breadth of Plaintiff's noncompliance necessitated two consecutive conferences, at which Plaintiff himself was required to appear with his counsel. The bulk of the conferences was spent addressing various problems with discovery. (*See generally* Dkt. #69 (January 8, 2025 Conference Transcript), 71 (January 13, 2025 Conference Transcript)). Among those

problems was the manner in which discoverable information had been collected by Plaintiff and his counsel for review. In short, Plaintiff's counsel had been unable to access potentially discoverable materials and had made no effort to review texts, social media platforms, and other documents; Defendants had identified categories of documents that Plaintiff acknowledged existed but did not produce; and Plaintiff had made false and misleading statements regarding the message-deleting capabilities of the Signal platform. (*See* Dkt. #68).[2] Despite the Court's previous warning regarding discovery, the situation required a complete "reconstitution of the universe of potentially discoverable materials," including electronic communications, which the Court ordered Plaintiff and his counsel to complete on or before February 21, 2025, with all fact discovery and depositions to be concluded on or before April 11, 2025. (*Id.* at 3-5).

In the midst of the Court's review of Plaintiff's discovery deficiencies during the January 8, 2025 conference, Plaintiff informed the Court that he now wished to dismiss his claims against Defendants. (*See* Dkt. #69, Tr. 67:6-8). Accordingly, Plaintiff's claims were dismissed with prejudice, but the Counterclaim brought by Defendants remained in the case, and therefore discovery would still be necessary. (*See* Dkt. #68 at 1). Addressing the remaining issues raised in the pre-conference letters and at the conferences, the Court (i) confirmed that "Plaintiff may not contact any Defendant directly;

---

[2]  With particular respect to the third category of discovery issues, Plaintiff failed to advise the Court and Defendants that he understood that Signal messages could be saved on the platform, and that he had indeed saved such messages in the past.

that Plaintiff may not post any statements to his social media accounts regarding defense counsel; and that any other public statements by Plaintiff regarding this case or any of its participants runs the risk of sanctions from this Court"; and (ii) debunked Plaintiff's claim that agents at the Department of Homeland Security ("DHS") were preventing Plaintiff from providing additional discovery in the case. (Dkt. #68 at 1-2, 5-6).

Despite the Court's warnings, Plaintiff continued to post false and scurrilous information on social media about the litigation, the litigants, and their counsel. (*See* Dkt. #75, 79). What is more, Plaintiff refused to conduct the necessary searches to resolve his outstanding discovery obligations. (Dkt. #78). Accordingly, the Court held another conference, at which Plaintiff was again required to appear along with his counsel. (*See* Dkt. #83; April 2, 2025 Minute Entry). At that conference, the Court imposed sanctions on Plaintiff in the amounts of (i) $2,000 for his February 20, 2025 post on his Substack.com account; and (ii) $5,000 for his March 5, 2025 post on his Substack.com account, each in contravention of this Court's January 16, 2025 Order. (Dkt. #84). Because of Plaintiff's continued failure to comply with his discovery obligations, the Court again reset the deadlines for the remaining discovery, with fact depositions being pushed to June 6, 2025. (*Id.* at 1). The Court further cautioned Plaintiff that "continued violation of this Court's discovery orders [would] result in substantially higher monetary sanctions, this Court's striking his Answer, and/or entry of a default judgment." (*Id.* at 2).

5

Nevertheless, the Court permitted and set a briefing schedule for the motion to dismiss Defendants' Counterclaim that Plaintiff sought to file. (*Id.*).

On May 19, 2025, after Plaintiff's motion to dismiss was fully briefed, Defendants informed the Court that Plaintiff still refused to comply with his discovery obligations. (Dkt. #92). Plaintiff had not produced any documents or electronically stored information. (*Id.* at 2). More egregiously, Plaintiff had indicated that he would not be complying with those obligations in the future. (*Id.*). His counsel forwarded the following message from Plaintiff to Defendants: "[Plaintiff] has already complied with your overly broad e-discovery demands. He will not be providing the [Defendants] with all of his communications with federal law enforcement. Nor with First Amendment protected sources." (*Id.*). In response, the Court ordered Plaintiff to show cause in writing why his Answer should not be stricken and default judgment entered against him on the Counterclaim in this case. (Dkt. #93). Plaintiff submitted his response on June 12, 2025, which basically challenged the expense of complying with his discovery obligations in a case in which he had dismissed his original claims against Defendants. (Dkt. #94).

## DISCUSSION

### A. The Court Has Subject Matter Jurisdiction over Defendants' Counterclaim

The Court begins by addressing the antecedent issue of its jurisdiction over Defendants' Counterclaim. Plaintiff has moved to dismiss the Counterclaim for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Dkt. #85). The Court is mindful of its obligation to

6

ensure that it has Article III jurisdiction at all stages of a case. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also Arbaugh* v. *Y & H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."). However, for substantially the reasons set forth in Defendants' opposition to Plaintiff's motion to dismiss (Dkt. #88), the Court concludes that it has subject matter jurisdiction to hear Defendants' Counterclaim and denies Plaintiff's motion. Stated simply, the Court concludes that (i) Defendants' Counterclaim is compulsory under Federal Rule of Civil Procedure 13(a), as it arises out of the same transaction or occurrence as Plaintiff's original claim; (ii) the Court retains supplemental jurisdiction over the Counterclaim even after Plaintiff's dismissal of his claims; and (iii) in the alternative, the Court has independent jurisdiction over the Counterclaim under 28 U.S.C. § 1332. By extension, the Court has jurisdiction to consider the imposition of sanctions on Plaintiff, if and as warranted.

### B. The Court Will Impose Sanctions for Plaintiff's Failure to Comply with Court Orders and with His Discovery Obligations

#### 1. Applicable Law

"A district court has wide discretion to impose sanctions for abusing the discovery process." *Bilodeau* v. *Usinage Berthold, Inc.*, No. 24-2922, 2025 WL 1778857, at *3 (2d Cir. June 27, 2025) (summary order) (internal quotation marks omitted). Federal Rule of Civil Procedure 37 provides that when "a party ... fails to obey an order to provide or permit discovery ... the court where

the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). Such just orders may include "striking pleadings in whole or in part; … dismissing the action or proceeding in whole or in part; [or] rendering a default judgment against the disobedient party." *Id.* Further, "the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

Several considerations inform a court's analysis of a motion for sanctions under Federal Rule of Civil Procedure 37, including: "[i] the willfulness of the [noncompliance] or the reason for noncompliance; [ii] the efficacy of lesser sanctions; [iii] the duration of the period of noncompliance[;] and [iv] whether the noncompliant party had been warned of the consequences of noncompliance." *Agiwal* v. *Mid Island Mortg. Corp.*, 555 F.3d 298, 302-03 (2d Cir. 2009) (internal quotation marks and alteration omitted) (quoting *Nieves* v. *City of New York*, 208 F.R.D. 531, 535 (S.D.N.Y. 2002)); *accord Bilodeau*, 2025 WL 1778857, at *3. Further, the court has "inherent power to supervise and control its own proceedings and to sanction counsel or a litigant for bad-faith conduct." *Sussman* v. *Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995); *see also Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) ("[A] court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons'" (quoting *Alyeska Pipeline Serv. Co.* v. *Wilderness Soc'y*,

8

421 U.S. 240, 258-59 (1975))); *see generally Int'l Techs. Mktg., Inc.* v. *Verint Sys., Ltd.*, 991 F.3d 361, 367 (2d Cir. 2021).[3]

The Second Circuit has provided additional guidance for courts considering case-terminating (or "terminal") sanctions. *See Rossbach* v. *Montefiore Med. Ctr.*, 81 F.4th 124, 137-42 (2d Cir. 2023). As relevant here, the Court observed that a district court could impose terminal sanctions under its inherent power, where a party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 141 (quoting *Ransmeier* v. *Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) (internal quotation marks omitted)). The Court cautioned, however, that

> "[T]he sanction of dismissal with prejudice ... should be used ... only upon a finding of willfulness, bad faith, or reasonably serious fault." *Mitchell* v. *Lyons Pro. Servs., Inc.*, 708 F.3d 463, 467 (2d Cir. 2013) (internal quotation marks and citations omitted). Likewise, our "case law is clear that a district court may not impose attorney's fees as a sanction without first making an explicit finding that the sanctioned party, whether a party or a party's counsel, acted in bad faith in engaging in the sanctionable conduct." *Wilson* v. *Citigroup, N.A.*, 702 F.3d 720, 724 (2d Cir. 2012) (per curiam).

---

[3] A sister court in this District has opined that, before imposing sanctions pursuant to its inherent authority, a court should consider

> [i] whether the misconduct was the product of intentional bad faith; [ii] whether and to what extent the misconduct prejudiced the other party; [iii] whether there is a pattern of misbehavior, rather than an isolated instance; [iv] whether and when the misconduct was corrected; and [v] whether further misconduct is likely to continue in the future.

*Fischman* v. *Mitsubishi Chem. Holdings Am., Inc.*, No. 18 Civ. 8188 (JMF), 2022 WL 3646205, at *2 (S.D.N.Y. Aug. 24, 2022).

*Id.* at 142. Finally, the Court noted that district courts were obligated to "'at least consider lesser remedial measures before imposing' the sanction of dismissal." *Id.* at 141 (quoting *Shepherd* v. *Annucci*, 921 F.3d 89, 97 (2d Cir. 2019)).[4]

### 2.   Analysis

Each of the *Agiwal* factors supports the imposition of severe sanctions in this case. *First*, the Court finds that Plaintiff's noncompliance with this Court's orders regarding both his out-of-court communications and discovery obligations has been willful and undertaken in bad faith. As previously discussed, Plaintiff has posted false and incendiary public commentary about the parties in this litigation and their counsel throughout the pendency of this action. (*See* Dkt. #21, 34, 37, 45, 60, 61, 75, 79). Since 2023, the Court has attempted to make clear to Plaintiff that this conduct is unacceptable. (*See* Dkt. #22, 39). In 2025, in the wake of more frequent (and more egregious) postings, this Court held two separate in-person conferences to address Plaintiff directly. (Dkt. #64, 77, 83 (setting conferences for January 8, 2025, and April 2, 2025, and requiring Plaintiff's presence)). After the first conference, the Court also memorialized the content of the hearing in an order.

---

[4]   Elsewhere in its opinion, the *Rossbach* court stated that potential recipients of sanctions are entitled to notice and an opportunity to be heard prior to the imposition of sanctions. *See Rossbach* v. *Montefiore Med. Ctr.*, 81 F.4th 124, 140 (2d Cir. 2023). It did not consider a notice argument in the course of resolving the appeal, inasmuch as the argument had not been preserved. *Id.* In point of fact, the district court had provided the requisite notice and opportunity to be heard. *See Rossbach* v. *Montefiore Med. Ctr.*, No. 19 Civ. 5758 (DLC), 2021 WL 3421569, at *6 & n.9 (S.D.N.Y. Aug. 5, 2021), *aff'd in part, vacated in part on other grounds, remanded*, 81 F.4th 124 (2d Cir. 2023). Plaintiff here has received the requisite notice and opportunity to be heard on multiple occasions.

(Dkt. #68). Still, Plaintiff made no effort to comply with the Court's orders. Instead, he proceeded to make lengthy blog-style posts on his Substack account, in which he continued to calumniate defense counsel and Defendants. (*See* Dkt. #75-2, 79-1). Plaintiff even went as far as to acknowledge his flouting of this Court's orders in one post:

> Last month I told a federal judge that I would refrain from posting about Clearview.AI on social media. I don't want her to think that this post constitutes a work around her admonition but I do believe that the public has a right to know what's going on at arguably the most dystopian tech company.

(Dkt. #75-2 at 3). In light of the numerous opportunities afforded to Plaintiff to substantiate his outlandish accusations — all of which Plaintiff has rebuffed — the Court can only conclude that his social media postings have been made willfully and in bad faith, in an ultimately futile attempt to intimidate his adversaries and their counsel and subvert this litigation.

Plaintiff has also willfully, and in bad faith, disregarded his discovery obligations. Plaintiff and his counsel made productions that fell woefully short of the requirements of Federal Rule of Civil Procedure 34 and failed to sufficiently respond to interrogatories, requests for production, and requests for admission. (*See* Dkt. #68 (summarizing deficiencies in discovery)). Despite multiple opportunities to rectify those deficiencies, Plaintiff has continued to stall this litigation through his lack of compliance. In January 2025, Plaintiff attempted to justify his deficient productions by informing the Court that he had been instructed not to produce any additional discovery in this case by two agents working at DHS. (*Id.* at 5). Despite Plaintiff's pattern of lying to this

Court, the Court conscientiously investigated Plaintiff's claim, reaching out to DHS to obtain additional information regarding these purported agents. DHS could locate no Special Agent with the names provided by Plaintiff, and the Court thus concluded that there was "no basis for Plaintiff to refrain from producing additional discovery in this case." (*Id.*). To date, Plaintiff has not produced such discovery. Instead, Plaintiff informed Defendants that he has "already complied with [their] overly broad e-discovery demands," and that he would not turn over further documents, including "his communications with federal law enforcement" (which, again, the Court has already revealed to be nonexistent). (Dkt. #92 at 2). Accordingly, the first factor is satisfied.

*Second*, lesser sanctions have been employed to no avail. The Court began to address the problems in this case by issuing repeated warnings to Plaintiff. (*See, e.g.*, Dkt. #22, 39, 68, 77, 80). Because the warnings had no effect, the Court turned to monetary sanctions to address Plaintiff's continued violative social media posts. (Dkt. #84 (sanctioning Plaintiff $2,000 and $5,000, respectively, for two violations)). In the order imposing those sanctions, the Court again warned Plaintiff that "future violations of this Court's orders in this regard [would] be met with substantially higher monetary sanctions, this Court's striking his Answer, and/or entry of a default judgment." (*Id.* at 1). The Court further clarified that "continued violation of the Court's discovery orders" would have the same result. (*Id.* at 2). Despite those warnings, in-person conferences, and monetary sanctions, Plaintiff informed Defendants in May 2025 that he would not be complying with his

12

remaining discovery obligations. (Dkt. #92).[5] For those reasons, the Court does not believe that lesser sanctions would be effective at this time and finds that the second factor is satisfied here.

*Third*, the duration of noncompliance has been lengthy. As noted, the initial end date for fact discovery was December 6, 2024 — a deadline that was set on July 1, 2024. (Dkt. #48). One year after that deadline was set, fact discovery is still not complete, and Plaintiff has made clear that he does not intend to provide further discovery responses. (Dkt. #92). The Court sees no utility in allowing more time to pass, in light of Plaintiff's clear statements to Defendants that he will not provide further responsive information. Further, Plaintiff has ignored this Court's orders regarding his inflammatory posts about the parties in this action, including defense counsel, for approximately two years. (*See* Dkt. #22, 39). Accordingly, the Court finds that the third factor weighs in favor of more severe sanctions.

---

5   As noted, Plaintiff's current argument for non-compliance concerns the anticipated cost of responding to Defendants' discovery demands. (*See* Dkt. #94). However, this argument overlooks Plaintiff's prior course of conduct in discovery, wherein Plaintiff and his counsel engaged in only the most perfunctory of searches for responsive documents; lied to Defendants and the Court about his searches for (and ability to search for) discoverable materials; and rebuffed defense suggestions to reduce costs. (*See generally* Dkt. #92 at 1-3 (recounting history)). In short, a substantial portion of Plaintiff's discovery expenses to date have been incurred as a result of his willful noncompliance with the Federal Rules of Civil Procedure and the Court's orders. Moreover, the Court rejects Plaintiff's argument that Defendants' discovery demands are disproportionate because Plaintiff has withdrawn all of his claims. (Dkt. #94 at 4). They are proportionate to the Counterclaim that remains in the case. *See* Fed. R. Civ. P. 26(b) ("Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.").

*Fourth*, as discussed at length herein, Plaintiff has been repeatedly warned of the consequences of noncompliance, and such warnings have had absolutely no deterrent effect on Plaintiff. Therefore, the fourth factor also weighs in favor of sanctions.

The Court concludes that this case has presented exactly the kind of "extreme situation[ ]" to warrant the harsh sanctions imposed here. *Agiwal*, 555 F.3d at 302. This conclusion is only bolstered by the recent decision of United States District Judge Mark T. Pittman in another case involving Plaintiff, this time in the United States District Court for the Northern District of Texas, where the court also imposed litigation-ending sanctions on Plaintiff for strikingly similar discovery violations. *See Point Bridge Capital, LLC* v. *Johnson*, No. 24 Civ. 988 (MTP), Dkt. #73 (N.D. Tex. June 23, 2025) (the "Pittman Order"). In relevant part, Judge Pittman found that

> Similarly, in this case, Johnson has been sanctioned on multiple occasions. Despite those sanctions and the Court's warning … that should he continue to disregard Court orders he would be held in contempt and placed in the custody of the United States Marshal until he purged himself of his contempt, Johnson continued to flaunt the Court's orders. ECF Nos. 61 at 2, 63 at 9, 67. In fact, Johnson's response to these warnings was to mock them on social media.
>
> ***
>
> Johnson's social media posts evidence the willfulness behind his non-compliance, as they show that he had no intention of complying with the Court's orders. This fact was confirmed at the hearing when Johnson stated that he had simply made the decision not to comply. Therefore, there is no other conclusion the Court can reach other than Johnson is willfully ignoring the orders of the Court.

14

(Pittman Order 4-5). Having engaged in the same obstructive conduct in two jurisdictions at the same time, Plaintiff should suffer the same consequences in both.

## CONCLUSION

For the foregoing reasons, in accordance with Federal Rule of Civil Procedure 37 and the Court's inherent authority, the Court hereby sanctions Plaintiff as follows. *First*, the Court FINES Plaintiff in the amount of $10,000 for his continued flouting of Court orders, which fine is additional to the $7,000 in sanctions previously imposed. *Second*, the Court ORDERS Plaintiff's Answer to be stricken in its entirety and directs the Clerk of Court to enter default against Plaintiff. *Third*, the Court ORDERS that Plaintiff pay "the reasonable expenses, including attorney's fees, caused by" his failure to comply with the Court's discovery orders. *See* Fed. R. Civ. P. 37(b)(2)(C). In so doing, the Court specifically does *not* find that Plaintiff's "failure was substantially justified or other circumstances make an award of expenses unjust." *Id.*

Judgment will be entered against Plaintiff regarding his liability on Defendants' Counterclaim, and the matter will be referred to United States Magistrate Judge Sarah Netburn for an inquest into damages on the Counterclaim, as well as the fees and expenses to which Defendants are entitled under Rule 37.

The Court further DENIES Plaintiff's motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The Clerk of Court is directed to terminate the motion at docket entry 85.

SO ORDERED.

Dated: July 2, 2025
       New York, New York

                                              KATHERINE POLK FAILLA
                                              United States District Judge